1  BRYAN CAVE LEIGHTON PAISNER LLP (No. 00145700)
   Lawrence G. Scarborough (No. 006965) (lgscarborough@bclplaw.com)
2  Teresa P. Meece (No. 032071) (teresa.meece@bclplaw.com)
   Julie M. Birk (No. 033908) (julie.birk@bclplaw.com)
3  Two North Central Avenue, Suite 2100
   Phoenix, Arizona 85004-4406
4  Telephone: (602) 364-7000

5  Attorneys for Plaintiffs

6  [Additional counsel listed on signature page]

7  UNITED STATES DISTRICT COURT

8  DISTRICT OF ARIZONA

| | |
|---|---|
| League of Women Voters of Arizona; Mi Familia Vota Education Fund; and Promise Arizona, on behalf of themselves, their members, and all others similarly situated, | No. _____ |
| Plaintiffs, | COMPLAINT |
| vs. | |
| Michele Reagan, in her official capacity as Secretary of State for the State of Arizona, | |
| Defendant. | |

The League of Women Voters of Arizona (the "League"), Mi Familia Vota Education Fund ("Mi Familia Vota"), and Promise Arizona ("Promise Arizona") bring this action seeking declaratory and injunctive relief to halt and remedy the deliberate, ongoing violations of Sections 5 of the National Voter Registration Act ("NVRA") by Michele Reagan, in her official capacity as the Secretary of State for the State of Arizona ("SOS"). The SOS is failing to update the voter registration addresses of persons who update their address with the Arizona Department of Transportation ("ADOT") through ADOT's Motor Vehicle Division ("MVD") (collectively "ADOT/MVD"), as required by Section 5 of the NVRA, despite receiving updated addresses from the ADOT/MVD and despite being on notice of the problem for over nine months. The SOS's deliberate violations of the NVRA have deprived thousands of Arizona citizens of their opportunity to vote, register to vote, and to change their voter registration address. The SOS's failure to comply with the clear

language of the NVRA explains why Arizona has one of the highest rates of provisional balloting in the country.[1]

As a result of the SOS's intentional, ongoing violations of the NVRA, thousands of Arizona citizens are deprived of their opportunity to participate in federal elections. Judicial intervention is necessary to halt the SOS's continuing violations of the NVRA and to remedy her past violations.

## JURISDICTION AND VENUE

1. This case arises under the National Voter Registration Act of 1993 (the "NVRA"), 52 U.S.C. § 20501 *et seq.*, a law of the United States.

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. This Court has jurisdiction to grant both declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

4. This Court has personal jurisdiction over the SOS because she resides in the State of Arizona.

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

## PLAINTIFFS

## LEAGUE OF WOMEN VOTERS OF ARIZONA

6. Plaintiff the League is a non-partisan political organization that encourages informed and active participation in the democratic process. The League works to increase civic participation and education, and advocates for policies in the public interest.

7. The League consists of both a statewide organization and five local chapters. In total, the League has 850 members and over 1,000 supporters in Arizona. The League has at least one member who has updated her driver's license address with ADOT/MVD and has

---
[1] *EAVS Deep Dive: Provisional Ballots*, U.S. ELECTION ASSISTANCE COMMISSION, June 7, 2018, https://www.eac.gov/documents/2018/06/07/eavs-deep-dive-provisional-ballots/ (last visited Aug. 17, 2018) ("Seventy-five percent of all provisional ballots issued [across the country] were issued in Arizona, California, New York and Ohio").

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

been harmed by the SOS's failure to subsequently update her address for voting purposes. Other League members are at risk of being harmed by the SOS's NVRA violations if they change their address in the future.

8. The League offers a variety of voter education programs to its members and to the public on a wide range of issues such as education funding, climate change, campaign financing, health care, and electoral redistricting. The League also produces a voter guide to inform voters about Arizona ballot measures. The local chapters host candidate forums for the public to learn about candidates running for local, state, and national offices.

