# EXHIBIT A

  

November 14, 2017

*Via certified mail and email*

Michele Reagan
Arizona Secretary of State
Office of the Secretary of State
1700 W Washington Street, 7th Floor
Phoenix, AZ 85007-2808

RE: *Arizona's Compliance with the National Voter Registration Act*

Dear Secretary Reagan:

Recognizing that the right to vote is "at the heart of our democracy," *Burson v. Freeman*, 504 U.S. 191, 198 (1992), and the burdens imposed on that right by onerous registration requirements, Congress enacted the National Voter Registration Act of 1993 ("NVRA") to ease obstacles to voting by providing individuals with additional opportunities to register to vote. *See* S. Rep. No. 103-6 (1993). In enacting the NVRA, Congress specifically found that "unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3).

We are writing on behalf of the League of Women Voters of Arizona, Mi Familia Vota Education Fund and Promise Arizona, as well as persons eligible to register to vote that these organizations represent, and others similarly situated, to notify you that the State of Arizona is not in compliance with Section 5, Section 7, or Section 8 of the NVRA, 52 U.S.C. §§ 20504; 20506; 20507, and that State agencies are failing to meet their obligations under Section 203 of the Voting Rights Act ("VRA") in counties covered by its protections.

Section 5 of the NVRA requires states to provide individuals with an opportunity to register to vote when they conduct certain driver license and non-driver identification card transactions. Section 7 requires states to provide the opportunity to register to vote and to provide assistance with that voter registration during public assistance applications, recertifications, renewals, and changes of address. Section 8 of the NVRA requires states to ensure that every eligible applicant is in fact added to the voter registration rolls when they submit their voter registration application to a designated voter registration agency before the prescribed deadline. Section 8 also requires that if an individual moves to another address within the same registrar's jurisdiction, the registrar shall update the registrant's addresses on the voter registration rolls. Arizona is failing to comply fully with the requirements of these three Sections of the NVRA. Extensive review of available voter registration data, and public documents and an extensive on-the-ground investigation of agency practices have directed us to this conclusion.

As Arizona's chief election official, you are ultimately responsible for the State's compliance with the NVRA. *See* Ariz. Rev. Stat. § 16-142 ("The secretary of state or the secretary's designee is . . . [the] chief state election officer who is responsible for coordination of state

1

responsibilities under the national voter registration act of 1993"); *Harkless v. Brunner*, 545 F.3d
445, 451- 53 (6th Cir. 2008).  We urge you to take immediate steps, in conjunction with relevant
state agencies, including the Arizona Department of Transportation (ADOT), the Arizona
Department of Economic Security (DES), and the Arizona Health Care Cost Containment
System (AHCCCS), and relevant Arizona counties, to bring the State of Arizona into compliance
with Sections 5, 7, and 8 of the NVRA, and bring Arizona into compliance with Section 203 of
the Voting Rights Act.

ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law
have years of experience in working with states to ensure compliance with the NVRA and other
federal voting rights statutes.  We hope to work amicably with you to remedy Arizona's non-
compliance but will pursue litigation if necessary.

I.    **VIOLATIONS OF SECTION 5 OF THE NVRA**

A.    **Arizona's Obligations Under Section 5 of the NVRA**

Section 5 of the NVRA requires the Arizona Department of Transportation ("ADOT") and its
Motor Vehicle Division ("MVD") to provide individuals with an opportunity to register to vote
in conjunction with an initial or renewal application for a driver license or state-issued
identification card ("ID card").  52 U.S.C. § 20504(a)(1), (d).[1]  The NVRA mandates that when
an individual applies for or renews a driver license or ID card that application also "serve as an
application for voter registration . . . unless the applicant fails to sign the voter registration
application."  52 U.S.C. § 20504(a)(1).  A voter registration application "shall" be included as
part of every application for state driver license or ID card.  *Id.* § 20504(c)(1).  If an individual is
already registered, their driver license application or renewal shall "update any previous voter
registration[.]"  52 U.S.C. § 20504(a)(2).

Additionally, Section 5(d) of the NVRA requires that any request ADOT receives to change the
address associated with a driver license must serve to automatically update the client's voter
registration information unless the client affirmatively opts out.  *Id.* § 20504(d) (noting that
"[a]ny change of address form submitted in accordance with state law shall serve as a
notification of change of address for voter registration . . . unless the registrant states on the form
that the change of address is not for voter registration purposes").[2]

ADOT must provide these voter registration services regardless of whether a transaction takes
place in person at an ADOT office or remotely via phone, mail, email, or internet.  *See, e.g.,*
*Stringer v. Pablos*, No. 5:16-CV-257-OLG, 2017 WL 1861910, at *7 (W.D. Tex. Mar. 31, 2017)
(holding that online transactions are covered by Section 5); *Action NC v. Strach*, 216 F. Supp. 3d

---

[1] Throughout this letter, references to driver licenses include state personal identification cards, which are available
in Arizona.  *See* https://www.azdot.gov/motor-vehicles/driver-services/driver-license-information/identification-(id)-
card; *see also* 52 U.S.C. § 20502(3) (defining "motor vehicle driver's license" to "include[] any personal
identification document issued by a State motor vehicle authority").

[2] Because the NVRA requires that address updates must be performed for "any" address update submitted to ADOT,
the corresponding update to the voter registration record when a registered voter reports to ADOT they have moved
should be performed whether the individual moves within the same county or to a new county within the state of
Arizona.

2

597, 623 (M.D.N.C. 2016) (holding that requirements of Section 5 "apply equally to in-person and remote covered transactions"); U.S. Department of Justice, Civil Rights Division, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q4, *available at* https://www.justice.gov/crt/national-voter-registration-act-1993-nvra (last visited Oct. 20, 2017) ("to the extent that the State provides for remote applications for driver licenses, driver license renewals, or driver license changes of address, via mail, telephone, or internet or other means, then provision must be made to include the required voter registration opportunity as well").

### B.    Arizona's Violations of Section 5 of the NVRA

ADOT's current and on-going failure to comply with its voter registration obligations under Section 5 of the NVRA is established by several sources, including site visits,[3] certain ADOT forms, information publicly available on ADOT's website (Service Arizona, https://servicearizona.com), and internal policy and other documents addressing the voter registration services provided by ADOT. Specifically, ADOT violates the NVRA during change of address transactions.[4] As described below, ADOT clients who conduct a change-of-address transaction in person or online through Service Arizona are not provided with the voter registration services mandated under the NVRA. ADOT requires—in violation of Section 5(d) of the NVRA—that individuals who report a change of address take affirmative steps to update their voter registration information by requiring that the applicant request to "apply for an address change on his or her voter registration."[5]

#### 1.    In-Office Change-of-Address Transactions Require ADOT Clients to Opt In to Changing their Voter Registration Information.

