BRYAN CAVE LEIGHTON PAISNER LLP (No. 00145700)
Lawrence G. Scarborough (No. 006965) (lgscarborough@bclplaw.com)
Teresa P. Meece (No. 032071) (teresa.meece@bclplaw.com)
Julie M. Birk (No. 033908) (julie.birk@bclplaw.com)
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Telephone: (602) 364-7000

Attorneys for Plaintiffs

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| League of Women Voters of Arizona; Mi Familia Vota Education Fund; and Promise Arizona, on behalf of themselves, their members, and all others similarly situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>Michele Reagan, in her official capacity as Secretary of State for the State of Arizona,<br><br>        Defendant. | No._____ |

PLAINTIFFS' APPLICATION FOR AN ORDER TO SHOW CAUSE
WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ENTERED

(ORAL ARGUMENT REQUESTED)

# Table of Contents

Page(s)

Table of Authorities ................................................................................ ii

INTRODUCTION ..................................................................................... 1

BACKGROUND ........................................................................................ 3

    A.    Defendant SOS Does Not Treat ADOT/MVD Address Changes As Voter Registration Address Changes ........................ 3

        1.    In-Person Transactions ....................................................... 3

        2.    On-Line Transactions ......................................................... 4

    B.    Plaintiffs' Memorandum Of Understanding With ADOT/MVD ............................................................................ 4

    C.    Plaintiffs Have Complied With The Notice Requirement Of The NVRA ................................................................................. 5

    D.    Plaintiffs ............................................................................... 5

        1.    League of Women Voters of Arizona ................................. 5

        2.    Mi Familia Vota Education Fund ....................................... 6

        3.    Promise Arizona ................................................................. 7

ARGUMENT ............................................................................................ 8

I.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION UNDER THE FOUR-PART TEST FOR INJUNCTIVE RELIEF ............................................................... 8

    A.    Plaintiffs Have A Strong Likelihood Of Success On The Merits .................................................................................... 8

    B.    Plaintiffs Will Suffer Irreparable Harm Without Injunctive Relief Due To The Resource Drain, Burdens On Voting, And Disenfranchisement Caused by the SOS's NVRA Violations ....... 12

    C.    The Balance Of Hardships Favors A Mandatory Preliminary Injunction Against The SOS .............................................. 17

    D.    Issuing An Injunction Requiring The SOS To Comply With The NVRA Promotes The Public Interest ................................. 18

II.    PLAINTIFFS' REQUESTED RELIEF REQUIRES NO BOND ............ 19

Relief Requested ................................................................................... 20

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

i

1

**Table of Authorities**

2  **Cases:**                                                                 **Page(s)**

3  *Action NC v. Strach,*
4       216 F. Supp. 3d 597 (M.D.N.C. 2016) ............................................................... *passim*

5  *Charles H. Wesley Educ. Found., Inc. v. Cox,*
        324 F. Supp. 2d 1358 (N.D. Ga. 2004,
6       *aff'd,* 408 F.3d 1349 (11th Cir. 2005) ..............................................................  15, 19

7  *Democratic Nat'l Comm. v. Reagan,*
        No. CV-16-01065-PHX-DLR,
8       2018 WL 2191664 (D. Ariz. May 10, 2018) ........................................................  14, 18

9  *Elrod v. Burns,*
        427 U.S. 347 (1976) ...........................................................................................  12

10 *E\*Trade Fin. Corp. v. Eaton,*
11      305 F. Supp. 3d 1029 (D. Ariz. 2018) ................................................................  8, 17

12 *Feldman v. Ariz. Secretary of State,*
        842 F.3d 613 (9th Cir. 2016) ..............................................................................  15

13 *Fish v. Kobach,*
14      840 F.3d 710 (10th Cir. 2016) ......................................................................  12, 15, 18
                                                                                                                           20

15 *Harkless v. Brunner,*
        545 F.3d 445 (6th Cir. 2008) ..............................................................................  11

16 *Krieger v. City of Peoria,*
17      No. CV-14-01762-PHX-DGC, 2014 WL 4187500 (D. Ariz. 2014) ....................  13

18 *League of Women Voters of Florida v. Browning,*
        863 F. Supp. 2d 1155 (N.D. Fla. 2012) ..............................................................  15, 19

19 *League of Women Voters of United States v. Newby,*
20      838 F.3d 1 (D.C. Cir. 2016) .........................................................................  12, 15, 19

21 *Majors v. Jeanes,*
        48 F. Supp. 3d 1310 (D. Ariz. 2014) ..................................................................  12

22 *McCutcheon v. Fed. Election Comm'n,*
23      134 S. Ct. 1434 (2014) ........................................................................................  12

24 *Melendres v. Arpaio,*
        695 F.3d 990 (9th Cir. 2012) ..............................................................................  12, 18

25 *Obama for Am. v. Husted,*
26      697 F.3d 423 (6th Cir. 2012) ..............................................................................  12, 19

27 *Project Vote, Inc. v. Kemp,*
        208 F. Supp. 3d 1320 (N.D. Ga. 2016) ...............................................................  15

28

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Bryan Cave Leighton Paisner LLP**
**Two North Central Avenue, Suite 2100**
**Phoenix, Arizona 85004-4406**
**(602) 364-7000**

**Page(s)**

*Reynolds v. Sims,*
   377 U.S. 533 (1964) ................................................................. 12, 19

*Rodriguez v. Robbins,*
   715 F.3d 1127 (9th Cir. 2013) ................................................. 12, 17

*Scott v. Schedler,*
   771 F.3d 831 (5th Cir. 2014) ......................................................... 11

*Stringer v. Pablos,*
   274 F. Supp. 3d 588 (W.D. Tex. 2017) ............................................ 9

*U.S. v. Raines,*
   362 U.S. 17 (1960) ........................................................................ 18

*Valdez v. Herrera,*
   Civ. No. 09-688 JCH/DJS,
   2010 U.S. Dist. LEXIS 142209 (D.N.M. Dec. 21, 2010),
   *aff'd sub nom. Valdez v. Squier,* 676 F.3d 935 (10th Cir. 2012) ........... 11

*Wesberry v. Sanders,*
   376 U.S. 1 (1964) .......................................................................... 12

*Williams v. Salerno,*
   792 F.2d 323 (2d Cir. 1986) .......................................................... 13

*Zepeda v. I.N.S.,*
   753 F.2d 719 (9th Cir. 1983) ......................................................... 17


