Law Offices
HINSHAW & CULBERTSON LLP
2375 E. Camelback Rd.
Suite 750
Phoenix, AZ 85016
602-631-4400
602-631-4404
stully@hinshawlaw.com
bdunn@hinshawlaw.com

Stephen W. Tully (014076)
Bradley L. Dunn (028897)
Attorneys for Defendant Michele Reagan,
in her official capacity as Secretary of State for the State of Arizona

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| League of Women Voters of Arizona; Mi Familia Vota Education Fund; and Promise Arizona, on behalf of themselves, their members, and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Michele Reagan, in her official capacity as Secretary of State for the State of Arizona,<br><br>Defendant. | No. 2:18-cv-02620-JAT<br><br>**RESPONSE TO PLAINTIFFS' APPLICATION TO SHOW CAUSE (MOTION FOR PRELIMINARY INJUNCTION, DOC. 5)** |

Defendant Michele Reagan, in her official capacity as Secretary of State for the State of Arizona ("Secretary of State"), hereby responds and objects to Plaintiffs' Application for an Order to Show Cause why a Preliminary Injunction should not be entered ("Application") (Doc. 5).

Plaintiffs have discovered what may in fact be a technical violation of a specific federal voting rights law that applies to change of address forms at state motor vehicle departments, but Plaintiffs fail to show any harm directly caused by the alleged violation. Instead Plaintiffs simply theorize that a particular set of voters has been affected by the alleged failure to strictly follow an applicable legal provision. Plaintiffs then demand the court impose unduly burdensome relief that, in part because causation cannot be proved,

is unlikely to resolve the alleged problem. The relief requested would not only be extremely costly to implement but would also likely cause more confusion than clarity among the small class of prospective voters Plaintiffs claim to want to help. Plaintiffs do not meet the standard for this Court to issue a preliminary injunction, especially one that will impact an upcoming election, and one that seeks relief altering the status quo. Accordingly, Plaintiffs' Application should be denied.

## I. Plaintiffs allege that Arizona's MVD Change of Address Forms violate Federal Law.

In 1993, the Federal government passed the National Voter Registration Act ("NVRA"). 52 U.S.C. § 20501 et seq. The NVRA, also known as the "Motor Voter" law, went into effect in 1995. Among other things, the NVRA requires states to register voters for federal elections when those voters are applying for motor vehicle driver's licenses, renewing their driver's licenses, or making changes to their driver's licenses. 52 U.S.C. § 20504.

The NVRA requires that states provide the opportunity for voters to change their voting registration addresses when changing their addresses with the MVD. It states:

> Any change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved *unless* the registrant states on the form that the change of address is not for voter registration purposes.

52 U.S.C. § 20504(d) (emphasis added). This law does not expressly take into account that many voters and drivers maintain mailing addresses that are different from their residences. Voters are only permitted to vote where they reside, but they can and do receive their early ballots at locations other than their residences. The Arizona Department of Transportation Motor Vehicle Division (MVD) also maintains a residence address for every driver and a mailing address that is often different. For example many

2

people obtain their mail from P.O. boxes. Accordingly, many citizens reasonably desire to maintain a different MVD address from their voting address.

### a. In-Person Written Forms

The forms that Arizona's Motor Vehicle Division ("MVD") has used for the past twenty-three (23) years for in-person written applications contained a box for the applicant to check if an applicant wanted to have their voting registration addresses updated. From November 2016 to approximately February of this year the MVD asked the following question:

> ☐ Yes ☐ No   Are you a United States citizen who wishes to register to vote or update your existing voter registration?