9. The League lobbies the Arizona legislature on local issues including education funding, campaign finance reform, redistricting reform, ranked choice voting, and automatic voter registration, as well as nationwide issues, such as adopting the national popular vote for allocating Arizona's presidential electors and ratifying the Equal Rights Amendment.

10. The League also participates in Arizona ballot initiatives and referendums. For these efforts, League members gather signatures to assist in getting initiatives on the ballot and then campaign for the initiative during the election season. The League also participates in statewide coalitions with other organizations with similar goals. These coalitions include AZSchoolsNow and the Arizona 19th Amendment Celebration.

11. The League encourages voter registration among all eligible voters, including low-income persons who are more likely to change addresses. The League and its local chapters have frequently conducted voter registration drives in Arizona and have numerous voter registration drives planned in 2018 leading up to the November election. These efforts include voter registration drives targeted at low-income voters, including registration drives at public libraries, public schools, community centers, and food banks. Several of the local chapters are also working with Native American nations to coordinate voter registration efforts on reservations and in low-income communities.

**MI FAMILIA VOTA**

12. Plaintiff Mi Familia Vota Education Fund is a national non-profit organization working to unite the Latino community and its allies to promote social and economic justice

through increased civic participation. Mi Familia Vota works to expand the electorate through direct, sustainable citizenship, voter registration, census education, get-out-the-vote activities, and issue organizing in states with large Latino populations.

13. Mi Familia Vota has approximately 6,000 members in Arizona. Mi Familia Vota has at least one member who has updated their driver's license address with ADOT/MVD and has been harmed by the SOS's failure to subsequently update their residence address for voting purposes. Other members of Mi Familia Vota are also at risk of being harmed by the SOS's NVRA violations if any change their address in the future.

14. Mi Familia Vota engages in large-scale voter registration campaigns focused on individuals aged 18 to 30 in Arizona. In 2018, Mi Familia Vota aims to register 25,000 voters. To meet this goal, the organization conducts between five and ten voter registration drives in Arizona each week. To date, the organization has registered almost 10,000 voters this year. In addition to registering new voters, these voter registration drives also include efforts to assist voters with updating their voter registration address.

15. Mi Familia Vota's voter registration efforts are focused on Maricopa, Pima, Yuma, and Santa Cruz counties due to the large Latino populations in those areas. Most of the organization's voter registration drives are conducted at high schools and community colleges, Latino owned businesses, churches, consulates (who serve dual-citizens), community centers, labor union halls, social services provider facilities, and community events hosted by the Spanish language media.

16. In 2018, Mi Familia Vota expects to spend between $500,000 and $1 million on voter registration programs in Arizona. In addition to in-person voter registration drives, Mi Familia Vota will engage in online, email, social media, and mail campaigns. The organization will also spend time and resources on a text messaging campaign to assist voters with updating their voter registration records, including address changes. All of these efforts will be supported by 40-50 staff members and 100-150 volunteers.

**PROMISE ARIZONA**

17. Promise Arizona is a non-partisan, faith-based organization that was founded

in 2010 in reaction to passage of anti-immigrant legislation in Arizona. Promise Arizona seeks to positively impact Latino and immigrant communities by building leaders, encouraging sustained civic participation, and engaging with the political process for positive change. Promise Arizona primarily targets underserved, low-income, and Latino populations.

18. Promise Arizona has approximately 1,000 members, 1,500 volunteers, and six employees. Promise Arizona has at least one member who has updated their driver's license address with ADOT/MVD and has been harmed by the SOS's failure to update their residence address for voting purposes. Other Promise Arizona members are also at risk of being harmed by the SOS's NVRA violations if they change addresses in the future.

19. Voter registration is a significant portion of Promise Arizona's work. Staff, members, and volunteers work with local school districts and community colleges to identify potential voters at back-to-school events, provide voter registration materials at events serving the Latino community, and conduct door-to-door voter registration drives in neighborhoods with high Latino populations. Promise Arizona also incorporates voter registration into its other work. For example in the English Innovations program, which primarily focuses on teaching the English language and technology literacy, Promise Arizona registers eligible students to vote and trains them on how to register other voters as well.