During change of address transactions conducted in ADOT offices, rather than using the opt-out procedure required by Section 5, ADOT requires voters to opt in to have their voter registration address updated. In Arizona, a change of address is reported to ADOT in office using a Duplicate/Credential Update Application (https://www.azdot.gov/docs/default-source/mvd-forms-pubs/40-5145_fillable.pdf?sfvrsn=4). This form requires an ADOT client to affirmatively request that their voter registration information be updated when submitting a request to update their address on their license (rather than automatically updating the information unless the individual declines that such a change be made). This process is an "opt-in" process; not the "opt-out" process required by Section 5 of the NVRA.

---

[3] In summer 2017, staff and volunteers from our organizations visited nine ADOT offices as part of an investigation into NVRA compliance.

[4] There may be additional NVRA violations during ADOT covered transactions.

[5] Arizona has a number of "Authorized Third Party offices" for driver services that are operated by private individuals or businesses, and contract with and are monitored by MVD. *See* https://www.azdot.gov/motor-vehicles/hours-and-locations. As explained *infra* at II.A, third-party contractors that are providing services covered by the NVRA must comply with the NVRA. The Authorized Third Party offices in Arizona are not fully compliant with the NVRA, as they provide, for the most part, the same voter registration services as ADOT itself. Any efforts to bring ADOT into compliance with the NVRA must also include the Authorized Third Party offices.

ADOT offices which do not use the Duplicate/Credential Update Application, and instead use the initial driver license application to update addresses, also appear to be in violation of the NVRA.[6]  When used as a process to report a change of address, the initial application form violates the NVRA, as this form, like the Duplicate/Credential Update Application, requires an individual to take affirmative steps to update their voter registration, and thus does not function as an automatic voter registration update.

> **2.    ADOT Does Not Offer Clients Who Conduct Change-of-Address Transactions Online Through "Service Arizona" the Voter Registration Services Required by the NVRA.[7]**

In Arizona, it is possible to update a driver license address through Service Arizona (https://servicearizona.com/addressChange?popularclick).  But, like the in-office processes for change of address, voter registration offered through Service Arizona is not compliant with the NVRA because it requires voters to take affirmative steps if they want to update their voter registration.  Below is a screenshot from Service Arizona through which clients report a change of address, showing the voter registration language:

You can also register to vote or update your voter registration using ServiceArizona.com.

 

Rather than *automatically* updating an applicant's address for voter registration purposes at the same time as the applicant's address for their driver license is updated, all that is provided is an opportunity to click a button about voter registration.  After taking the affirmative step of clicking the button to indicate that they would like to register to vote, clients must also complete a new voter registration application through Service Arizona's online voter registration portal.  Unless clients go through this entire additional process, their voter registrations are not updated.  This process, where the client must take affirmative steps to ensure that their voter registration record is updated, is a clear violation of Section 5.

## II.    VIOLATIONS OF SECTION 7 OF THE NVRA

### A.    Arizona's Obligations Under Section 7 of the NVRA

The NVRA requires Arizona to "designate as voter registration agencies . . . all offices in the State that provide public assistance. *See* 52 U.S.C. § 20506(a)(2)(A).  "Public assistance" offices include state offices that administer the Supplemental Nutritional Assistance Program ("SNAP"), Medicaid, Children's Health Insurance Program ("CHIP"), and Temporary Assistance for Needy

---

[6] As mentioned above, in the summer of 2017, staff and volunteers from our organizations visited nine ADOT offices as part of an investigation into NVRA compliance.  Of those nine offices, three did not have any Duplicate/Credential Update Applications available.

[7] Service Arizona can also be accessed through kiosks located at MVD offices throughout the state. *See* https://www.azdot.gov/motor-vehicles/hours-and-locations.  The Service Arizona processes are basically the same whether they are accessed through the internet or through a kiosk in an MVD office, so the NVRA violations are the same.

Families ("TANF").  *See* H.R. Rep. No. 103-66, at 19 (1993) (Conf. Rep.); Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q13.[8] In Arizona, these programs are administered by DES and AHCCCS, and therefore, these agencies are "voter registration agencies."

Section 7 of the NVRA requires these Arizona public assistance offices to (i) distribute voter registration application forms; (ii) assist applicants in completing the voter registration application forms; and (iii) accept completed voter registration application forms and forward them to the appropriate election official.  *See* 52 U.S.C. § 20506(a)(4)(A).

More specifically, each office must (i) distribute a voter registration application form with each application for public assistance and with each recertification, renewal or change of address form ("covered transactions"), except under limited circumstances as explained below; (ii) inquire in writing, through statutorily-prescribed language, whether the applicant would like to register to vote or change their voter registration address ("voter preference question"); (iii) provide, in writing, several statutorily-prescribed disclaimer statements, including notice that the decision whether to register to vote will not affect the amount of public assistance provided by the agency; and (iv) provide assistance in completing the voter registration application form to the same degree the agency provides assistance in completing its own forms, including assistance with providing information necessary to establish eligibility to register to vote.  52 U.S.C. § 20506(a)(6).  The NVRA's requirements are very specific and states must comply strictly with those obligations.  *See, e.g.*, *United States v. Louisiana*, 196 F. Supp. 3d 612, 673-75 (M.D. La. 2016) (holding that substantial compliance with the NVRA is not sufficient; "the Court reads Section 7 to prescribe strict compliance with its commands, finding no support for any other standard in the NVRA's plain and unambiguous language").

The NVRA further provides that public assistance offices must distribute a voter registration application to each public assistance applicant or client engaging in a covered transaction unless the applicant or client affirmatively declines to register to vote *in writing*.  *Valdez v. Squier*, 676 F.3d 935, 945-47 (10th Cir. 2012) (citing 52 U.S.C. § 20506(a)(6)).  To decline "in writing," a client must affirmatively opt out by answering "no" in response to the voter preference question. *Id.* at 945-46 ("[A]n applicant's failure to check either the 'YES' or 'NO' box on the voter declination form does not constitute a declination 'in writing.' . . . [The NVRA] requires an applicant to affirmatively, by way of writing, 'opt out' of receiving a voter registration form.").

Public assistance offices must provide voter registration during each covered transaction, regardless of whether the transaction takes place in an agency office, over the Internet or via email, telephone, fax, or other remote means.  *See, e.g.*, *Louisiana*, 196 F. Supp. 3d at 669 ("[J]urisprudence compels this Court to honor Section 7's specific language and hold the NVRA to cover what its text also commands: remote transactions."); *Action NC*, 216 F. Supp. 3d at 623 (concluding, in denying defendant's motion to dismiss, that plaintiffs have sufficiently pled a plausible claim that "Sections 5 and 7 of the NVRA apply equally to in person and remote covered transactions"); *Ga. State Conf. of the NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1329

---

[8] Section 7 also imposes voter registration services requirements on additional programs, including Women, Infants, and Children ("WIC") and state run disability programs.  NVRA compliance by those additional programs is not addressed in this notice letter.

(N.D. Ga. 2012); *see also* U.S. Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q24.