**Statutes and Rules:**

52 U.S.C. 20501(a)(3) ....................................................................... 8

52 U.S.C. 20502(3) .......................................................................... 9

52 U.S.C. 20504 ...................................................................... 1, 3, 9

52 U.S.C. 20504(a)(1) ...................................................................... 9

52 U.S.C. 20504(c)(1) ...................................................................... 9

52 U.S.C. 20504(c)(2) ...................................................................... 9

52 U.S.C. § 20504(d) ............................................................... *passim*

52 U.S.C. § 20507(a)(2) .................................................................. 13

52 U.S.C. § 20509 ..................................................................... 3, 11

iii

|  | **Page(s)** |
|---|---|
| 52 U.S.C. § 20510(b) ................................................ | 5 |
| A.R.S. § 16-112(B) ................................................. | 3, 11 |
| A.R.S. § 16-122 ..................................................... | 13 |
| A.R.S. § 16-135 ..................................................... | 13 |
| A.R.S. § 16-142 ..................................................... | 3, 11 |
| A.R.S. § 16-584 ..................................................... | 13 |
| Fed. R. Civ. P. 65 .................................................. | 1 |

**Other Authorities:**

| | |
|---|---|
| S. Rep. No. 103-6 (1993) ......................................... | 10 |
| *State of Arizona Elections Procedure Manual* (2018), http://live-az-sos.pantheonsite.io/sites/default/files/2018% 200330%20State%20of%20Arizona%20Elections%20 Procedures %20Manual.pdf ...................................... | 13-14 |
| Service AZ, https://servicearizona.com/ ................................... | *passim* |
| U.S. Census Bureau:  Am. FactFinder, S0701 Geographical Mobility by Selected Characteristics in the United States, https://factfinder.census.gov/faces/tableservices/jsf/pages/ productview.xhtml?pid=ACS_16_1YR_B07401&prodType=table ...... | 14 |
| *U.S. Department of Justice, Civil Rights Division, The National Voter Registration Act of 1993 (NVRA); Questions and Answers, Q4*, https://www.justice.gov/crt/national-voter-registration-act-1993-nvra ............... | 9 |

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

iv

**INTRODUCTION**

On November 14, 2017, Plaintiffs sent a letter to defendant Michele Reagan, in her official capacity as Secretary of State for the State of Arizona ("SOS"), notifying her that she, along with the Arizona Department of Transportation, the Arizona Department of Economic Security, and the Arizona Health Care Cost Containment System (the "Agencies"), were in violation of several provisions of the National Voter Registration Act ("NVRA"). [Declaration of Counsel in Support of Plaintiffs' Application for an Order to Show Cause Why a Preliminary Injunction Should Not be Entered ("Counsel Decl."), Ex. A ("November Letter")] In response, the Agencies have entered into an Interim Memorandum of Understanding designed to provide a preliminary prospective cure to these violations. [Counsel Decl., Ex. B (Memorandum of Understanding)] But the SOS—Arizona's chief election officer and the only official with the power to provide a cure for those voters whose right to vote is still at risk—has not done the same. Instead, she continues to operate in a manner which she now knows is in violation of the NVRA.

Specifically, the SOS is violating Section 5 of the NVRA, 52 U.S.C. § 20504, that governs how the state must deal with changes of address, so as to ensure that a registered voter is able to vote at the voter's new address. Contrary to the express statutory requirement, 52 U.S.C. § 20504(d), the SOS does not automatically update a voter's registration address for a voter who reports a change of address to the Department of Transportation ("ADOT") or its Motor Vehicle Division ("MVD") (collectively "ADOT/MVD"). If this voter attempts to vote at the polling location for the outdated voter registration address rather than for the new address reported to ADOT, their ballot will not be counted, as the change of address reported to ADOT is reflected only in their driver's record and not in their voter registration record. Accordingly, Plaintiffs apply to this Court for preliminary relief, pursuant to Fed. R. Civ. P. 65, to protect thousands of Arizonans from the irreparable loss of their right to vote this November.

As a preliminary remedy, Plaintiffs request that the Court order the SOS to:

(1)     instruct county recorders to count provisional ballots by voters who report a

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

change to their address during a driver's license application, renewal, or change-of-address transaction with ADOT/MVD ("Covered Transaction"), regardless of whether the provisional ballot is cast in the precinct corresponding to the new address associated with the voter's driver's license or identification card or in the precinct corresponding to the old address associated with the voter's registration record.  The SOS should instruct county recorders to count those votes for all federal races a voter is eligible to participate in at their new residence address.

(2)    instruct the SOS to send a notice to all voters who have engaged in a Covered Transaction with ADOT/MVD. This notice should:

a.    advise the voter that their voter registration address may be out of date;

b.    explain that if they are on the Permanent Early Voting List (PEVL) they will not receive Early Ballots to the address they reported to ADOT/MVD unless they subsequently took additional steps to update their voter registration address themselves;

c.    explain that if they intend to vote in person they will be required to cast a provisional ballot if their voter registration address is not current;

d.    provide instructions for verifying or correcting the voter's registration address;

e.    provide instructions for finding the correct polling place for the voter's new address; and

f.    provide a blank voter registration form.

This Application is supported by Counsel Decl., the Declaration of Robyn Prud'Homme-Bauer in Support of Plaintiffs' Application for an Order to Show Cause Why a Preliminary Injunction Should Not be Entered ("Prud'Homme-Bauer Decl.") (attached as Ex. 1), the Declaration of Eduardo Sainz in Support of Plaintiffs' Application for an Order to Show Cause Why a Preliminary Injunction Should Not be Entered ("Sainz Decl.") (attached as Ex. 2), the Declaration of Petra Falcon in Support of Plaintiffs' Application for an Order

to Show Cause Why a Preliminary Injunction Should Not be Entered ("Falcon Decl.") (attached as Ex. 3), and this memorandum of points and authorities.