Arizona Department of Transportation's Driver License/Identification Card Application, Form 40-5122 R04/16. The form since February of 2018 asks the question slightly differently:

> 1. Do you wish to register to vote or update your existing voter registration **AND** are you a U.S. citizen? ☐ Yes ☐ No

Form 40-5122 R01/18. If an applicant checked the box labeled "Yes", their voter registration residential and/or mailing address was changed as they directed. If the applicant did not check the box or checked the box labeled "No", the voting registration addresses were left the same. Plaintiffs assert that the form used by the MVD and the language above are technically incorrect in that the federal law prescribes that the voting address of one changing their driver's license address should be changed automatically *unless* the applicant "states on the form that the change of address is not for voter registration purposes". Application, Pg. 9, 12-13. Plaintiffs are, therefore, arguing that the federal law mandates the voter only be provided an option to "opt out" of having their voting registration address changed (i.e. a "No" box) and that providing the voter the option to instead check a box to "opt in" (i.e. a "Yes" box) to confirm their desire to update their voting address violates the NVRA's requirement. *Id*., Pg. 9, 14-19.

3

One could reasonably argue that a voter, by failing to check the box indicating a desire to change their voting registration, is in fact stating on the MVD form that the change of address is not for voter registration purposes and thus the form is compliant with the requirements of the NVRA. Nevertheless, for purposes of this litigation the Secretary of State is willing to accept the Plaintiffs' position, and the MVD forms and the necessary computer changes are already in the process of been modified. Unfortunately to effectuate the change both the MVD and SOS computer systems need to be modified. As will be explained to the court at the hearing, these modifications should be completed by October 2019. Accordingly, the technical issue concerning the in-person written forms provided by the MVD is being resolved.

### b. On-line Forms

Plaintiffs also complain of the manner in which the MVD conducts its on-line change of address procedure. It should be noted that the NVRA does not directly address on-line application processes anywhere within its statutes. Arizona did not roll out services to permit the on-line amendment of driver's license addresses until 1999, six (6) years after the NVRA was passed. Currently, an individual changing their driver's license mailing or residence addresses on-line is asked if they wish to update their voting registration. If so elected, that individual is directed to an on-line form that will change the individual's voter registration or mailing address. If the voter does not elect to change their voting registration it is not updated.

As with the paper form, Plaintiffs complain that the on-line form where one enters their MVD change of address only contains an option to "opt in" to change their voter registration, instead of being limited solely to an "opt out" option. Again, this is a technical reading of the NVRA, but a reading that the Secretary of State is willing to accept to ensure compliance with the law.

Unfortunately, like the MVD written forms, modifying the on-line address change system is not readily achievable as it requires the coordination of several computer systems run by separate government entities including ADOT, the Secretary of State, and several County Recorders. Nevertheless, the change requested by Plaintiffs is currently being prepared, but is complicated by the State changing computer vendors in April of next year. Nonetheless it is anticipated that the changes can be made and the system will be fully functional sometime early in 2019. Plaintiffs are aware of the complications of the computer change and have affirmatively acknowledged that the ADOT and Secretary of State technological updates will take some time to complete. See e.g. Plaintiffs' Memorandum of Understanding ("MOU") with ADOT, Exhibit B to the Complaint, Pg. 5 item 7.

As outlined above, the Secretary of State accepts that the Plaintiffs have discovered a possible technical violation of the NVRA and agree that the Plaintiffs notified the Secretary of State of this fact. The Secretary of State has subsequently agreed that the Plaintiffs' position is a plausible reading of the NVRA and is working with the MVD and the County Recorders to change all applicable forms (on-line or otherwise) to conform to the demands of the Plaintiffs. That should have been the end of it. Unfortunately, Plaintiffs have, without any offer of proof, sought to link out-of-precinct ("OOP") voting to this technical violation of the NVRA. Plaintiffs then propose an unduly burdensome remedy that is unlikely to prevent OOP voting.

## II. Plaintiffs' Alleged Harm

Arizona employs a precinct voting system for many counties including the two largest, Maricopa and Pima. Residents of these counties must vote in the precinct where they reside. See A.R.S. § 16-122 (requiring votes to be cast in the correct precinct to be counted). If a registered voter attempts to vote outside the precinct where they live they will be given a provisional ballot. A provisional ballot cast outside of the correct precinct

5

1 is referred to as an out-of-precinct or OOP ballot. The number of OOP ballots cast in the 2016 election (a presidential election) was 3,970, constituting just 0.15% of the 2.66 million votes cast. That number includes every voter who, for whatever reason, attempted to vote in the wrong precinct.