20. Promise Arizona assists large numbers of voters with registration. For example, in 2010, Promise Arizona conducted a nonpartisan, volunteer-based voter registration drive in Maricopa, Pima, and Pinal Counties. Within a month, volunteer teams registered 13,040 voters. Promise Arizona also registered approximately: 6,000 voters in 2011, 21,000 voters in 2012, 1,000 voters in 2013, 2,000 voters in 2014, 1,000 voters in 2015, 4,000 voters in 2016, and 1,000 voters in 2017.

21. All of Promise Arizona's six employees work, in part, on voter registration activities; two staff members devote their entire time to registering new voters and assisting voters with updating their voter registrations. In preparation for the 2018 election, Promise Arizona plans to increase its voter registration and engagement activities and to hire

5

additional staff members to focus on these efforts.

**DEFENDANT**

22. Defendant Michele Reagan is the Secretary of State for the State of Arizona and the chief election officer of Arizona. As Arizona's chief election officer, she is responsible for coordinating the State's responsibilities under the NVRA. *See* 52 U.S.C. § 20509; A.R.S. § 16-142. This includes ensuring that Arizona's public assistance agencies and Department of Transportation satisfy their NVRA obligations. *See* 52 U.S.C. § 20506(a)(4)(A); A.R.S. § 16-452. Plaintiffs bring this action against Michele Reagan in her official capacity as SOS.

**FACTUAL ALLEGATIONS**

**THE NVRA REQUIRES THE SECRETARY OF STATE TO PROVIDE VOTER REGISTRATION AND ADDRESS UPDATES TO ADOT/MVD CLIENTS**

23. Congress enacted Section 5 of the NVRA, 52 U.S.C. § 20504 ("Section 5"), commonly referred to as the "Motor Voter" law, to streamline the federal voter registration process, improve accessibility to voter registration, and increase the number of qualified voters who are properly registered. 52 U.S.C. § 20501; *see also*, *e.g.*, S. Rep. No. 103-6, at 5 (1993) ("[I]ncorporating voter registration into the drivers licensing process provides a secure and convenient method for registering voters; an effective means of reaching groups of individuals generally considered hard-to-reach for voting purposes . . . and a procedure for keeping rolls current through contact with licensees who change addresses").

24. Section 5 requires motor vehicle agencies to provide federal voter registration services to citizens who engage in certain types of interactions—initial application, renewal, and/or change of address—commonly referred to as "Covered Transactions."

25. Under Section 5, when an individual notifies a motor vehicle agency of a change of address, the individual's voter registration address must be automatically updated unless the individual affirmatively states that the change of address is not for voter

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1 registration purposes. 52 U.S.C. § 20504(d).[2] In other words, change of address for voter 2 registration must be "opt out" and not "opt in."

3       26. Section 5 requires that "[e]ach State motor vehicle driver's license application 4 (including any renewal application) submitted to the appropriate State motor vehicle 5 authority under State law shall serve as an application for voter registration," and that, if the 6 individual is already registered, such an application "shall be considered as updating any 7 previous voter registration by the applicant." 52 U.S.C. § 20504(a).

8       27. Motor vehicle agencies are responsible for transmitting voter registration 9 information received during Covered Transactions to the appropriate election officials within 10 ten days of acceptance or, for transactions that occur within five days of the deadline to 11 register to vote in an election, within five days. *See* 52 U.S.C. § 20504(e). The election 12 officials must then update the voter registration using the information received.

13       28. These requirements must be met regardless of whether a Covered Transaction 14 takes place in-person at a motor vehicle office, online, by mail, over the phone, or through 15 other remote means.

16       29. It is particularly important that state officials in Arizona adhere to the address 17 update requirements of Section 5. Almost 70% of Arizonans changed their residential 18 address between 2000 and 2010, making Arizona the state with the second highest rate of 19 residents with address changes.[3] The U.S. Census Bureau estimates that in 2016, more than 20 800,000 people in Arizona moved within the same county, and more than 126,000 moved to 21 a different county.[4]

22       30. The failure to update a voter's address can have devastating consequences on a

---

[2] The NVRA defines a "motor vehicle driver's license" as including "any personal identification document issued by a State motor vehicle authority." 52 U.S.C. § 20502(3).