The NVRA also requires effective distribution of voter registration applications for each covered transaction. Section 7 explicitly requires agencies to "distribute" the federal voter registration mail-in form or the state's version of the same. 52 U.S.C. § 20506(a)(6)(A). "Distribute is defined as 'deliver[ing]' or 'to disperse.' . . . The statute is very clear in that with each transaction the applicant must be given a form that is described in Section 9 of the NVRA." *Ferrand v. Schedler*, No. 11-cv-926, 2012 WL 1570094, at *9 (E.D. La. May 3, 2012) (quoting Black's Law Dictionary (9th ed. 2009)). Merely providing a link to a voter registration application that must be downloaded and printed out by applicants in order to be used effectively fails to comply with the Section 7 requirement to *distribute* a voter registration application. Furthermore, providing only access to an online voter registration system that cannot be accessed by all citizens does not comply with the requirement to distribute. In order to be NVRA-compliant during remote transactions, covered agencies must offer to mail a paper voter registration application directly to any client who requests it. The failure to provide clients completing a remote transaction the option of having a voter registration application mailed to them is not just a technical violation of the NVRA; it has a real impact on the ability of public assistance applicants—who are low income and thus less likely to have driver licenses (enabling them to register online) or access to a printer (enabling them to print a hard copy of the application themselves)—to engage in the political process. Unless there is a method of physical distribution available, many eligible voters will not receive actual distribution of the form.

Finally, the NVRA's requirements cannot be circumvented simply by contracting the underlying transaction to a third party. U.S. Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q5 ("When a state contracts with a private entity to administer services in an agency that is required to offer voter registration, the ultimate responsibility for ensuring provision of voter registration services remains with the state, and the voter registration requirements under the NVRA remain the same."); *see also Louisiana*, 196 F. Supp. 3d at 675 ("[T]he NVRA compel[s] this Court to hold [the Louisiana Department of Health] responsible for the violations of its chosen agents when the power to appoint, to monitor, and to maintain rests upon it alone and when each agent receives payment from LA by virtue of its contracts.").

### B.      Arizona's Non-Compliance with Section 7 of the NVRA

ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law recently completed a comprehensive investigation of Arizona's compliance with Section 7 of the NVRA. The investigation included (1) analyzing voter registration and public assistance data; (2) examining public assistance agencies' forms, policies, and practices; and (3) speaking with public assistance employees and clients. Taken together, the evidence indicates that Arizona's public assistance offices are systematically failing to provide the voter registration services mandated by the NVRA, including (1) when individuals leave the voter preference question blank, (2) during certain change of address transactions, (3) during some remote transactions, (4) in connection with certain renewals and recertifications, and (5) when transactions are conducted by third-party contractors.

### 1.    Voter Registration Data Indicating Non-Compliance

According to data Arizona reported to the U.S. Election Assistance Commission, the number of voter registration applications originating from Arizona public assistance offices decreased precipitously over the past decade and a half, from 32,137 in the 1999-2000 reporting period[9] to just 13,135 in 2015-2016,[10] a reduction of nearly 60%. Even more telling, Arizona's reported number of voter registration applications actually went down between 2013-2014 and 2015-2016,[11] even though 2016 was a presidential election year when voter registration rates typically increase and Arizona officials purported to be working on NVRA compliance.

Moreover, this decrease is not due to a decline in social services provided in Arizona or a lack of need for voter registration services. The number of initial food stamp applications through the SNAP program in Arizona around the same general time frame has nearly doubled, from 529,556 in 2004[12] to 965,046 in 2016.[13] And, in 2016, only 58% of Arizona citizens earning an annual income of less than $30,000 were registered to vote, while 76% of those earning $60,000 or more were registered to vote.[14] In other words, there is a substantial voter registration gap between low- and high-income Arizona citizens, and only slightly more than half of low-income Arizona citizens are registered to vote.

In our experience, such a decrease, in the face of rising caseloads and persistent need, is an important consideration and likely indicates systematic non-compliance and disproportionate harm to voter participation by low-income groups and people of color.

---

[9] U.S. Election Assistance Commission, *The Impact of the National Voter Registration Act of 1993 on the Administration of Elections for Federal Office 1999-2000* (June 2001), Table 2 page 1, *available at* https://www.eac.gov/assets/1/6/The%20Impact%20of%20the%20National%20Voter%20Registration%20Act%20on%20Federal%20Elections%201999-2000.pdf.

[10] U.S. Election Assistance Commission, *The Election Administration and Voting Survey: 2016 Comprehensive Report* (June 2017), NVRA Appendix A, Table 2, *available at* https://www.eac.gov/assets/1/6/2016_EAVS_Comprehensive_Report.pdf.

[11] *See id.*; U.S. Election Assistance Commission, *The Election Administration and Voting Survey: 2014 Comprehensive Report* (June 2017), NVRA Appendix A, Table 2, *available at* https://www.eac.gov/research-and-data/2014-election-administration-voting-survey/.

[12] U.S. Department of Agriculture, Food and Nutrition Services, Program Accountability Division, *Food Stamp Program State Activity Report, 2004* (Feb. 2006), available at https://fns-prod.azureedge.net/sites/default/files/2004_state_activity.pdf.

[13] U.S. Department of Agriculture, Food and Nutrition Services, *Supplemental Nutrition Assistance Program (SNAP), State Level Participation and Benefits* (September 2017), *available at* https://fns-prod.azureedge.net/sites/default/files/pd/29SNAPcurrPP.pdf.

[14] Dēmos analysis of the 2016 Current Population Survey Voting and Registration Supplement. Data *available at* https://www.census.gov/cps/data/.

### 2.     Specific NVRA Violations Identified

In addition to general concerns highlighted by the precipitous drop in voter registration applications generated by Arizona's public assistance agencies, our on-the-ground investigation and review of agency policies and procedures highlight several compliance problems that constitute violations of the NVRA.

#### a.   *Blank Voter Preference Questions*

The NVRA requires designated agencies to present each client with a written voter preference question and to distribute a voter registration application to the client unless the client declines the opportunity to register in writing. It appears from our investigation that DES and AHCCCS are not distributing voter registration applications to clients who leave the voter preference question blank when filling out initial applications, renewal applications, or change of address forms. As noted above, leaving the question blank is not equivalent to declining to register in writing. This is especially troubling with respect to change of address transactions given the high likelihood that the affected client should also have their address changed for voter registration purposes and, without the opportunity to update their registration, will no longer be properly registered to vote.

Documents obtained from the agencies through Arizona's Public Records law show ambiguous, incomplete, and in some cases inaccurate guidance for agency staff concerning the voter preference question. Most concerning are recent training documents. A DES "CBT System Check" training form concerning voter registration (dated 1-4-2017) instructs employees to complete the NVRA-5 forms with "no" answers when the clients have not completed the form themselves. (Arizona uses a form called the NVRA-5 form as a voter preference form, where the voter registration question is provided to clients, along with the NVRA disclosures). Similarly, the DES current Voter Registration Policy, Policy 1-01-24-1, states that "[i]f the applicant or participant does not sign [the NVRA-5 voter preference form], staff shall circle "No" and initial and date the form indicating the individual declined the opportunity to register to vote." Furthermore, a supplementary policy document called "Voter Registration Policy and Procedure" states that if the client does not answer the voter preference question, the staff shall complete the form and indicate that the client's response was "no" and do nothing more. As explained above, this practice violates the NVRA's requirement that a voter registration application be distributed to all clients unless *the client* declines in writing.