## BACKGROUND

### A.  Defendant SOS Does Not Treat ADOT/MVD Address Changes As Voter Registration Address Changes.

The SOS is Arizona's chief election officer and, as such, is the state official charged with coordinating the responsibilities of the state under the NVRA, including taking all possible steps to ensure that ADOT/MVD complies with the statute.  52 U.S.C. §§ 20504, 20509; A.R.S. §§ 16-112(B), 16-142.[1]

### 1.  In-Person Transactions.

An individual who wishes to apply in person for a new Arizona driver's license or state-issued identification card, and thus be simultaneously registered to vote, must complete the ADOT Driver License/Identification Card Application.  [Counsel Decl., Exs. C (the ADOT Driver License/Identification Card Application 40-5122 R04/16) and D (the ADOT Driver License/Identification Card Application 40-5122 R01/18)][2]  An individual who already possesses an Arizona driver's license or state-issued identification card and wants to report a change of address in person may do so by completing either the ADOT Driver License/Identification Card Application or the ADOT Duplicate/Credential Update Application.  [*Id.*, Ex. E (the ADOT Duplicate/Credential Update Application)][3]  One of the pieces of information that every applicant must provide on both these application forms is the person's residence address.  [*Id.,* Exs. C, D, and E]  On a periodic basis, ADOT/MVD provides to the SOS all of the address update information it has collected from its customers.

---

[1] All references to ADOT/MVD include authorized third-party providers that engage in driver's license services in Arizona.

[2] Concurrent with this Application, Plaintiffs have filed a request for judicial notice of publicly available documents.

[3] Which form is used can depend on which ADOT/MVD offices the applicant visits. In some offices, the Driver's License Application is also used for the purposes of reporting a change of address.  In addition, it is Plaintiffs' understanding that ADOT is phasing out the ADOT Duplicate/Credential Update Application and that, in the future, all address updates will be accomplished using the ADOT Driver License/Identification Card Application.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

[*Id.*, Ex. B (stating that "ADOT currently periodically sends the Secretary of State a delimited text file containing change of address information with respect to driver licenses and non-driver identification cards")]

Although both forms require the ADOT/MVD customer to provide a new or current residence address and although ADOT/MVD is already sending this information to the SOS, the SOS does not use that address information to automatically update the voter registration address of ADOT/MVD customers who are registered voters. [*Id.*, Ex. F (August 16, 2018 Press Release)]   Using these forms, voters only have their voter registration addresses updated if they see the voter registration question and check "yes" in response.   In other words, because the SOS only processes ADOT/MVD address changes if the applicant affirmatively states that the address change is also for voter registration purposes, she has transformed what under the NVRA should be an "opt-out" process into an "opt-in" process.

### 2. Online Transactions.

The SOS similarly fails to automatically update voter registration addresses when voters submit an address change to ADOT/MVD through the Service Arizona website (https://servicearizona.com/ (last visited Aug. 10, 2018)) ("Service AZ").   [*See* Counsel Decl., Ex. G (Service AZ screen shots)]   When an eligible voter submits a change of address to ADOT/MVD via Service AZ their new address information is transferred to the SOS. [*See generally id.*, Ex. B]   However, the SOS does not use the information provided to automatically update the voter's registration addresses.   Instead, after the individual submits the ADOT address change, a link appears which leads to a voter registration services page. [*Id.*, Ex. G]   For the person's voting address to be updated, the voter must click on that link and then, in effect start over, providing all the information that would be necessary to register to vote, including the same address that they just provided to ADOT.   [*See* Service AZ]   This process, therefore, functions as an opt-in process: it requires extra steps from the voter to ensure that their voter registration address is updated.

### B. Plaintiffs' Memorandum Of Understanding With ADOT/MVD.

Plaintiffs in this case recently executed an Interim Memorandum of Understanding

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

1  with ADOT/MVD, in which ADOT/MVD has agreed to make necessary changes to the

2  relevant ADOT/MVD forms and procedures in order to comply with the NVRA.  [Counsel

3  Decl., Ex. B]  ADOT has also agreed to provide whatever assistance is required to ensure

4  that voters who engaged in Covered Transactions in the past are able to participate in the

5  upcoming federal mid-term election.  [*Id.*]  Making prospective changes to ADOT/MVD's

6  forms and procedures, however, will provide relief only for voters who engage in Covered

7  Transactions in the future, and only if the SOS changes her procedure for processing change-

8  of-address information.  Moreover, ADOT/MVD cannot itself update voting addresses in the

9  State's voter registration system or ensure that voters whose registration addresses are out of

10 date can cast ballots that will count.  Thus, without action by the SOS, ADOT/MVD is

11 powerless to provide relief for the potentially thousands of voters who have engaged in

12 Covered Transactions with ADOT/MVD in the past but did not have their voter registration

13 addresses updated.

14 **C.      Plaintiffs Have Complied With The Notice Requirement Of The NVRA.**

15        If a violation of the NVRA is not corrected within 90 days of written notification to a

16 state's chief election official of the violation, a party may bring an action for injunctive

17 relief.  *See* 52 U.S.C. § 20510(b).  Plaintiffs' communications to the SOS include the

18 November Letter (Counsel Decl., Ex. A) that serves as notice, pursuant to 52 U.S.C.

19 § 20510(b), regarding the NVRA Section 5 violations addressed herein.  *See* 52 U.S.C.

20 §§ 20504(d), 20510(b).  Since sending the November Letter, Plaintiffs have provided the

21 SOS with multiple communications conveying this and other violations of the NVRA in

22 detail and have engaged in continuing discussions with the SOS.  Those settlement

23 discussions have recently come to an end.  As a result, the SOS remains non-compliant with

24 the NVRA.

25 **D.      Plaintiffs.**

26        **1.      League of Women Voters of Arizona.**

27        The League is a non-partisan, political organization that encourages informed and

28 active participation in government.  [Prud'Homme-Bauer Decl., ¶ 3]  The League works

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

actively to increase voter participation and education, and advocates for policies in the public interest.  [*Id.*]  Due to the SOS's ongoing violation of the NVRA, the League expends resources, including staff and volunteer time, on efforts to provide voter registration services to individuals that should have been provided by the SOS.  [*Id.*, ¶ 14]  If the League did not need to provide ADOT/MVD clients with the voter registration address update service the SOS fails to provide, it would be able to dedicate its limited resources to its other activities including registering other voters, educating voters on ballot measures, informing voters about issues and candidates, and pursuing policy and advocacy goals in other important issue areas.  [*Id.*, ¶ 15]  Based on the SOS's ongoing NVRA violations, the League expects that this diversion of resources will continue.  [*Id.*]

The League has approximately 850 members.  [*Id.*, ¶ 3]  Some of these members have updated their driver's license address with ADOT/MVD but have not had their voter registration address updated, and some of these members will move and plan to update their addresses with ADOT/MVD.  [*Id.*, ¶ 10]  These members have been injured or are at risk of being injured by the SOS's failure to ensure that their voter registration address is updated anytime they report an address change to ADOT.