Plaintiffs request the court to order a subset of the OOP ballots be counted for purposes of federal elections only. They want the votes for federal office counted from those OOP ballots cast by those who will have moved more than 30 days before the next election, who will have updated their motor vehicle residential address, and who will have chosen not to update their voting registration at the same time (Application Doc 5, 1:21-24.).

If this described voter votes a provisional ballot at the polling precinct corresponding to their out-of-date voter registration during the next election, Plaintiffs want the court to assume that the individual wanted to update their registration to reflect where they currently live and count their federal votes. Plaintiffs make no distinction between those voters that *consciously elected* to maintain a different voting address from their mailing address. Plaintiffs' assumption is not logical. One might as easily assume that the voter sought (perhaps wrongly) to maintain their old voting address even after they moved.

It is also not fair to assume that the voters in the narrow class proposed would have not opted out of updating their voter residential addresses if they had been limited to that option. The Plaintiffs are even asking the court to assume that individuals that checked the "NO" box on the written form would not have opted out of changing their voter addresses when changing their addresses at the MVD. Plaintiffs' claims of harm are therefore speculative.

Plaintiffs' Application also references no evidence that any OOP ballots likely to be cast in the next election will come from individuals that moved their residences and

6

tried to vote in their old precinct *as a result of the MVD forms not being "opt out"*. If a voter had been forced to change their voting address when changing their MVD address and tried to vote at their old polling place their vote would still be an OOP ballot and not be counted. The result is the same whether their address was changed by the MVD and the applicable County Recorder or not. A person cannot vote where that person no longer resides. A.R.S. §§ 16-122; 16-579. Accordingly, Plaintiffs' alleged harm is not directly caused by the alleged NVRA violation on the MVD forms.

## III. Plaintiff's requested Relief will not cure the OOP problem.

Plaintiffs ask this Court for relief that will not prevent OOP voting, and Plaintiffs suggest cures that have no likelihood of remedying it. Plaintiffs ask the Court to direct the Secretary of State to:

> [I]nstruct county recorders to count provisional ballots cast by voters in federal elections who changed their address during a Covered Transaction with ADOT/MVD since November 9, 2016 regardless of whether the provisional ballot is cast in the precinct corresponding to the address associated with the voter's driver's license or identification card or in the precinct associated with the voter's registration record. (App., 20:2-7).

Plaintiffs make no distinction in their demand regarding changes made to residential or mailing addresses making it possible for one to vote by P.O. Box address. There is no valid argument for permitting such voting.

Plaintiffs' proposed relief would permit the numerous voters who actually changed both their MVD record and their voting record through the MVD forms or otherwise, to have their provisional ballots counted if for whatever reason they vote out-of-precinct. There is no reason for these voters to return to their old polling places and any NVRA violation had no effect on them. Nevertheless, if for some reason they did try to vote at a

7

provisional ballot at their old precinct, Plaintiffs would require it be counted. There is no justification for counting their ballot and the State law prohibits it.[1]

The proposed remedy would also include those that did not change their residential voting addresses but did vote at the correct precinct that corresponded to their current MVD residential address. The law in this state is clear that County Recorders already count provisional ballots from this subset as long as the person has not changed counties. It would be pointless for the Court to issue an order requiring the counting of ballots which are already currently being counted by the County Recorders.

Plaintiffs limit their legal arguments (as opposed to their proposed order) to requesting relief for those who changed their residential addresses with the MVD since November 9, 2016 and did not change their residential addresses for voting purposes. Plaintiffs argue some of these individuals likely vote by provisional ballot in the wrong precinct and Plaintiffs propose accepting ballots from such voters if the precinct they wrongly vote in is either their current MVD residential address or the residential address appearing on their then current voter registration. While numbers are not available, the number of such voters would be substantially less than the total number of OOP votes.