[3] *Democratic Nat'l Comm. v. Reagan*, No. CV-16-01065-PHX-DLR, 2018 WL 2191664, at *22 (D. Ariz. May 10, 2018).

[4] U.S. Census Bureau: Am. FactFinder, S0701 Geographical Mobility by Selected Characteristics in the United States, *available at* https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=ACS_16_1YR_B07401&prodType=table (last visited Aug. 11, 2018).

7

voter's right to cast a ballot. Under Arizona law, if a voter has moved, they are required to vote in the polling location for their new address. A.R.S. §§ 16-122, 16-135, 16-584.

31. Voters who casts a ballot at their old polling place, which reflects the address on their voter registration, are completely disenfranchised. A voter who casts a ballot at the polling place associated with their old address must do so by provisional ballot. That provisional ballot, however, will be cast in a precinct that does not correspond to the voter's current address, making it an out-of-precinct ballot. Under Arizona law, no part of an out-of-precinct ballot will be counted—even those parts for which the voter would be eligible (*e.g.*, the votes for statewide and federal offices). A.R.S. §§ 16-122, 16-135, 16-584. Worse, a voter who moves between Arizona counties is unable to vote at either their new or old polling place if their voter registration address is not up to date. *See* A.R.S. §§ 16-122, 16-135, 16-584.

32. As a result of the SOS's failure to keep the Arizona voter rolls updated with address changes submitted to ADOT/MVD, Arizona is consistently at the top of the list of states that collect and reject provisional ballots each election. One of the most frequent reasons provisional ballots in Arizona are rejected is because they are cast out-of-precinct.[5] In the 2008 general election, 14,885 out-of-precinct ballots were not counted, constituting 0.6% of total ballots cast. In the 2012 general election, 10,979 ballots were cast out-of-precinct and thus not counted, constituting 0.5% of all ballots cast.[6] The SOS's failure to update addresses in compliance with the NVRA contributes significantly to the high number of ballots rejected in Arizona.

33. The SOS's failure to update voter addresses in compliance with Section 5 of the NVRA may also have a profound effect on Arizona's vote by mail system. In 2016, approximately 75% of votes cast in Arizona were ballots received by mail, with many of

---

[5] *Democratic Nat'l Comm.*, 2018 WL 2191664, at *21.

[6] *Feldman v. Ariz. Secretary of State*, 842 F.3d 613, 618 (9th Cir. 2016), *rev'd en banc*.

those cast by voters on Arizona's Permanent Early Voting List (PEVL).[7]  If a voter on the PEVL moves and their registration address is not updated, the voter will not receive their ballot.

**THE SECRETARY OF STATE'S CHANGE OF ADDRESS PROCEDURES VIOLATE SECTION 5 OF THE NVRA**

34. The SOS is violating the NVRA by failing to update the voter registration addresses of persons who report a change of address to ADOT/MVD or who submit a driver's license or state identification card application or renewal bearing an address different from the one at which the individual is registered to vote.  Instead, individuals who wish to update their voter registration address must take additional affirmative steps, in direct violation of Section 5.

35. On information and belief, ADOT/MVD regularly sends every change of address it collects from ADOT/MVD clients to the Secretary of State, regardless of whether the individual has chosen the voter registration option on ADOT/MVD's in-person or online forms.

36. However, on information and belief, the SOS does not use the address update information it receives from ADOT/MVD to automatically update addresses for voter registration purposes.

37. Only when an individual takes the affirmative step of checking the voter registration box affirming they would like to register to vote or update their voter registration, or, in the case of online changes of address, follows the link to a different website and completes an entirely new voter registration application, does the SOS update the individual's voter registration record to reflect the new address information.