While there appears to have been some attempt to correct this violation, the policy manual itself has not changed and, as noted, the most recent training materials do not provide the legally correct guidance about how to respond when a client leaves the voter registration question blank. Moreover, DES and AHCCCS have issued conflicting information to their employees in recent years. On January 12, 2015, DES and AHCCCS issued "News Flash, #14-084F" stating that if the voter preference question was left unanswered, it should be treated as "yes" and clients should receive a voter registration application. But then just a few weeks later on January 30, 2015, DES and AHCCCS rescinded this notice, stating that "an offer of voter registration left unanswered must be treated the same as if the client had answered 'no.'"

8

AHCCCS has issued more recent policy and training documents to its employees that appear to comply with the law on this issue except for the change of address issue discussed below. However, DES has not taken similar steps and, as a result, DES employees are not adhering to the law.[15]   Critically, our field investigation found that front line agency staff appear to be violating the NVRA when the voter preference question is left blank. Five out of the eight DES offices surveyed indicated that a blank voter preference question is treated as a "no" and results in no voter registration application being distributed to the client. This evidence establishes that DES is engaged in on-going systematic violation of Section 7 because it is does not provide voter registration applications to all clients who do not decline in writing.

### b.  Change of Address

AHCCCS' processes for offering voter registration when a client reports a change of address appear to violate the NVRA.  The AHCCCS policy manual addresses voter registration in Sections 1301, 1401, and 1502. While there is additional information addressing "offering voter registration" that makes it clear that voter registration must be offered during a transaction involving a change of address, there is no guidance provided about how this should be accomplished if a client does not come into the office.  There is language stating explicitly that no action by agency staff is necessary if the change is submitted through the Health-e-Arizona Plus portal. *See infra* at II.B.2.c. Furthermore, if the change of address is conducted over the telephone, it is not possible for a client to decline the offer of voter registration in writing, so a voter registration form must be distributed, usually through the mail, to all clients reporting a change of address over the telephone.[16]

There also does not appear to be any guidance in the policy manual or elsewhere for providing the required NVRA disclosures, which must be provided in writing. *See* 52 U.S.C. § 20506(a)(6)(B).  Given this lack of guidance, AHCCCS most likely is violating the requirements of the NVRA whenever clients report a change of address.

---

[15] AHCCCS is responsible for administering the online benefits application in Arizona that can be used to apply for SNAP, Medicaid, CHIP and TANF called Health-e-Arizona Plus ("HEAplus"). *See* https://www.healthearizonaplus.gov/Default/Default.aspx. There is a voter preference question incorporated into this online application.  It appears as though the voter preference question must be answered before an individual can submit the application. Clients, therefore, must always answer the voter preference question during these online benefits transactions, avoiding the circumstance of a blank answer.  This is a best practice to achieve NVRA compliance. But if this is not correct and there is not a hard stop for the voter preference question in HEAplus, AHCCCS is also most likely violating Section 7 in a manner similar to that described *supra* at II.B.2.a.  None of the AHCCSS policy or training manuals address how to respond if a client does not answer the voter preference questions in HEAplus, so it is likely that staff do not distribute voter registration applications to clients in this circumstance.

[16] This is true during any telephone transaction. While AHCCCS may conduct few renewal transactions over the telephone, the policy manual sections refer to telephone renewal transactions.  As with a change of address, it is not possible to obtain a declination in writing over the telephone, so any client conducting a renewal transaction exclusively over the telephone, must be sent a voter registration application.

  *c. Distribution of Voter Registration Applications through the Health-e-Arizona Plus Portal*

As noted, AHCCCS is responsible for administering the online benefits applications in Arizona for SNAP, Medicaid, CHIP and TANF called Health-e-Arizona Plus ("HEAplus") (https://www.healthearizonaplus.gov/app/Info_Family_Individual.aspx?TokenID=0.7530142175 131413). Although the HEAplus benefits application interface contains a voter registration question, none of AHCCCS' training, policy or guidance documents explain the process for providing voter registration applications to clients who indicate they would like to register to vote in response to the required voter registration question. AHCCCS staff do not take any affirmative steps to ensure that voter registration applications are distributed to all clients using the HEAplus application interface when they want to register to vote. Instead, when a client applies for Medicaid, SNAP, or TANF through HEAplus and indicates a desire to register to vote, the client is provided with a link to the Secretary of State's voter registration page where they may register online (if they meet certain requirements) or download a voter registration application, which then must be printed and submitted to the appropriate county recorder or Secretary of State. *See* https://www.azsos.gov/elections/voting-election and then https://www.azsos.gov/elections/voting-election/register-vote-or-update-your-current-voter-information. This same process also occurs if an individual clicks the "voter registration button" on the AHCCCS home page. *See* https://www.healthearizonaplus.gov/app/ Info_Family_Individual.aspx?TokenID=0.7530142175131413. As noted previously, however, this procedure does not satisfy the NVRA's requirement that designated agencies effectively distribute voter registration applications. In addition, Arizona's online voter registration system cannot be used by all Arizona citizens, as it can only be used if an individual has a valid Arizona driver license or a non-operating identification.[17] *See* https://servicearizona.com/webapp/evoter/ register?execution=e1s4. Furthermore, many clients who do not qualify to register online may not have access to a printer. Providing only a link to the Secretary of State's webpage is a violation of the NVRA.

  *d. AHCCCS Automatic Renewal Processes*

As noted above, any renewal or recertification of benefits constitutes a "covered transaction" under the NVRA. And, as AHCCCS policies acknowledge, NVRA-compliant voter registration opportunities must be provided during all Medicaid renewals. However, AHCCCS' Medicaid renewal process currently violates the NVRA. The forms sent to clients who are approved for an automatic renewal of their benefits mention voter registration; however, unless a client returns this form indicating that they do not want to register to vote by checking the box "no," they have not declined in writing and should receive an actual voter registration application. Because, in most cases, these clients are not required to return these forms, there is generally no opportunity for them to answer the voter registration question in writing. Therefore, a blank voter registration application should be distributed as part of this renewal documentation to ensure that

---

[17] Furthermore, even some individuals with an Arizona driver license cannot effectively register to vote online because if that driver license was issued before October 1, 1996, and the individual has not been registered to vote before in that county, the voter registration will not be accepted unless the individual provides some other "acceptable" proof of citizenship. *See State of Arizona's Election Manual*, revised 2014, ¶ 17, at 20, *available at* https://www.azsos.gov/sites/azsos.gov/files/election_procedure_manual_2014.pdf (last visited October 13, 2017).

there is distribution of a voter registration application to every client who does not decline in writing.[18]

### e. Use of Third-Party Contractors

DES operates a program called "SNAP Partnership" with the Arizona Community Action Association and nearly 50 partner organizations.[19]  The purpose of this program is to engage community organizations in the process of SNAP enrollment.  While organizations may participate in the partnership program at different levels, many of these organizations are "Full-Service Partners" that are actively engaged in assisting with actual enrollment of individuals in SNAP.[20]  It is our understanding that these organizations contract with the State to provide assistance with completing and processing SNAP applications and receive reimbursements approved by DES for their enrollment work.[21]

It thus appears that some of these Partners are an integral part of the process by which Arizona and DES provide public assistance services.  However, it is our understanding that transactions conducted or assisted by the Partners do not include the voter registration services required by the NVRA.  None of the partner contracts we reviewed even mention voter registration.