## 2.    Mi Familia Vota Education Fund.

Mi Familia is a non-partisan civic engagement organization that advocates on social and economic issues that impact the Latino community, including immigration, workers' rights, education, climate change, healthcare, the environment, and voting.  [Sainz Decl., ¶ 3]  In 2018, Mi Familia aims to register 25,000 new voters, and to meet this goal the organization conducts between five to ten voter registration drives in Arizona each week. [*Id.*, ¶ 9]  Mi Familia spends considerable time and resources educating registered voters about the need to update their voter registration and collecting voter registration updates. [*Id.*, ¶ 10]  The need to assist voters with these updates means Mi Familia has fewer resources to devote to registering new voters, making it harder for the organization to achieve its goals.  Due to the SOS's ongoing violation of the NVRA, Mi Familia has expended additional resources, including staff and volunteer time, on assistance to voters

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

6

who should have had their voter registration address automatically updated through an ADOT/MVD transaction.  [*Id.*, ¶ 12]  The resources Mi Familia uses to assist ADOT/MVD customers who were not offered address updates are resources that it was not able to spend on its other activities, including leadership building in Latino communities, immigration reform, and advocating for workers' rights. [*Id.*, ¶ 14]

Mi Familia has approximately 6,000 members in Arizona.  [*Id.*, ¶ 3]  Some of these members have updated their driver's license address with ADOT/MVD but have not had their voter registration address updated, and some of these members will move in the future and plan to report their address changes to ADOT/MVD.  [*Id.*, ¶ 13]  These members have been injured and are at risk of being injured in the future by the SOS's failure to ensure that their voter registration address is updated anytime they report a move to ADOT/MVD.

### 3.   Promise Arizona.

Promise Arizona is a non-partisan, faith-based organization that seeks to positively impact Latino and immigrant communities by building leaders, encouraging sustained civic participation, and engaging with the political process for positive change.  [Falcon Decl., ¶ 3] As part of Promise Arizona's voter registration efforts, many of the people they register to vote are transitory and frequently change address due to economic instability.  [*Id.*, ¶ 10] These voters are at risk of being disenfranchised by the failure of the SOS to update their voter registration as required by federal law.  [*Id.*]  Promise Arizona has worked with numerous voters who have moved and updated their address with ADOT/MVD but did not have their voter registration address automatically updated.  [*Id.*, ¶ 11]  In those situations, Promise Arizona must expend time and resources to help voters update their addresses.  [*Id.*] If it were not for the SOS's failure to update voter registration addresses, Promise Arizona's time and resources would otherwise be utilized engaging voters about important issues, working with immigrants on citizenship applications, providing legal services, or improving technology and English literacy for immigrants.  [*Id.*, ¶ 14]

Promise Arizona has approximately 1,000 members.  [*Id.*, ¶ 4]  Some of these members have updated their driver's license address with ADOT but have not had their voter

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

1   registration address updated, and some of these members will move in the future and will

2   report their new addresses to ADOT/MVD.  [*Id.*, ¶ 13]  These members have been injured

3   and are at risk of being injured in the future by the SOS's failure to ensure that their voter

4   registration address is updated anytime they report a move to ADOT/MVD.

5                                    **Argument**

6   **I.   PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION UNDER
        THE FOUR-PART TEST FOR INJUNCTIVE RELIEF.**

7

8          This Court states that the test for a preliminary injunction is as follows:

9          In order to obtain a preliminary injunction, a movant must show that (1) [they
           are] likely to succeed on the merits, (2) they are likely to suffer irreparable
10         harm in the absence of preliminary relief, (3) the balance of equities tips in
           their favor, and (4) an injunction is in the public interest. The Ninth Circuit,
11         employing a sliding scale analysis, has also stated serious questions going to
           the merits and a hardship balance that tips sharply toward the movant can
12         support issuance of an injunction, assuming the other two elements of the
           *Winter* [balancing] test are also met.
13

14  *E\*Trade Fin. Corp. v. Eaton*, 305 F. Supp. 3d 1029, 1031 (D. Ariz. 2018) (internal

15  quotations, citations, and alternations omitted).  Plaintiffs satisfy all four factors of this test.

16         **A.     Plaintiffs Have A Strong Likelihood Of Success On The Merits.**

17         The failure by the SOS—for years—to automatically update the voter registration

18  addresses of thousands of Arizona voters undeniably violates Section 5 of NVRA.  Thus,

19  Plaintiffs' success on the merits is much more than likely; it is virtually certain.

20         Congress passed the NVRA to increase the number of registered voters and maintain

21  accurate, up-to-date voter registration rolls.  In enacting the NVRA, Congress recognized

22  that problems with voter registration are a primary reason that people are unable to

23  participate in the political process, and specifically determined that "unfair registration laws

24  and procedures can have a direct and damaging effect on voter participation in elections for

25  federal office and disproportionately harm voter participation by various groups, including

26  racial minorities." 52 U.S.C. § 20501(a)(3).

27         Section 5 of the NVRA therefore requires motor vehicle agencies to provide voter

28  registration services to citizens who engage in Covered Transactions.  *See* 52 U.S.C.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

§§ 20502(3), 20504.   The statute requires that motor vehicle agencies "include a voter registration application form . . . as part of an application for," or renewal of, a driver's license or state-issued identification card.   52 U.S.C. § 20504(c)(1); *see also* 52 U.S.C. § 20504(a)(1).   Voter registration forms supplied as part of this process "may not require any information that duplicates information" provided by the applicant in other portions of the application, "other than a second signature."   52 U.S.C. § 20504(c)(2).

With respect to change of address transactions, Section 5 requires that, when an individual notifies a motor vehicle agency of a new address, the voter registration address must be *automatically updated* unless the individual affirmatively states that the change of address is not for voter registration purposes.   52 U.S.C. § 20504(d).   It states:

> Any change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license *shall serve* as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of address is not for voter registration purposes.