---

[1] Incidentally, Arizona is not alone in requiring voters to vote in their assigned precinct. As the Sixth Circuit recognized, "in almost every state [] voters are required to vote in a particular precinct." *Sandusky Dem. Party v. Blackwell*, 387 F.3d 565, 567 (6th Cir. 2004). And like Arizona, at least two dozen states enforce their precinct-based system by counting only those ballots cast in the correct precincts. *See* Ala. Code § 17-10-3; Conn. Gen. Stat. § 9-232n; Del. Code Ann. tit. 15, § 4948; Fla. Stat. § 101.048; Haw. Rev. Stat. § 11-21; 10 Ill. Comp. Stat. 5/18A-15; Ind. Code §§ 3-11.7-5-3, 3-11.7-5-5; Iowa Code § 49.81; Ky. Rev. Stat. An. § 117.245; Mich. Comp. Laws § 168.813; Miss. Code Ann. § 23-15-573; Mo. Ann. Stat. 115.430; Mont. Code Ann. § 13-15-107; Neb. Rev. Stat. § 32-1002(5); Nev. Rev. Stat. § 293.3085; N.C. Gen. Stat. § 163-182.2; Ohio Rev. Code Ann. § 3505.183; Okla. Stat. Ann. Tit. 26, § 7-116.1; S.C. Code Ann. § 7-13-710; S.D. Codified Laws § 12-20-5.1; Tenn. Code Ann. § 2-7-112; Tex. Elec. Code Ann. § 65.054; Vt. Stat. Ann. Tit 17, § 2563; Va. Code Ann. § 24.2-653; Wis. Stat. § 7.52; Wyo. Stat. Ann. §§ 22-1-102, 22-15-105.

302420118v1 2900

Probably far less. The relief sought would not eliminate OOP voting. It simply provides for a subset of OOP votes to count for federal elections purposes.

**IV. Plaintiff's request for a letter to be mailed to all citizens who changed their addresses with the MVD would be expensive and cause confusion and is redundant of current efforts by the Counties.**

Plaintiffs' request for preliminary injunction also asks the Court to force the Secretary of State to send a letter to all those who have engaged in a "Covered Transaction" since the last general election. Specifically:

> "Plaintiffs request that the Court order the SOS to send a blank voter registration form and a notice to all voters who have engaged in a Covered Transaction with ADOT/MVD since November 9, 2016, advising them that their voter registration record may be out of date. This notice should also inform voters that, if they are signed up for the PEVL they will not receive Early Ballots at the address they reported to ADOT/MVD or, if they intend to vote in person, that they will be required to cast a provisional ballot if their voter registration address is not current. Finally, the notice should provide voters with instructions for verifying or correcting their voting address as well as finding their correct polling place." (App., 20:18-25).

Plaintiffs list examples of what encompasses a "Covered Transaction" as an "initial application, renewal, and/or change of address" with ADOT/MVD since the last general election. (Plaintiff's Proposed Order, 2:13-15). This definition includes everyone who applied for a driver's license – even those not 18 years of age.

Plaintiffs allege that sending this letter will reduce the number of voters who vote out of precinct. They offer no evidence to support this belief. The letter will not solve the OOP problem. The County Recorders already mail letters to voters who have changed addresses, whose early ballots are returned, or whose mailing addresses have been changed. (See e.g. sample letters from the Secretary of States' Election Procedures Manual attached as **Exhibit 1**). This is a constant effort by the County Recorders. For example, Yavapai County hires Pitney Bowes to provide it with a weekly list of those who change their residences and the county sends these individuals a reminder to change their voting addresses. As a result, Yavapai finds that its records are usually more up to

9

date then the MVD (See affidavit of Leslie Hoffman attached as **Exhibit 2**). This also means sending another letter to the potential voters who have not bothered to change their residential voting addresses despite being given the opportunity by the MVD and receiving correspondence from the County Recorders is unlikely to be effective. Moreover, at this point in the election cycle any voters signed up for permanent early voting and who moved should be aware if there is a problem. The primary election was a few days ago and the person would not have received an early ballot. If they did not notice the fact that they did not receive a ballot and attempted to vote at the wrong precinct, they have already discovered the problem with their voting registration address and have corrected it. If they have not, no letter will induce them to take the appropriate action.