38. The SOS also violates the NVRA because she has failed to ensure that ADOT/MVD's Duplicate/Credential Update Application and Driver License/Identification

---

[7] *EAVS Deep Dive: Early, Absentee and Mail Voting*, U.S. ELECTION ASSISTANCE COMMISSION, Oct. 17, 2017, at 3, https://www.eac.gov/documents/2017/10/17/eavs-deep-dive-early-absentee-and-mail-voting-data-statutory-overview/ (last visited Aug. 17, 2018).

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Card Application forms comply with the NVRA. As Arizona's chief election officer, the SOS is responsible for taking all possible steps to ensure ADOT/MVD's NVRA compliance. *See, e.g.*, *Harkless v. Brunner*, 545 F.3d 445, 452 (6th Cir. 2008); *Valdez v. Herrera*, Civ. No. 09-688 JCH/DJS, 2010 U.S. Dist. LEXIS 142209 at *34-35 (D.N.M. Dec. 21, 2010), *aff'd sub nom.*, *Valdez v. Squier*, 676 F.3d 935 (10th Cir. 2012); *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014).

39. An individual applying in person for a new driver's license or identification card must complete the Driver License/Identification Card Application (ADOT form 40-5122). The form asks whether the applicant wishes to register to vote or update an existing voter registration. An applicant who is already registered to vote has their address updated ***only*** if the applicant affirmatively checks "yes" in response to this question . The Driver License/Identification Card Application violates Section 5 because it requires applicants to affirmatively check a box if they wish to update their existing voter registration address rather than making the update automatic unless an applicant selects to opt out. 52 U.S.C. § 20504(d).

40. An individual who already possesses a driver's license or identification card and wishes to report a change of address in person at an ADOT/MVD office may do so by completing a Duplicate/Credential Update Application (ADOT form 40-5145).[8] The form provides no indication that it can or will be used to update an existing voter registration and asks only if the applicant wishes to register to vote. Only if an already registered voter answers "yes" to this immaterial question is the individual's voting address updated. Like the Driver License/Identification Card Application, the form violates Section 5 because it does not serve to update the applicant's voter registration address unless the applicant takes the affirmative step of checking an "opt in" box. 52 U.S.C. § 20504(d).

41. Similarly, the SOS is violating the NVRA because she has failed to ensure that

---

[8] In some ADOT/MVD offices, individuals use the Driver License/Identification Card Application form rather than the Duplicate/Credential Update Application form to update their address. As explained above, this form violates the NVRA when a new address is reported to ADOT/MVD.

10

1 the process for change-of-address transactions conducted through ADOT/MVD's Service
2 Arizona website ("Service AZ") complies with Section 5. When an individual navigates to
3 the "Address/Email Change" page on Service AZ and submits an updated address, that
4 update will be reflected in their driver's license/state identification card record but the SOS
5 does not use it to update the individual's voter registration address as required by Section 5.

6     42. Instead, the online address update form merely provides a hyperlink an
7 individual may click to initiate a separate transaction to update their address for voter
8 registration purposes. If an individual follows the link, they are directed to a separate
9 webpage and must complete an entirely new voter registration form to update their voter
10 registration address. The addresses of those individuals who do not click the link and
11 complete the new voter registration form are not updated, in violation of Section 5.

12     43. In sum, a voter who provides their new address to ADOT/MVD, whether in-
13 person or online, must take additional affirmative steps to ensure that the updated address is
14 applied to their voter registration record.

15     44. On information and belief, the SOS has taken no steps to ensure that
16 ADOT/MVD forms, procedures, and practices comply with Section 5 of the NVRA. This
17 lack of oversight has led to thousands of voters not being properly registered to vote.

18     45. The SOS's failure to ensure that a voter's registration address is updated when
19 they update their driver's license address violates the NVRA and contravenes the statutory
20 purpose of ensuring that voter rolls are kept accurate and up-to-date and that voters need not
21 repeatedly reregister to avoid falling off the voter rolls.