As noted above, Arizona and DES have an obligation under the NVRA to provide voter registration as part of covered public assistance transactions, regardless of whether the transaction is conducted by a state agency or is conducted in whole or in part by a Full-Service Partner.  The Secretary of State and DES are responsible for ensuring that the voter registration services required by the NVRA are offered as part of SNAP applications and recertifications handled by the Full-Service Partners.  This may involve writing voter registration requirements into third-party contracts and providing training to the Full-Service Partners.

Finally, we note that if the Arizona public assistance agencies have contracts with other third-party organizations to provide assistance in completing applications and/or recertifications for any forms of public assistance, the State and its agencies similarly must ensure voter registration is offered in connection with the public assistance transactions.

---

[18] As explained herein, just providing the link to the Secretary of State's voter information page at the bottom of the renewal documentation is not sufficient "distribution."

[19] *See, e.g.*, Arizona Community Action Association, "SNAP PARTNERSHIP," http://www.azcaa.org/partnerships/snap (last visited October 2017).

[20] *See id.*

[21] *Supplemental Nutrition Assistance (SNAP) Outreach Partnership: Application and Budget Training, available at* http://www.azcaa.org/wp-content/uploads/2014/04/Application-and-Budget-Training-FFY-2015-FINAL.pdf.

11

III.    **DOCUMENTARY PROOF OF CITIZENSHIP AND VIOLATIONS OF SECTIONS 7 AND 8 OF THE NVRA**

A.    **Legal Requirements**

With respect to voter registration at designated voter registration agencies, Section 8 of the NVRA requires that Arizona "ensure that any eligible applicant is registered to vote in an election" when the individual submits their voter registration form at a designated "voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election." 52 U.S.C. § 20507(a)(1)(C). When eligible applicants have submitted their voter registration forms at one of these agencies, it is the duty of Arizona to ensure that the applicants are then actually registered to vote. And as noted above, in addition to offering the opportunity to register, each voter registration agency must assist applicants in completing voter registration forms, accept completed voter registration forms, and transmit the forms to the appropriate state official, 52 U.S.C. § 20506(a)(4)—in Arizona, the county recorders, Ariz. Rev. Stat. § 16-134(A).

Furthermore, Arizona law states that if a state voter registration form is submitted unaccompanied by "satisfactory evidence of United States citizenship," which is limited to an Arizona driver license number or a set of particular documents, it is "reject[ed]." Ariz. Rev. Stat. § 16-166(F). However, under federal law, documentary proof of citizenship is not required for registration in federal elections. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247 (2013); *Fish v. Kobach*, 840 F.3d 710 (2016).

B.    **Arizona's Non-Compliance with Sections 7 and 8 of the NVRA**

As described above, the ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law conducted a comprehensive investigation of the availability of voter registration at designated voter registration agencies. The information gathered shows Arizona is systematically failing to "ensure" that applicants are registered to vote after completing voter registration forms through designated voter registration agencies in violation of Section 8 of the NVRA and systematically failing to assist applicants in completing voter registration forms in violation of Section 7 of the NVRA.

Only one of the agency offices visited indicated that they copied and submitted documentary proof of citizenship with the state voter registration form. At another office, a front line staff member expressed surprise that a voter registration form submitted without a copy of proof of citizenship would be rejected, even though the form states, "A complete voter registration form must contain proof of citizenship or the form will be rejected." And six of the eight agencies reviewed did not have federal voter registration forms as an option for applicants who did not have proof of citizenship available at the voter registration agency. By failing to make copies of documentary proof of citizenship when an applicant completes a state voter registration form, or by failing to provide and assist in the completion of federal voter registration forms to those who do not have accompanying proof of citizenship, Arizona's voter registration agencies have not assisted eligible applicants in completing their voter registration applications as required by Section 7 of the NVRA. 52 U.S.C. § 20506(a)(4). This deficiency is especially glaring as DES's Cash and Nutrition Assistance Policy Manual requires those applying for benefits to provide

"primary citizenship documents to verify U.S. citizenship," as part of the application for benefits. *See* Cash and Nutrition Assistance Policy Manual at FAA2.N.06.A.01, *available at* https://extranet.azdes.gov/faapolicymanual/wwhelp/wwhimpl/js/html/wwhelp.htm# href=FAA2/2.N_IDCI.15.17.html. As DES requires presentation of these documents, the voter registration agencies should make copies in order to assist applications in completing their voter registration applications as required by the NVRA.

Similarly, there is no information provided to applicants through the HEAplus application process about the role of documentary proof of citizenship in voter registration, and no training for AHCCCS workers assisting clients using HEAplus about providing the necessary proof of citizenship documents during these transactions. So any client engaged in a covered transaction through HEAplus is not provided sufficient assistance in completing a voter registration application. Moreover, the current voter registration process available through an HEAplus covered transaction— a link to the Secretary of State's website—does not provide any method for clients to successfully register to vote (which requires complying with the documentary proof of citizenship requirements or submitting a federal voter registration form) unless they can use the online voter registration system or have access to a printer and a copy machine. And as explained above, many eligible registrants cannot use the online system to successfully register to vote. Again, this violation of the NVRA disproportionately harms voter participation by certain groups, including low income Arizonans and people of color.

Likewise, by submitting state voter registration forms collected by voter registration agencies to the county recorder without including accompanying proof of citizenship that is in the possession of the relevant voter registration agencies administering the covered transactions, Arizona has failed to ensure that eligible applicants are registered to vote as required by Section 8 of the NVRA. 52 U.S.C. § 20507(a)(1)(C).