52 U.S.C. § 20504(d) (emphasis added).   In other words, a change of address for voter registration must occur *automatically* unless a voter declines to update her voter registration address—it must be an "opt out" rather than an "opt in" process.   And for this "opt out" process to be effective, the voter must in fact be given the opportunity to opt out and must be notified that, unless the voter takes that opportunity, the address change will be used to update the voter's registration record. *Id.*

The requirements of Section 5 apply whether the Covered Transaction is conducted in person or remotely through the internet or the mail.   *See*, *e.g.*, *Stringer v. Pablos*, 274 F. Supp. 3d 588, 598 (W.D. Tex. 2017) (holding that online transactions are covered by Section 5); *Action NC v. Strach*, 216 F. Supp. 3d 597, 623 (M.D.N.C. 2016) (holding that requirements of Section 5 "apply equally to in-person and remote covered transactions"); *U.S. Department of Justice, Civil Rights Division, The National Voter Registration Act of 1993 (NVRA): Questions and Answers*, *Q4*, available at https://www.justice.gov/crt/national-voter-registration-act-1993-nvra (last visited Aug. 10, 2018) ("to the extent that the State provides for remote applications for driver licenses, driver license renewals, or driver license

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

9

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1   changes of address, via mail, telephone, or internet or other means, then provision must be

2   made to include the required voter registration opportunity as well").

3        These "Motor Voter" provisions of the NVRA are intended to streamline the federal

4   voter registration process, improve accessibility to voter registration, increase the number of

5   qualified voters who are properly registered, and ensure that voter registration records are

6   kept accurate and up to date. *See*, *e.g.*, S. Rep. No. 103-6 at 5 (1993) ("[I]ncorporating voter

7   registration into the drivers licensing process provides a secure and convenient method for

8   registering voters; an effective means of reaching groups of individuals generally considered

9   hard-to-reach for voting purposes . . . and a procedure for keeping rolls current through

10   contact with licensees who change addresses").

11        Here, the SOS fails to use address change information supplied by ADOT/MVD to

12   automatically update voter registration addresses.  Instead, the SOS updates a voter's

13   existing registration record using ADOT/MVD address information *only* when the applicant

14   takes additional steps to *affirmatively* indicate that he or she wishes to update their existing

15   voter registration address.  Specifically, when submitting an address change in person at an

16   ADOT/MVD office, the applicant must affirmatively check a box to request voter

17   registration services, and when completing a covered transaction online, the applicant must

18   complete an entirely separate voter registration transaction on ADOT/MVD's Service AZ

19   website.  This violates Section 5's requirement that all driver's license or identification card

20   address changes serve to update the person's voter registration address "unless the registrant

21   states on the form that the change of address is not for voter registration purposes," 52

22   U.S.C. § 20504(d), and this violation is occurring both during in-person and online motor

23   vehicle transactions.

24        Moreover, neither Service AZ nor the ADOT/MVD forms cited above provides voters

25   with the required notification that change-of-address information submitted to ADOT/MVD

26   will be used to update an existing voter registration, nor do they provide voters the required

27   opportunity to opt out of having their voter registration address updated. [*See* Counsel Decl.,

28   Exs. C, D, E, and G]  Not providing an opportunity to opt out during these processes is a

clear violation of Section 5(d)'s requirement that voters be given an opportunity to state that their address update is not for voter registration purposes. Moreover, both the Duplicate Credential form and Service AZ do not even inform voters that they need to update their address for voter registration purposes. [*See id.*, Exs. E and G]

As the State's chief election official, the SOS is responsible for ensuring that all voter registration services provided by agencies covered by the NVRA, including ADOT/MVD, comply with the NVRA. *See* 52 U.S.C. § 20509; A.R.S. §§ 16-112(B), 16-142. The chief election official is responsible for NVRA compliance within the state. 52 U.S.C. § 20509; *Valdez v. Herrera*, Civ. No. 09-688 JCH/DJS, 2010 U.S. Dist. LEXIS 142209, at *28-29, 32-34 (D.N.M. Dec. 21, 2010), *aff'd sub nom. Valdez v. Squier*, 676 F.3d 935 (10th Cir. 2012) (The Chief Election Official is "responsible for coordination of State responsibilities" under the NVRA. Further, courts have uniformly held that the Chief Election Official is "responsible for ensuring compliance [with the NVRA]," and bears "responsibility for the state's compliance with [the NVRA's] mandates"); *see also Harkless v. Brunner*, 545 F.3d 445, 452 (6th Cir. 2008) (holding that "the Secretary, as [] chief election officer, is responsible for 'harmonious combination'—or implementation and enforcement—of [NVRA responsibilities of a government agency]"); *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014) (The "NVRA centralizes responsibility in the state and in the chief elections official, who is the state's stand-in"). Consequently, the SOS is responsible for the violations found in the ADOT/MVD forms and on Service AZ.

In sum, the SOS undeniably is violating the NVRA, and Plaintiffs are therefore likely to prevail on the merits. Absent injunctive relief, the SOS's violation of federal election law will persist. Her violation of the NVRA is not merely technical. Rather, she is knowingly failing to automatically update the voter registration of individuals who change the address associated with their driver's license or state identification card. In doing so, she undermines the purpose of the NVRA, which is facilitation of voter registration and participation by ensuring voter rolls are accurate and up-to-date. To protect Plaintiffs and other Arizona voters from the SOS's current and continuing violations of the NVRA, the Court should

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

1  issue a preliminary injunction.

2  **B.  Plaintiffs Will Suffer Irreparable Harm Without Injunctive Relief Due To The Resource Drain, Burdens On Voting, And Disenfranchisement**
3  **Caused By The SOS's NVRA Violations.**

4  The Supreme Court has long recognized that there is "no right more basic to our
5  democracy than the right to participate in electing our political leaders." *McCutcheon v.*
6  *Fed. Election Comm'n*, 134 S. Ct. 1434, 1440-41 (2014).  "No right is more precious in a
7  free country than that of having a voice in the election of those who make the laws under
8  which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the
9  right to vote is undermined."  *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964); *see also*
10  *Reynolds v. Sims*, 377 U.S. 533, 560 (1964).