On the other hand, mailing a letter as proposed by Plaintiffs will cause more confusion. Plaintiffs' demand makes no distinction between residential and mailing addresses. It requires sending letters to voters notifying them that there may be a problem with their registration when, for most, there is no problem. And if there is no problem, sending a letter is as likely to cause confusion that scares voters off from voting as it is to encourage them to actually vote. *See, e.g., Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (noting that "voter confusion," especially "[a]s an election draws closer," can result in the "consequent incentive to remain away from the polls").

Finally the letter is expensive and the state and counties have not budgeted for it. The demand is so broad it covers over 1.9 million transactions. Even if properly limited to a smaller subset of transactions, it will result in more than a hundred thousand pieces of mail. This is an expense the state or counties should not be forced to bear on an unsupported assumption that it may induce someone to take action.

## V. Lack of Standing

Granting Plaintiffs injunctive relief is also improper as Plaintiffs have not established that they have either direct or associational standing in this matter because they have failed to establish that any injury to their organizations or their members would be redressed by this Court granting the specific relief sought in the Complaint. Federal-court jurisdiction extends only to "cases" and "controversies." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing L*ujan v Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). As the party invoking the court's jurisdiction, the plaintiff has the burden of establishing standing. Spokeo, 136 S. Ct. at 1547. These requirements apply whether an organization asserts standing to sue, either on its own behalf, or on behalf of its members. *Havens Realty Corp. v. Coleman* 455 U.S. 363, 378, 71 L. Ed. 2d 214, 102 S. Ct. 1114 (1982).

Plaintiffs claim that at least one unnamed member of each of their organizations "has updated their driver's license address with ADOT/MVD and has been harmed by the SOS's failure to update their residence address for voting purposes". (Complaint, Doc. 1, ¶¶7, 13, 18). Plaintiffs have yet to explain or even allege why these unnamed members did not update their residence addresses and why they are expecting to file OOP ballots that will not be counted.

In addition, as previously stated, automatically forwarding every MVD address change (residential and mailing) to the State (unless the person checks the "No" box) and requiring an automatic update to the voter registration addresses on file would not

11

1 remedy the injury suffered by the voter who shows up at the wrong polling precinct to
2 vote on election day. A favorable decision for the Plaintiffs therefore would not remedy
3 the alleged injury suffered by a voter who refuses to abide by the voting laws in this
4 State. Thus, there can be no standing to sue – at least to seek the relief requested in the
5 preliminary injunction request. Plaintiffs cannot prove an injury in fact. The injury they
6 allege is hypothetical and not traceable to the claimed technical violation and the "harm"
7 they theorize is not likely to be redressed by granting the relief they seek.

## VI. Preliminary Injunction Standard

"A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook,* 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. NRDC,* 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).

When a plaintiff is requesting a mandatory injunction, the burden is doubly demanding because then the plaintiff must establish that the law and facts clearly favor her position, not simply that she is likely to succeed on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). This heightened standard is necessary because a mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Id*. Therefore, "mandatory injunctions should not issue in doubtful cases." *Id*.

The Ninth Circuit, sitting en banc, has also recognized that a request for a preliminary injunction in a case involving state elections is even more disfavored. *See Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914 (9th Cir. 2003). "[A] federal court cannot lightly interfere with or enjoin a state election" because "election cases are different from ordinary injunction cases." *Id*. 918-919. "Interference with

12

impending elections is extraordinary and interference with an election after voting has begun is unprecedented." *Id*. (citations omitted).

Further, when a court is faced with ruling upon a request for injunction that may impact a statewide election "just weeks before [that] election," the court is "required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures." *Purcell*, 549 U.S. at 4. "Court orders affecting elections […] can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id*. at 4-5. "As an election draws closer, that risk will increase." *Id*. at 5.

In this case, Plaintiffs are not only seeking an injunction involving the conduct of an election, but are also seeking a mandatory injunction that alters the status quo of the election voting process. Plaintiffs are asking this Court to void the election laws of this state for a particular set of unknown voters.