**THE SECRETARY OF STATE'S FAILURE TO FOLLOW SECTION 5 OF THE NVRA HARMS PLAINTIFFS**

24     46. The SOS's ongoing failure to comply with the NVRA harms Plaintiffs by
25 depriving their members of the opportunity to update their address when conducting Covered
26 Transactions with ADOT/MVD, unless those members take additional affirmative steps.
27 This also requires Plaintiffs to expend considerable resources, staff time, and volunteer time
28 educating and registering voters to mitigate the impact of the SOS's failures to adhere to the

11

plain language of Section 5.

47. To mitigate the SOS's Section 5 harms to the public, the League spends considerable time and resources educating Arizona residents who are already registered voters about the need to update their voter registration addresses. As part of the League's voter registration drives, to ensure all eligible voters have an opportunity to vote, the League collects updated voter registration applications from already registered voters who need to change their voter registration address.

48. Due to the SOS's ongoing violations of the NVRA, the League has expended considerable resources assisting voters to update their address, when those voters should have had their voter registration address automatically updated when they changed their driver's license address with ADOT/MVD.

49. If the SOS complied with her obligations under the NVRA, the League could have deployed these resources toward other activities germane to its purposes, including lobbying, voter education, and ballot initiative activities, as well as reaching additional voters through its voter registration efforts. Based on the SOS's ongoing violations, the League reasonably anticipates that this diversion of resources will continue.

50. Similarly, as part of Mi Familia Vota's efforts to register voters, the organization spends time and resources educating and collecting voter registration applications from already registered voters who need to update their voter registration address.

51. Mi Familia Vota voter registration efforts are part of a wide range of services the organization provides to Latinos in Arizona. These include assistance with completing citizenship applications, leadership development programs, voter education programs, and get-out-the-vote campaigns.

52. Due to the SOS's ongoing violations of the NVRA, Mi Familia Vota has expended additional resources on assisting voters who should have had their voter registration address automatically updated when they changed their driver's license address with ADOT/MVD. These are resources that Mi Familia Vota was not able to spend on its

12

other activities. Based on the SOS's ongoing violations, Mi Familia Vota reasonably anticipates that this diversion of resources will continue.

53. Promise Arizona also spends significant time and resources on mitigating the impact of the SOS's failure to update voter registration addresses when voters change their address with ADOT/MVD. A significant portion of Promise Arizona's voter registration work is focused on helping voters update their address for voter registration purposes.

54. Promise Arizona works with many voters who face economic instability that forces them to frequently change addresses. Promise Arizona has worked with numerous voters who have moved, updated their address with ADOT/MVD, and then had to separately update their voter registration address. For these very mobile voters, this may happen multiple times a year.

55. Because Promise Arizona does not charge fees for any of its services, the money and time spent on voter registration and address updates acutely impacts the other work the organization is able to do. In addition to the organization's voter registration work, Promise Arizona conducts non-voter related issue advocacy and programming including: English language, technology, and leadership training; U.S. citizenship application assistance; community-based organizing; and direct legal services for immigrant and refugee communities including Deferred Action for Childhood Arrival ("DACA") renewals, power of attorney, and fee waivers. Promise Arizona's Leadership Institute works with immigrant and Latino students to build confidence and self-esteem; ground students in the history and values of past social movements; and to become leaders in the community. If not for the SOS's failure to comply with Section 5 of the NVRA, Promise Arizona could devote more resources, staff time, and volunteer time to these issues and programs.

56. Due to the SOS's ongoing violations of the NVRA, Promise Arizona has expended additional resources on assisting voters with updating their address, when those voters should have had their voter registration address automatically updated when they changed their driver's license address with ADOT/MVD. If the SOS complied with her obligations under the NVRA, Promise Arizona could have deployed its resources toward

13

other activities germane to its purposes, including lobbying, voter education, and ballot initiative activities. Based on the SOS's ongoing violations, Promise Arizona reasonably anticipates that this diversion of resources will continue.

## THE SECRETARY OF STATE HAS FAILED TO CORRECT ONGOING NVRA VIOLATIONS

57. To ensure compliance, the NVRA provides that "[a] person who is aggrieved by a violation [of the NVRA] may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). If the violation is not corrected within a set period of time (ordinarily 90 days), "the aggrieved person may bring a civil action . . . for declaratory or injunctive relief . . . ." 52 U.S.C. § 20510(b)(2).