## IV.     ADDITIONAL VIOLATIONS OF SECTION 8 OF THE NVRA

### A.     Arizona's Obligations Under Section 8 of the NVRA

Section 8 of the NVRA also governs the circumstances under which voters can be removed from the voter registration rolls. Among other things, when a registered voter moves within the same jurisdiction, "the registrar shall correct the voting registration list accordingly." 52 U.S.C. § 20507(f). Additionally, after updating this information, the voter may not be removed except through the process specified by Section 8. *Id.*

### B.     Arizona's Non-Compliance with Section 8 of the NVRA

Arizona law states that the "county recorder *shall* cancel a registration . . . [w]hen the county recorder receives written information from the person registered that the person has a change of residence within the county and the person does not complete and return a new registration form within twenty-nine days after the county recorder mails notification of the need to complete and return a new registration form with current information." Ariz. Rev. Stat. § 16-165(A)(8) (emphasis added). This law violates Section 8 of the NVRA in two ways. One, it requires the voter to take an extra additional step to update their voter registration, as opposed to requiring

the county recorder to correct the voting registration list. Two, it contemplates cancellation of the voter's registration without following the procedural safeguards of Section 8.

## V.   VIOLATIONS OF SECTION 203 OF THE VOTING RIGHTS ACT

Section 203 of the Voting Rights Act states, "whenever any state or political subdivision (covered by this section) provides any *registration* or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable minority group as well as in the English language." 52. U.S.C. § 10503(c). A number of Arizona counties are covered for Spanish or a Native American language under Section 203.[22]

Unfortunately, it appears that many state agencies operating in Section 203 covered jurisdictions are not providing language assistance in the covered language for voter registration activities. For instance, we did not observe any language assistance offered for voter registration at ADOT or DES offices in counties covered by Section 203 for Native American languages. Furthermore, ten ADOT offices in jurisdictions covered by Section 203 for Spanish were surveyed, but none of the ADOT forms that provide a voter registration opportunity (as required by the NVRA) are available in any language but English. There is a related guidance document providing a Spanish translation of the initial driver license application. However, only two of the ten offices visited had this guidance available in Spanish. Moreover, none of these offices had a Spanish translation of the Duplicate/Update Credential Application used for change of address transactions.

Ariz. Rev. Stat. § 16-452 requires the Secretary of State to "consult[] with each county board of supervisors or other officer in charge of elections" and then "prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting." As the Chief Election Officer for the state, we believe that, in order to help maintain the correctness, impartiality, uniformity and efficiency of voting in Arizona, it is your duty to work with the state agencies within counties covered by Section 203 to ensure that they meet their language assistance obligations.

## VI.   CONCLUSION

The Arizona Department of Transportation, the Arizona Department of Economic Security, and the Arizona Health Care Cost Containment System are engaged in current and on-going violations of the NVRA. In addition, state agencies covered by the NVRA are in violation of Section 203 of the VRA. Together, these violations deprive many State residents of their right to vote and have a particularly harmful impact on low-income Arizonans and people of color. As Arizona's chief election official, you are responsible for ensuring that these agencies comply with the NVRA. This letter serves as notice pursuant to 52 U.S.C. § 20510(b) of violations by Arizona of Section 5 of the NVRA, *id.* § 20504, Section 7 of the NVRA, *id.* § 20506, and Section 8 of the NVRA, *id* § 20507.

---

[22] Voting Rights Act Amendments of 2006, Determinations Under Section 203, 81 Fed. Reg. 87,532, 87,533, *available at* https://www.census.gov/rdo/pdf/1_FRN_2016-28969.pdf.

14

We are prepared to meet with you and other State officials at your earliest convenience to discuss these violations and to assist in your development of a comprehensive plan that addresses the problems identified in this letter.  In the absence of such a plan, we will have no alternative but to initiate litigation at the conclusion of the statutory 90-day waiting period.

Sincerely,

/s/ Sarah Brannon
Sarah Brannon
Senior Staff Attorney for Motor-Voter Enforcement
Voting Rights Project
American Civil Liberties Union
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org

/s/ Adam Lioz
Adam Lioz
Counsel and Senior Advisor, Policy & Outreach
Dēmos
740 6th Street NW., 2nd Floor
Washington, DC 20001
202-864-2735
alioz@demos.org

/s/ Theresa J. Lee
Theresa J. Lee
Staff Attorney
Voting Rights Project
American Civil Liberties Union
125 Broad St.
New York, NY 10004
212-549-2500
tlee@aclu.org

/s/ Arusha Gordon
Arusha Gordon
Associate Counsel
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue NW #400
Washington, DC 20005
202-662-8306
agordon@lawyerscommittee.org

/s/ Darrell Hill
Darrell Hill
Staff Attorney
American Civil Liberties Union (ACLU) of Arizona
P.O. Box 17148
Phoenix, AZ 85011-0148
602-650-1854, ext. 108
dhill@acluaz.org

cc:    John S. Halikowski, Director of the Arizona Department of Transportation
       Thomas Betlach, Director of the Arizona Health Care Cost Containment System
       Michael Trailor, Director of the Arizona Department of Economic Security
       Eric Spencer, State Election Director

# EXHIBIT B

## INTERIM MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") is made by and among the ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law, on behalf of the League of Women Voters of Arizona, Mi Familia Vota Education Fund and Promise Arizona (hereinafter collectively the "Advocates"), and the Arizona Department of Transportation, the Arizona Department of Economic Security and the Arizona Health Care Cost Containment System (hereinafter collectively the "Parties").

### Recitals

WHEREAS, on November 14, 2017, the League of Women Voters of Arizona, Mi Familia Vota Education Fund, and Promise Arizona sent a letter (hereinafter the "Notice Letter") to the Arizona Secretary of State ("SOS"), who is the Chief Election Official, alleging that the State of Arizona is not in compliance with Section 5, Section 7, or Section 8 of the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20504, 20506, and 20507, and that State agencies are failing to meet their obligations under Section 203 of the Voting Rights Act ("VRA") in counties covered by its protections.  This letter was sent on behalf of the above civic engagement organizations by the ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law;

WHEREAS, the agencies whose voter registration activities were addressed in the Notice Letter are Arizona Department of Transportation ("ADOT"), the Arizona Department of Economic Security ("DES"), and the Arizona Health Care Cost Containment System ("AHCCCS") (herein after collectively the "Agencies").  ADOT administers motor vehicle driver license service transactions in Arizona that are covered by Section 5 of the NVRA.  DES and AHCCCS administer public assistance transactions in Arizona that are covered by Section 7 of the NVRA, including the Supplemental Nutritional Assistance Program ("SNAP"), Medicaid, Children's Health Insurance Program ("CHIP"), and Temporary Assistance for Needy Families ("TANF").  *See* H.R. Rep. No. 103-66, at 19 (1993) (Conf. Rep.); Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q13. In addition, the Agencies must comply with Section 203 of the VRA;

WHEREAS, the Agencies deny that they are in violation of the NVRA or VRA;

WHEREAS, the Parties now desire to resolve this matter without the need to resort to litigation;

WHEREAS, Advocates and Agencies share the goal of ensuring that all eligible Arizonans receive the opportunity to register to vote in accordance with the NVRA and the VRA;

WHEREAS, Advocates and Agencies have agreed to engage in on-going negotiations to ensure compliance with the NVRA and VRA, including making changes to the ADOT forms, online systems, and processes concerning changes of address that the parties agree are necessary;

WHEREAS, ADOT currently periodically sends the Secretary of State a delimited text file containing change of address information with respect to driver licenses and non-driver identification cards submitted by all ADOT customers who are over 18 years of age and whose driver license type does not indicate they are non-citizens;

WHEREAS, in recognition of the demands of the November 2018 General Election and needed technology upgrades, the Parties agree to the following Interim Remedial Measures that will be put into place before the General Election;

WHEREAS, Advocates do not concede that the "Interim Measures" described herein remedy all alleged NVRA or VRA violations, but in exchange for the Agencies agreeing to undertake the described actions and the Parties' agreement to engage in comprehensive negotiations concerning long term NVRA compliance, the Advocates are willing to forebear from initiating formal litigation against the Agencies until December 1, 2018, if at all.