11  The deprivation of the right to vote therefore constitutes irreparable injury.   "It is well
12  established that the deprivation of constitutional rights 'unquestionably constitutes
13  irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation
14  omitted); *Majors v. Jeanes*, 48 F. Supp. 3d 1310, 1316 (D. Ariz. 2014) ("[t]he deprivation of
15  constitutional rights unquestionably constitutes irreparable injury") (internal quotations and
16  citations omitted).  In such an instance, "'irreparable harm is *likely*, not just possible' in the
17  absence of preliminary injunctive relief."  *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144–
18  45 (9th Cir. 2013) (emphasis in original) (citation omitted).  Because "there can be no 'do-
19  over' or redress of a denial of the right to vote after an election," an NVRA violation that
20  inhibits voting "weighs heavily in determining" irreparable harm absent an injunction. *Fish*
21  *v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016); *see also Elrod v. Burns*, 427 U.S. 347, 373
22  (1976) (election case noting that the loss of constitutional rights "for even minimal periods of
23  time, unquestionably constitutes irreparable injury"); *League of Women Voters of United*
24  *States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (finding that the challenged electoral
25  practices "unquestionably" made it "more difficult" for plaintiff organizations "to
26  accomplish their primary mission of registering voters" and therefore "provide injury for
27  purposes both of standing and irreparable harm"); *Obama for Am. v. Husted*, 697 F.3d 423,
28  436 (6th Cir. 2012) ("A plaintiff's harm from the denial of a preliminary injunction is

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

1    irreparable if it is not fully compensable by monetary damages") (citation omitted); *Williams*

2    *v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (finding that the denial of the right to vote is

3    "irreparable harm"); *Krieger v. City of Peoria,* No. CV-14-01762-PHX-DGC, 2014 WL

4    4187500, at *6 (D. Ariz., 2014) ("Plaintiffs do not assert their right to win the election; they

5    assert their right to a fair election and the voters' right to cast an accurate and valid vote.

6    The loss of these rights satisfies the irreparable harm requirement").  The SOS's failure to

7    update voter registration addresses, as detailed above, impedes the right to vote and causes

8    Plaintiffs to divert resources to ensure voters have up-to-date registrations.

9         The SOS's failure to update voter registration addresses impedes the right to vote,

10   causing irreparable harm because under Arizona law a voter who moves and whose voter

11   registration information is not updated before the registration cutoff date must cast a

12   provisional ballot.  Those provisional ballots are only counted if the voter casts a ballot at the

13   polling location corresponding to their new residential address, as reflected in their driving

14   record; a ballot cast in the polling place that matches their old address at which they were

15   registered to vote (called "out of precinct" or "OOP" ballots) will not be counted because the

16   voter no longer resides there.  *See* A.R.S. §§ 16-122, 16-135, 16-584.  Additionally, if a voter

17   moves to a new county within Arizona, their ballot will not be counted at all because their

18   provisional ballot will be discarded regardless of whether it is cast in their new polling

19   location or in the polling location that matches their voter registration address.  *See id*.

20   Aggravating this further, voters are not notified of their new polling place as required under

21   the NVRA due to the SOS's failure to update voter registration addresses.  *See* 52 U.S.C. §

22   20507 (a)(2).

23        Additionally, the failure to update voter registration addresses has a significant impact

24   on Arizona's vote by mail program.  Voters who have signed up for the permanent early

25   voting list will not receive their Early Ballot via mail at their correct address if their voter

26   registration has not been updated.  Moreover, Early Ballots are sent by non-forwardable

27   mail, so voters who have changed address but not had their voting address updated may

28   never receive their Early Ballot. [*See State of Arizona Elections Procedures Manual* at 125,

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1  (2018), http://live-az-sos.pantheonsite.io/sites/default/files/2018%200330%20State%20of%
2  20Arizona%20Elections%20Procedures%20Manual.pdf]  In sum, all voters whose addresses
3  have not been updated because of the SOS's failure to comply with the NVRA face
4  additional burdens when trying to vote, and many voters whose addresses have not been
5  updated will be completely disenfranchised.

6       Among the Arizona voters harmed by the SOS's ongoing NVRA violations are
7  Plaintiffs' members.  All of the Plaintiff organizations have members who have updated their
8  driver's license or state identification card address with ADOT/MVD but have not had their
9  voter registration address updated.  [Falcon Decl., ¶ 13; Sainz Decl., ¶ 13; Prud'homme-
10  Bauer Decl., ¶ 12]  Moreover, they also have members with Arizona driver's licenses or
11  identification cards who are likely to move in the future and are at risk of being harmed by
12  the SOS's failure to ensure that their voter registration address is updated anytime they report
13  a move to ADOT/MVD.

14       This type of impact is not confined to members of the Plaintiff organizations.  Every
15  year, sizeable segments of Arizona's population moves.  Almost 70 percent of Arizonans
16  changed their residential address in the decade between 2000 and 2010, the second highest
17  rate of any state.  *See Democratic Nat'l Comm. v. Reagan* ("DNC"), No. CV-16-01065-
18  PHX-DLR, 2018 WL 2191664, at *22 (D. Ariz. May 10, 2018).  Additionally, the U.S.
19  Census Bureau estimates that in 2016—the year for which the most recent data is available—
20  in Arizona more than 800,000 people moved within the same county, and more than 126,000
21  people moved between counties.  [U.S. Census Bureau: Am. FactFinder, S0701
22  Geographical Mobility by Selected Characteristics in the United States, available at
23  https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=ACS_16_
24  1YR_B07401&prodType=table (last visited August 11, 2018)]

25       Moreover, Arizona is consistently at or near the top of the list of states that collect and
26  reject provisional ballots each election.  *DNC*, 2018 WL 2191664 at *21.  One of the most
27  frequent reasons that provisional ballots are rejected in Arizona is because they are cast in
28  the wrong precinct.  *Id*.  In the 2008 general election, 14,885 OOP ballots were not counted

14

and in the 2012 general election, 10,979 ballots were cast OOP and thus rejected. *See Feldman v. Ariz. Secretary of State*, 842 F.3d 613, 618, n. 4 (9th Cir. 2016). Many of these OOP voters would likely have been able to cast a ballot that was counted if their address had been updated as required by the NVRA and they had been notified of their new polling place. The harm caused by the SOS's failure to comply with the NVRA is very real to both members of the Plaintiff organizations and to other Arizona voters. It not only imposes a burden on these voters but also presents a real threat of disenfranchisement.

In the absence of preliminary relief, the Plaintiffs and other Arizonans, therefore, face irreparable harm as "no monetary award can remedy the fact that [a voter] will not be permitted to vote in the precinct of her new residence." *Charles H. Wesley Educ. Found. Inc. v. Cox*, 324 F. Supp. 2d 1358, 1368 (N.D. Ga. 2004), *aff'd*, 408 F.3d 1349 (11th Cir. 2005); *see also Fish*, 840 F.3d at 752 ("[T]he right to vote is a constitutionally protected fundamental right. When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary") (internal quotations and citations omitted).