### a. No Irreparable Harm to Plaintiffs

Plaintiffs allege that voters may be disenfranchised if they are not provided the relief they seek. But that harm is not to the Plaintiffs. The Plaintiffs are not the voters who attempt to vote at the wrong precinct nor do they even allege to represent them. The Plaintiffs allege, without elaboration, that some of their members changed their addresses with the MVD and failed to update their voting addresses. (Doc. 5 14:7-9). What is not alleged and what could not seriously be argued is that these members are planning on going to the wrong precinct and demanding a provisional ballot. The only particular harm that the Plaintiffs claim to suffer is that their organizations must expend funds to register voters they claim failed to register when they changed their MVD address. The harm to Plaintiffs is hardly real and certainly not irreparable. It is likely so marginal as to be unquantifiable. Harm that is "merely speculative" will not support injunctive relief.

13

*American Trucking Associations v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009).

### b. Balance of Hardship Favors the Secretary of State

Plaintiffs are claiming that voters will be disenfranchised unless the relief they seek is granted. If indeed there are any voters who through no fault of their own were being disenfranchised that would indeed be a hardship. But the cure to being disenfranchised is to vote in the correct precinct or change your voting registration when given the opportunity. That is not a significant hardship.

In contrast, the work involved in trying to identify and count the selected OOP votes is significant and time consuming. First, all the OOP ballots would need to be identified. Second, the voters' residential addresses with both the MVD and the applicable County Recorder would need to be checked (assuming the Country Recorder has access to the MVD records), and it would need to be determined if the ballot was cast in either location. Third, the Recorder would need to check the MVD records to determine if the person made a covered transaction since November 9, 2016 during which they changed their residential address. After doing all that analysis those remaining votes, would need to be sent to an election review panel that would open the ballot and create a whole new ballot with only the two federal races on it (Senate and Congress) and then tabulate that new ballot. The creation of the new ballots would itself take an estimated 3-5 minutes per ballot. The process could take several days and all this work would need to be done while the County completes the election, certifies the canvass, performs any recounts and completes all its other duties.

Plaintiffs are also demanding that the Secretary of State mass mail more than 1.9 million potential voters who had Covered Transactions with the MVD in the last two years with a letter notifying them that there might possibly be problems with their voting registration. That is an extraordinarily expensive mailing to try to reach what is probably

14

at most a handful of voters and there is no good basis for believing that those voters will respond to the letter.

Moreover, many authorities suggest that a State "suffers a form of irreparable injury" whenever it "is enjoined from effectuating statutes enacted by representatives of its people[.]" *Maryland v. King*, 567 U.S. 1301 (2012) (quoting *New Motor Vehicle Bd. of Cal. V. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977)); *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018); *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017). The mandatory injunction would cause harm to the State.

### c. Public Consequences are Highly Speculative

Plaintiffs bear the initial burden of showing that the injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). However, the district court need not consider public consequences that are "highly speculative." *Id*. In other words, the Court should weigh the public interest in light of the *likely* consequences of the injunction. "Such consequences must not be too remote, insubstantial, or speculative and must be supported by evidence." *Id*.

Plaintiffs have provided no evidence supporting their allegation that the requested injunction is in the public interest. There is no evidence that future OOP voters are individuals who have been harmed by the failure of the MVD forms to provide them an option only to opt out from changing their voter registration address. It is highly speculative to assume that a mass mailing will cause some percentage of future OOP voters to modify their actions so as to ensure their votes are counted. The number of OOP ballots has decreased from 14,885 in 2008 to just 3,970 in 2016. It is reasonably anticipated that this number will continue to decline for the upcoming election without the requested intervention as it has been declining without it for several election cycles.

302420118v1 2900

### d. Plaintiffs are not likely to prevail on the merits.

For the reasons discussed above, the Secretary of State does not believe that Plaintiffs will prevail on the merits of their request for relief and damage claims. The Secretary of State believes that she will likely obtain a judgment of dismissal on the grounds of standing and perhaps mootness.