58. On November 14, 2017, counsel for Plaintiffs sent a letter to the SOS, ADOT/MVD, the Arizona Health Care Cost Containment System ("AHCCCS") and the Arizona Department of Economic Security ("DES") notifying them of violations to Section 5, Section 7 and Section 8 of the NVRA (the "November Letter"). The November Letter indicated that Plaintiffs' counsel was prepared to meet with the SOS and the agencies to help them develop a comprehensive compliance plan. A copy of the November Letter is attached as Exhibit A.

59. The SOS and the agencies requested and were granted an extension to respond to the November Letter. The SOS finally responded on June 14, 2018.

60. Plaintiffs and ADOT/MVD entered into an Interim Memorandum of Understanding executed August 14, 2018, in which ADOT/MVD agreed to make the necessary changes to the relevant ADOT/MVD forms and procedures ("MOU"). A copy of the MOU is attached as Exhibit B. However, even if ADOT/MVD could make these changes unilaterally and even if the SOS began processing ADOT/MVD address changes as voting address changes in the future, these actions would provide only prospective relief for voters who engage in future Covered Transactions. Only the SOS has the capacity to rectify the previous violations and prevent voter disenfranchisement in the 2018 general election for voters whose voting addresses are out of date. She has repeatedly refused to remedy these

1 violations.

2 61. On information and belief, the SOS's violations of Section 5 of the NVRA
3 identified in the November Letter are continuing and have not been cured.

4 62. On information and belief, the SOS could update the addresses of voters who
5 submit address changes to ADOT/MVD—but to date, she has failed to do so.

6 63. As a result of the SOS's continuing failure to update addresses in compliance
7 with the NVRA and to ensure ADOT/MVD compliance with Section 5 of the NVRA,
8 persons in Arizona applying for and renewing driver's licenses or state identification cards
9 are not currently offered the opportunity to update their voter registration address as required
10 by federal law.

11 64. The SOS's ongoing violations of the NVRA harm Plaintiffs and prevent
12 thousands of individuals from being able to vote in federal elections. Judicial intervention is
13 necessary to prevent the SOS from further harming Plaintiffs and the public, and to remedy
14 past harms that only the SOS can correct.

## **FIRST CAUSE OF ACTION**

### **Violation of Section 5 of the National Voter Registration Act of 1993**

17 65. Plaintiffs incorporate by reference the allegations contained in paragraphs 1
18 through 64 as if fully set forth herein.

19 66. The SOS does not provide voter registration opportunities and assistance as
20 required by Section 5 of the NVRA, 52 U.S.C. § 20504. The SOS has failed to ensure that
21 individuals who engage in Covered Transactions have their voter registration address
22 automatically updated without taking additional steps, in accordance with Section 5.

23 67. The failure of the SOS to comply with Section 5 has injured and will continue
24 to injure the Plaintiffs because Plaintiffs have been required to invest additional resources in
25 voter registration and divert resources from other activities critical to their missions.
26 Remediation of these ongoing violations will permit Plaintiffs to allocate their scarce
27 resources to other activities important to their missions.

28 68. The failure of the SOS to comply with Section 5 has also injured and will

15

continue to injure Plaintiffs' members. Remediation of these ongoing violations will ensure that members of the League, Mi Familia Vota, and Promise Arizona receive the voter registration services required by the NVRA during future Covered Transactions.

**BASIS FOR INJUNCTIVE RELIEF**

69. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 68 as if fully set forth herein.

70. The SOS has violated Section 5 of the NVRA by depriving Arizona residents of the voter registration and address update services required by this statutory provision.

71. Missed voter registration opportunities impose unnecessary and legally prohibited burdens on voters, including members of Plaintiff organizations, who must seek out voter registration materials and opportunities that should have been provided to them through the election procedures that the SOS coordinates. The SOS's failure to ensure proper compliance with the NVRA may result in complete disenfranchisement of Arizona residents who are unable to update their registration prior to the voter registration deadline.