NOW, THEREFORE, the undersigned Parties hereby agree to the following Interim Remedial Measures:

**Remedial Mailings – Section 7 Clients:**

1) A one-time Remedial Voter Registration Mailing shall be sent by the Agencies to each primary contact ("Client") who engaged in an application, recertification, renewal, and/or change of address ("Covered Transaction") with DES or AHCCCS between August 1, 2017 and July 31, 2018 (hereinafter the "relevant time period"), whether in person, online, by phone, or by mail.

   a) This Remedial Voter Registration Mailing shall be sent to the primary contact who engaged in a Covered Transaction during the relevant time period through Health-e-Arizona Plus, through the telephone with DES, or through an in-person transaction with DES or AHCCCS; or who received a Medicaid Renewal Letter during the relevant time period, except that the one-time Remedial Voter Registration Mailing need not be sent to the primary contact if that person is not a U.S. Citizen.

   b) The Remedial Voter Registration Mailing will include:
      i. A State Voter Registration Form marked with a specific code in accordance with Sections 1.5 and 1.6.2 of the Arizona Secretary of State's draft 2018 election procedures manual to track voter registration applications that originate

from public assistance clients.  This form already exists and provides
opportunity to register to vote in both Spanish and English.

    ii.  An Explanatory Letter, an exemplar of which is attached to this MOU as
Exhibit A. This Explanatory Letter will be provided both in English and
Spanish.

c)  The Remedial Voter Registration Mailing will be sent bearing the return address of
either DES or AHCCCS as appropriate for the client, using envelopes similar to those
the Agency regularly uses to correspond with clients.

d)  Only one mailing to each household is required.

e)  Sending of the Remedial Voter Registration Mailings will be completed no later than
August 31, 2018.

**On-going Remedial Measures:**

2)  *Policy:*

a)  From execution of this MOU, until such time as a permanent resolution of this matter
is reached, a voter registration application shall be distributed to each Client during
each in-person Covered Transaction conducted by DES and AHCCCS at an office,
unless the Client declines to register to vote *in writing* in response to the voter
registration question on the NVRA Form-5.

b)  Caseworkers shall not complete the NVRA Form-5s or their equivalent unless
specifically requested by the Client. A client's failure to complete the NVRA Form-5
does not, without more, constitute a request by the client for the caseworker to
complete the form but the caseworker may document on the top portion of the
NVRA-5 form that a voter registration application was provided to the Client.

c)  DES and AHCCCS staff will offer assistance with voter registration to each Client
engaged in a Covered Transaction.

3)  *Training:*

a)  By August 31, 2018, DES will conduct a WebEx training and policy broadcast for
each employee that engages with clients during Covered Transactions. The training
shall include an explanation that it is the policy of the state to require distribution of a
voter registration application to each Client engaged in a Covered Transactions unless
they decline to register to vote in response during in-person transactions to the voter

registration question by marking "no" on the NVRA Form-5, and that assistance with voter registration will be offered. The training will also instruct staff that the Form-5s shall not be completed by case workers unless requested by the Client but the caseworker may document on the top portion of the NVRA-5 form that a voter registration application was provided to the Client if the Client leaves the voter preference question blank.

b) Any new DES employee orientation program conducted through October 9, 2018 will include an explanation of the procedures outlined in paragraph 3(a).

c) AHCCCS will continue to require voter registration training for employees who engage with Clients during Covered Transactions. The training includes an explanation of the requirement for distribution of a voter registration application to each Client engaged in a Covered Transaction during in-person transactions unless the Client declines to register to vote by marking "no" to the voter registration question on the NVRA Form-5 and that assistance with voter registration will be offered. AHCCCS will also conduct mandatory refresher training by August 31, 2018.

4) *Reporting:*

a) Not later than September 14, 2018, the Agencies shall report to the Advocates the final number of the Remedial Voter Registration Mailings sent pursuant to paragraph (1) of this MOU.

b) DES shall report to the Advocates when the training required by paragraph 3(a) of this MOU is completed and when the policy broadcast required by paragraph 3(a) of this MOU is issued and provide Advocates with a copy.

**203 of the VRA:**

5) By August 31, 2018, ADOT will ensure that the current paper ADOT Driver's License/Identification Card Application shall be translated into Spanish and distributed for use in all MVD offices in counties covered by 203 (Maricopa, Pima, Santa Cruz, and Yuma), including Authorized Third Party offices that are authorized to conduct driver license transactions. Clients shall be allowed to complete forms in Spanish and submit them to Agencies for processing. At the start of each day, there shall be sufficient numbers of Spanish-language forms in each MVD office and offices operated by an Authorized Third Party for each such office's typical daily volume of clients based on past observations.

**Additional Terms:**

6) ADOT agrees to provide the SOS any data necessary to achieve compliance with any future agreement between the Advocates and the SOS related to compliance with the requirements of Section 5 of the NVRA or any Court order issued against the SOS related to compliance with Section 5 of the NVRA, including but not limited to providing to the SOS a list of all ADOT clients who reported a new address to ADOT during any Covered Transactions (initial application, renewal, Duplicate/Credential Update or change of address) whether online or in-person since November 9, 2016. This list shall include as much information as ADOT can provide, including, but not limited to, the person's name, current address, previous address, driver license number and type, partial social security number, and date of birth. This data will be provided in a delimited text file similar to the address change delimited text file ADOT currently provides to the Secretary of State.

7) The Parties agree to engage in on-going settlement discussions regarding a final resolution of this matter. The goal of these discussions will be to enter into a final agreement resolving all outstanding issues within six months of the execution of this MOU. The final agreement shall set specific benchmarks and timelines for completion of the necessary technology upgrades.

8) To facilitate such discussions, the Advocates shall prepare and present to Agencies within eight weeks of the date of this MOU a comprehensive list of the issues that the Advocates believe should be addressed in any final resolution of this action.

9) Advocates and Agencies acknowledge that this MOU represents a collaborative effort by all parties to enhance voter registration opportunities for Arizona citizens.

**Binding Effect:**

10) The terms of this MOU shall be binding on all Parties.