In addition to harming Plaintiffs' members and other Arizona voters, the SOS's actions also cause the Plaintiffs irreparable harm because they must divert their limited resources to fill the gap caused by the SOS's NVRA violations. Additionally, monetary relief cannot compensate for the harm to Plaintiffs' organizational missions of increasing voter engagement and participation once the 2018 general election is over. Indeed, courts have found that conduct limiting "an organization's ability to conduct voter registration activities constitutes an irreparable injury" [*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1350 (N.D. Ga. 2016)], "because when a plaintiff loses an opportunity to register a voter, the opportunity is gone forever" [*League of Women Voters of Florida v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012); *see also Newby*, 838 F.3d at 12-13 (reversing denial of preliminary injunction)]. Moreover, the present case is similar to *Action NC*, 216 F. Supp. 3d 597, which held that organizational plaintiffs' diversion of resources away from "voter mobilization and voter education efforts" before Election Day was sufficient to show

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

15

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

1   irreparable harm at the preliminary injunction stage.  *Action NC*, 216 F. Supp. 3d at 642–43.

2   Specifically, Promise Arizona must divert their limited resources to fill the gap caused

3   by the SOS's NVRA violation because Promise Arizona assists voters who are often

4   transitory and must frequently change addresses due to economic instability.  [Falcon Decl.,

5   ¶ 10]  Promise Arizona has expended time and resources working with numerous voters who

6   have moved and updated their address with ADOT/MVD but whose voter registration

7   address was not automatically updated by the SOS.  [*Id.*, ¶ 11]  Further, the high rate of

8   mobility of low income Arizonans means that Promise Arizona must provide voter address

9   assistance multiple times a year for the same voter.  [*Id.*]  The low-income, low-propensity

10  voters who Promise Arizona serves are unlikely to vote if they encounter issues at the polling

11  place, with registration, or if they do not receive an Early Ballot in the mail at their current

12  address—all of which can occur as a result of the SOS's failure to update voter registration

13  records.  [*Id.*, ¶¶ 10, 12]  The time and resources Promise Arizona expends on address

14  updates acutely reduces the work it can do in other areas, such as engaging voters about

15  important issues, working with immigrants on citizenship applications, providing legal

16  services, and improving technology and English literacy for immigrants.  [*Id.*, ¶ 14]  And it

17  reduces the time that Promise Arizona could spend registering new voters who are not

18  already registered to vote.

19  Mi Familia focuses its work generally on the nearly 580,000 eligible Latino voters

20  aged 18 to 34 in Arizona.  [Sainz Decl., ¶ 7]  Mi Familia expends resources assisting voters

21  who should have had their voter registration address automatically updated through an

22  ADOT/MVD transaction.  [*Id.*, ¶¶ 10, 12]  As such, it diverts resources from its other

23  activities including leadership building in Latino communities, advocating for immigration

24  reform and workers' rights, educating voters about important issue areas and candidates,

25  engaging in Get-Out-The-Vote ("GOTV") activities, and registering new voters.  [Id., ¶ 14]

26  And it reduces the time that Mi Familia could spend registering new voters who are not

27  already registered to vote.  Because the SOS continues to violate NVRA Section 5, Mi

28  Familia's diversion of resources to compensate for this harm will be ongoing.  [*Id.*]

16

Similarly, the League spends considerable time and resources assisting voters who update their address with ADOT/MVD but who do not have their voter registration address updated automatically as NVRA Section 5 requires.  [*See* Prud'Homme-Bauer Decl., ¶ 10] Voter registration efforts by the League require significant volunteer and member hours and financial resources.  [*Id.*, ¶ 14]  If the SOS ceased violating NVRA Section 5, the League would be able to expend less time and money ensuring Arizona residents who update their address with ADOT/MVD have a similarly updated voter registration address.  [*Id.*, ¶ 13] Further, the League would be able to dedicate more resources on its other activities, including educating and informing voters about ballot measures, issues and candidates, and pursuing policy and advocacy goals in other issue areas.  [*Id.*, ¶ 15]  Additionally, the League could spend more time registering new voters.

Every election is important.  The inability to participate in an election cannot be compensated for after the fact, or assuaged by the ability to participate in the next election. Irreparable harm will inevitably result without the preliminary injunctive relief Plaintiffs seek.   The SOS's failure to remediate her ongoing violations of the NVRA, despite Plaintiffs' notice, demonstrates that the SOS will not take action to protect the right to vote in the 2018 general election absent injunctive relief from this Court.  Further, without injunctive relief, the SOS's violations of the NVRA will indelibly impact the 2018 general election—denying certain voters the ability to participate in the political process and unwarrantedly consuming precious resources.

## C.    The Balance Of Hardships Favors A Mandatory Preliminary Injunction Against The SOS.

In considering a preliminary injunction, a court must balance the hardship to be suffered by the parties as a result of the denial or issuance of an injunction.  *See Eaton*, 305 F. Supp. 3d at 1036.  "[The government] cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez*, 715 F.3d at 1145; *see also Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). The SOS's violation of the NVRA deprives qualified voters in Arizona of their right to vote

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

1  and causes Plaintiffs to divert their resources away from their other public services in order

2  to compensate for the SOS's failure to satisfy its obligation under federal election law.

3  These hardships to Plaintiffs, voters, and the public at large, necessarily outweigh any

4  hardship that could possibly stem from the Court requiring the SOS—the chief election

5  officer charged with protecting voters in Arizona—from fulfilling her federally mandated

6  obligations.

7        Any argument that counting OOP ballots is too burdensome and shifts the equities in

8  favor of the SOS must fail as a matter of both fact and law.  In *DNC*, the Court found that

9  "[c]ounting OOP ballots is administratively feasible."  *See DNC*, 2018 WL 2191664, at \*25.

10  The Court further found that Arizona already uses the ballot duplication procedure that

11  election officials would use in order to count only the races in which the OOP voter is

12  eligible to vote.  *Id.*[4]  As the *DNC* ruling makes clear, Plaintiffs' requested remedy does not

13  require the SOS to adopt a new election procedure.  Moreover, unlike the Plaintiffs in *DNC*,

14  Plaintiffs here do not challenge the validity of the OOP law in general.  Instead, Plaintiffs

15  here simply ask the Court to order a one-time exception to the state law prohibition on OOP

16  ballot counting to remedy the SOS's clear violation of federal law so that voters, who may be

17  unable to vote due to that violation, can participate in the November 2018 general election.