## VII. Plaintiffs have failed to name necessary parties.

With regard to out-of-precinct voting, Plaintiffs have also failed to name the necessary Arizona county parties to obtain statewide relief on this issue. Federal courts are "powerless" to issue preliminary injunctions against non-parties. *Citizens Alert Regarding the Env't v. EPA*, 259 F. Supp. 2d 9, 17 n.7 (D.D.C. 2003). Accordingly, "[i]n the absence of . . . a necessary party under Rule 19(a) of the Federal Rules of Civil Procedure, the merits may not be reached and a preliminary injunction may not be granted." *Boat Basin Inv'rs, Inc., v. First Am. Stock Transfer, Inc*., No. 03 Civ. 493, 2003 WL 282144, at *1 (S.D.N.Y. Feb. 7, 2003); see also *Stevenson v. Blytheville Sch. Dist. No. 5*, 955 F. Supp. 2d 955, 970 (E.D. Ark. 2013) ("This Court does not have before it the parties necessary to grant through [sic] preliminary injunction the relief plaintiffs seek."); *Escamilla v. M2 Tech*., No. 4:11CV516, 2012 WL 4506081, at *6 (E.D. Tex. July 6, 2012) (similar)).

A.R.S. § 16-411 designates the counties as the jurisdictions best suited to coordinate local election activities, and Arizona law also makes the counties responsible for counting provisional ballots. See A.R.S. §§ 16-531, 16-602, 16-584(E). Because the county parties, specifically the county recorders, which will actually count or reject provisional ballots are absent, Plaintiffs' request for statewide injunctive relief relating to out-of-precinct voting should be denied.

## VIII. Conclusion

Based upon the foregoing, we ask that the court deny the request for Preliminary Injunction and award the Secretary of State her attorneys' fees and costs pursuant to 52 USC §20510(c).

DATED this 31st day of August, 2018.

             HINSHAW & CULBERTSON LLP

             /s/ Stephen W. Tully
             Bradley L. Dunn
             Stephen W. Tully
             Bradley L. Dunn
             Attorneys for Defendant Michele Reagan, in her official capacity as Secretary of State for the State of Arizona

# CERTIFICATE OF SERVICE

I certify that on the 31st day of August, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Lawrence G. Scarborough, Esq.<br>Jessica R. Maziarz, Esq.<br>Teresa P. Meece, Esq.<br>Julie M. Birk, Esq.<br>Bryan Cave Leighton Paisner, LLP<br>Two North Central Avenue, Suite 2100<br>Phoenix, AZ 85004-4406<br>*Attorneys for Plaintiffs* | Arusha Gordon<br>Ezra D. Rosenberg<br>Jon M. Greenbaum<br>Lawyers Committee for Civil Rights<br>Under Law<br>1500 K Street NW, Ste. 900<br>Washington, DC 20005<br>*Attorneys for Plaintiffs* |
| Ceridwen Cherry<br>Sarah Brannon<br>ACLU - Washington DC<br>915 15th St. NW, 7th Fl.<br>Washington, DC 20005<br>*Attorneys for Plaintiffs* | Chiraag Bains<br>DEMOS - Washington, DC<br>740 6th St. NW, 2nd Fl.<br>Washington, DC 20001<br>*Attorneys for Plaintiffs* |
| Darrell L. Hill<br>Kathleen E. Brody<br>ACLU - Phoenix, AZ<br>P.O. Box 17148<br>Phoenix, AZ 85011<br>*Attorneys for Plaintiffs* | Theresa J Lee<br>ACLU - New York, NY<br>125 Broad St., 18th Fl.<br>New York, NY 10004<br>*Attorneys for Plaintiffs* |
| Stuart C. Naifeh<br>DEMOS<br>80 Broad Street, 4th Fl.<br>New York, NY 10004<br>*Attorneys for Plaintiffs* | Joseph E. La Rue<br>Assistant Attorney General's Office<br>2005 North Central Avenue<br>Phoenix, AZ 85004-1592<br>*Co-Counsel for Defendant* |

By /s/ Tammy Rivera