72. These missed opportunities impose considerable, unnecessary burdens on the League, Mi Familia Vota, and Promise Arizona as they must fill the gap by providing voter registration address update services that the Secretary of State is failing to ensure occur.

73. Because monetary relief cannot compensate for Plaintiffs' members lost opportunities to participate in the democratic process and Plaintiffs' opportunities to pursue their organizational objectives, Plaintiffs have no adequate remedy at law for the SOS's violation of their rights and will suffer irreparable harm without injunctive relief.

74. The SOS will suffer no undue harm if compelled to comply with her statutory obligations, while Arizona residents may be wholly deprived of their right to vote if the SOS's violations of the law continue. Therefore, the balance of hardships favors a mandatory permanent injunction against the SOS.

75. Issuing an injunction against the SOS promotes the public interest by ensuring voter rolls are accurate and current and by increasing the number of eligible individuals who can vote and have their voices heard.

76. Because the SOS is the only person able to update the voter registration addresses of voters whose addresses were not properly updated, only the SOS can rectify the ongoing harm to eligible voters who may be disenfranchised because of the SOS's failure to comply with Section 5. Injunctive relief is required to remedy the SOS's current and past violations of the NVRA and to secure ongoing compliance.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against the SOS on the claims for relief as alleged in this Complaint and enter an Order:

(i) declaring, pursuant to 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2), that the SOS has violated Section 5 of the NVRA, 52 U.S.C. § 20504, by failing to provide voter registration services during Covered Transactions;

(ii) permanently enjoining the SOS, her agents and successors in office, and all persons working in concert with her office, from implementing practices and procedures that violate Section 5 of the NVRA, 52 U.S.C. § 20504;

(iii) directing the SOS, under a court-approved plan with appropriate reporting and monitoring requirements, to take all appropriate measures necessary to remedy the past harm caused by her non-compliance with Section 5 of the NVRA;

(iv) directing the SOS, under a court-approved plan with appropriate reporting and monitoring requirements, to take all steps necessary to ensure ongoing compliance with the requirements of Section 5 of the NVRA, 52 U.S.C § 20504, including, without limitation, procedures for ensuring that voters who engage in Covered Transactions with ADOT/MVD have their voting address updated unless they affirmatively state that the ADOT/MVD address change does not apply for voter registration purposes;

(v) directing the SOS to take all steps necessary to train and direct election workers to count all votes cast by provisional ballot for state and federal offices if the voter is eligible to vote in those races, regardless of whether the voter casts their provisional ballot in the precinct for their former or updated address;

1     (vi)   awarding Plaintiffs reasonable attorney fees, including litigation expenses, and costs pursuant to 52 U.S.C. § 20510(c);

    (vii)   retaining jurisdiction over this action to ensure that the SOS complies with her obligations under the NVRA; and

    (viii)   awarding such other equitable and further relief as the Court deems just and proper.

. . .

. . .

. . .

DATED this 18th day of August, 2018.

BRYAN CAVE LEIGHTON PAISNER LLP


By  s/ Lawrence G. Scarborough
   Lawrence G. Scarborough
   Teresa P. Meece
   Julie M. Birk
   Two North Central Avenue, Suite 2100
   Phoenix, Arizona 85004-4406

Kathy Brody
Darrell Hill
AMERICAN CIVIL LIBERTIES UNION OF ARIZONA
P.O. Box 17148
Phoenix, Arizona 85011-0148

Sarah Brannon* **
Ceridwen Cherry*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, DC 20005-2313

Theresa J. Lee*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, New York 10004

Stuart Naifeh*
DEMOS
80 Broad St, 4th Floor
New York, New York 10004

Chiraag Bains* **
DEMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001

Jon Greenbaum*
Ezra D. Rosenberg*
Arusha Gordon*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005

\* *Pro hac vice* applications forthcoming.
\*\* *Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).*

Attorneys for Plaintiffs

12083503v3