11) Upon execution of this MOU, Advocates agree not to raise any claims against DES or AHCCCS that have been asserted or could have been asserted up until the date of execution of this MOU that are based on Section 7 of the NVRA at any time before December 1, 2018.

12) Upon execution of this MOU, Advocates agree not to raise any and all claims against ADOT that have been asserted or could have been asserted up until the date of execution of this MOU that are based on Section 5 of the NVRA before December 1, 2018. Although Advocates will not raise any claims against ADOT unless required by the Court, the parties acknowledge and understand that nothing in the agreement prevents the

5

SOS or any other party from bringing a claim against ADOT in any NVRA enforcement proceeding.

13) The Advocates and the Agencies will engage in comprehensive negotiations concerning long term NVRA compliance in a mutual effort to negotiate a resolution to this dispute without the need for formal litigation. However, nothing in this MOU shall preclude the Advocates from bringing any claims related to any NVRA violations or VRA violations against the Agencies after December 1, 2018, if the Advocates and Agencies are unable to reach an agreement. Nothing in this MOU shall be interpreted to preclude the Advocates, within such lawsuit, from asserting or offering proof of any claims or facts alleging widespread past and ongoing violations of Section 5 and 7 of the NVRA or VRA by the Agencies that the Advocates have alleged prior to entering into the negotiations leading to MOU, including in the Notice Letter.

14) Nothing in this MOU will prevent Advocates from acting to enforce compliance with the NVRA or VRA if future NVRA or VRA violations occur; or if DES, AHCCCS or ADOT do not take the steps as required in this MOU regardless of when those actions occur.

15) In entering into this MOU, the Agencies do not admit to any liability or wrongdoing under the NVRA, VRA, or any other law, or waive any of their defenses, and Advocates do not waive or release any claims based on violations of Section 5 or 7 of the NVRA, or Section 203 of the VRA.

16) Before pursuing any legal remedies for an alleged breach of this MOU, Parties agree to make their best effort to resolve any dispute without judicial intervention. If any Party believes that another Party is in breach of this MOU, or any other dispute arises under the terms of this MOU, the aggrieved Party shall, within 30 days of the Party becoming aware of the asserted breach or dispute, notify the other Party in writing of the asserted breach or dispute. The Parties will work cooperatively and make their best effort to promptly remedy the asserted breach or dispute without judicial intervention. If reasonable good-faith efforts to resolve the asserted breach or dispute fail, the Parties may pursue all legal remedies available.

**Joint Negotiation and Drafting**

17) The Parties hereto have participated jointly in the negotiation and drafting of this MOU with the assistance of counsel and other advisors and, in the event any ambiguity or question of intent or interpretation arises, this MOU shall be construed as jointly drafted by the parties hereto and thereto, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this MOU, or any other documents attached or referenced therein.

**Costs:**

18) As consideration for this MOU, the Advocates agree to waive any claim for attorneys' fees or costs incurred in connection with the negotiation, implementation and monitoring of this MOU. In exchange, the Agencies agree to be bound by the terms of this MOU and to implement its terms in good faith and in cooperation with the Advocates.

19) Nothing in this Agreement shall be construed to prevent the Advocates from pursuing attorneys' fees and costs incurred before or after December 1, 2018, as permitted by 52 U.S.C. § 20510 and Section 14(e) of the VRA, if the Agencies breach the terms of this MOU, and nothing in this MOU will be construed to prevent the Advocates from seeking fees and costs related to preparing any such litigation. In the event of such litigation, however, the Advocates will not seek attorneys' fees and costs related to time spent negotiating, implementing, or monitoring this MOU.

**Execution in Counterparts:**

20) This Agreement may be executed in counterpart originals, and any copies and facsimiles of such counterparts shall be considered originals.

21) The undersigned attorneys represent and warrant that they have authority to enter into this agreement on behalf of the respective parties they represent, and that this agreement shall be binding upon, and inure to the benefit of, the heirs, personal representatives, successors and assigns of the parties hereto.

*[Signatures on Following Page]*

7

BRYAN CAVE LEIGHTON PAISNER LLP

By _____
Lawrence G. Scarborough
Teresa P. Meece
Julie M. Birk
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

Darrell Hill
AMERICAN CIVIL LIBERTIES UNION
OF ARIZONA
P.O. Box 17148
Phoenix, Arizona 85011-0148

Sarah Brannon**
Ceridwen Cherry
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 5th Street, NW
Washington, DC 20005-2313

Theresa J. Lee
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, New York 10004

Stuart Naifeh
DEMOS
80 Broad Street, 4th Floor
New York, New York 10004

Chiraag Bains**
DEMOS
740 6th Street, NW, 2nd Floor
Washington, DC 20001

Ezra D. Rosenberg
Arusha Gordon
Anastasia Erikson
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005

** *Not admitted in the District of
Columbia; practice limited pursuant
to D.C. App. R. 49(c)(3)*

Attorneys for Advocates
DATE: August 14, 2018

12069663

BALLARD SPAHR LLP

By _____
Joseph A. Kanefield
One East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555

Attorneys for Agencies

DATE: August 14, 2018

8

# Exhibit A

ARIZONA DEPARTMENT OF ECONOMIC SECURITY (DES)

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM (AHCCCS)

<<First Name>><<Last Name>>
<<Address 1>>
<<Address 2>>
<<City>><<State>><<ZIP>>

## Information About Registering to Vote

We are sending you the attached mail-in voter registration form to ensure that you receive an opportunity to register to vote and/or ensure that the State has your current voting address. You are receiving this notice because you recently interacted with a state agency such as the Department of Economic Security (DES), Arizona Health Care Cost Containment System (AHCCCS), and/or the Health-e-Arizona Plus web portal.

**If you are not registered to vote where you live now, and you want to vote in the upcoming federal election on November 6, 2018, you must return or mail this application to one of the locations described below or complete the online registration by <u>October 9, 2018</u>.**

If you want to register to vote or update your voter registration address, please complete the enclosed Voter Registration Application and put it in the mail.  After you have registered to vote you will receive a voter registration card in the mail within 4-6 weeks.

Completed voter registration applications can be returned:

**By mailing to:**
- Office of the Secretary of State
  Elections Division
  1700 W Washington St Fl 7
  Phoenix AZ 85007-2808
- The County Recorder for the County where you live. The addresses are listed on the back of the enclosed voter registration form.

**In person:**
- By taking it to your local DES or AHCCCS office.

If you have an Arizona driver's license or State ID card issued since October 1, 1996 you can also register to vote on the internet on ADOT's Service Arizona website: https://servicearizona.com/voterRegistration.

Please carefully read the instructions about registering to vote, eligibility to register to vote and proof of citizenship requirements.

If you are already registered to vote at your current address, you do not need to re-register to vote. You can check your voter registration at: https://voter.azsos.gov/VoterView/RegistrantSearch.do.

Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided, or your eligibility.  If you would like help filling out the voter registration form, need more voter registration forms, or have any questions, you can call 1-877-THE VOTE (843-8683).