18      **D.**    **Issuing An Injunction Requiring The SOS To Comply With The NVRA**
19                  **Promotes The Public Interest.**

20        "[T]here is the highest public interest in the due observance of all the constitutional

21  guarantees."  *U.S. v. Raines*, 362 U.S. 17, 27 (1960); *Melendres*, 695 F.3d at 1002 ("it is

22  always in the public interest to prevent the violation of a party's constitutional rights")

23  (citation omitted).  In passing the NVRA with "requirements designed to increase the

24  number of eligible voters who register and vote," Congress acknowledged "the public

25  interest in the widespread exercise of the franchise."  *Fish,* 840 F.3d at 756; *see also*

---

26      [4] Arizona's ballot duplication procedure currently processes ballots that cannot be

27  read by an optical scan voting machine (such as ballots that are damaged, marked with the
    wrong color pen, or submitted to the county recorder by a military or overseas voter via

28  facsimile).  *DNC*, 2018 WL 2191664, at \*25.

*Reynolds*, 377 U.S. at 562 (referring to voting as a "fundamental political right . . . preservative of all rights") (citations omitted).  Therefore, courts have routinely held that granting a preliminary injunction serves the public interest when it helps permit "as many qualified voters to vote as possible."  *Obama for Am.*, 697 F.3d at 437; *see also Newby,* 838 F.3d at 12 (same); *Action NC*, 216 F. Supp. 3d at 648 ("'[F]avoring enfranchisement and ensuring that qualified voters' exercise their right to vote' is always in the public interest") (citation omitted).  Moreover, ordering a "state to comply with a valid federal statute is most assuredly in the public interest."  *Wesley Educ. Found.*, 324 F. Supp. 2d at 1369. Vindicating voting rights and enforcing "a federal statute serve[s] the public interest almost by definition." *Browning*, 863 F. Supp. 2d at 1167.

Arizona's chief election officer's maintenance of accurate voter registration records necessarily promotes the public interest.  Thus, the SOS's failure to automatically update the voter registration information of ADOT/MVD customers who submit a change of address violates the NVRA.  Absent injunctive relief, her failure will continue to harm the public interest by denying qualified voters in Arizona the right to vote as a result of inaccurate voter rolls, undermining the integrity of the election, and diverting Plaintiffs' resources away from the other public services they ordinarily provide.  *See Obama for Am.* 697 F.3d at 437 (holding that "permitting as many qualified voters to vote as possible" serves the public interest).

The SOS can claim no public interest in violating federal election law that Congress enacted to protect the public's voting rights.  Requiring the SOS's compliance with the NVRA serves only to protect the public interest.

## II.     PLAINTIFFS' REQUESTED RELIEF REQUIRES NO BOND.

Because the requested mandatory injunction is specific and is designed to require the SOS to comply with a federal law created to protect a fundamental right, the proposed mandatory injunction will not harm the SOS in any way that matters under the applicable law.  Accordingly, Plaintiffs ask the Court to waive the bond requirement or set a minimal bond in an amount no greater than $100.00.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

**Relief Requested**

Plaintiffs seek an order requiring the SOS to take two actions.  First, to instruct county recorders to count provisional ballots cast by voters in federal elections who changed their address during a Covered Transaction with ADOT/MVD since November 9, 2016 regardless of whether the provisional ballot is cast in the precinct corresponding to the address associated with the voter's driver's license or identification card or in the precinct associated with the voter's registration record.  *See, e.g.*, *Fish*, 840 F.3d at 756 (affirming grant of preliminary injunction enjoining the Secretary of State to register each person whose voter registration application had been rejected for failure to provide documentary proof of citizenship under state law in Section 5 NVRA case); *Action NC*, 216 F. Supp. 3d at 646 (granting in part a preliminary injunction and requiring the counting of certain categories of provisional ballots that would not have been counted under state law).  If the voter is not eligible to vote in all races marked on the provisional ballot because the voter no longer resides in the precinct, then, at the very least, the election official must partially count the ballot for all federal races in which the voter is qualified to vote, for example, any statewide federal races, such as U.S. Senator, or Congressional races where both the old and new addresses are in the same Congressional district.

Second, Plaintiffs request that the Court order the SOS to send a blank voter registration form and a notice to all voters who have engaged in a Covered Transaction with ADOT/MVD since November 9, 2016, advising them that their voter registration record may be out of date.  This notice should also inform voters that, if they are signed up for the PEVL they will not receive Early Ballots at the address they reported to ADOT/MVD or, if they intend to vote in person, that they will be required to cast a provisional ballot if their voter registration address is not current.  Finally, the notice should provide voters with instructions for verifying or correcting their voting address as well as finding their correct polling place. The notice component of the requested relief is critical for the following reasons.  It will reduce the number of voters who vote out of precinct and whose ballots must therefore be hand-marked by election officials by: (a) encouraging them to update their address prior to

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

1    voting; and (b) by providing them with the polling place information for the precinct

2    corresponding to their current address.  It also will provide the only remedy that will assist

3    the significant number of PEVL voters who, if they cannot vote in person, will be unable to

4    cast a ballot entirely unless they update their registration prior to the election.

5         For the foregoing reasons, Plaintiffs respectfully ask the Court to grant their

6    Application and enter an order in the form lodged herewith.

7    .  .  .

8    .  .  .

9    .  .  .

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

DATED this 18th day of August, 2018.

BRYAN CAVE LEIGHTON PAISNER LLP

By  s/ Lawrence G. Scarborough
    Lawrence G. Scarborough
    Teresa P. Meece
    Julie M. Birk
    Two North Central Avenue, Suite 2100
    Phoenix, Arizona 85004-4406

    Kathy Brody
    Darrell Hill
    AMERICAN CIVIL LIBERTIES UNION OF ARIZONA
    P.O. Box 17148
    Phoenix, Arizona 85011-0148

    Sarah Brannon* **
    Ceridwen Cherry*
    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
    915 15th Street NW
    Washington, DC 20005-2313

    Theresa J. Lee*
    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
    125 Broad Street
    New York, New York 10004

    Stuart Naifeh*
    DEMOS
    80 Broad St, 4th Floor
    New York, New York 10004

    Chiraag Bains* **
    DEMOS
    740 6th Street NW, 2nd Floor
    Washington, DC 20001

    Jon Greenbaum*
    Ezra D. Rosenberg*
    Arusha Gordon*
    LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
    1500 K Street NW, Suite 900
    Washington, DC 20005

    * *Pro hac vice* applications forthcoming.
    ** *Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).*

    Attorneys for Plaintiffs

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004-4406
(602) 364-7000

12083705

22