1  BRYAN CAVE LEIGHTON PAISNER LLP (No. 00145700)
   Lawrence G. Scarborough (No. 006965) (lgscarborough@bclplaw.com)
2  Jessica R. Maziarz (No. 027353) (jessica.maziarz@bclplaw.com)
   Teresa P. Meece (No. 032071) (teresa.meece@bclplaw.com)
3  Julie M. Birk (No. 033908) (julie.birk@bclplaw.com)
   Two North Central Avenue, Suite 2100
4  Phoenix, Arizona 85004-4406
   Telephone: (602) 364-7000
5
   Attorneys for Plaintiffs
6
   [Additional counsel listed on signature page]
7

8                    UNITED STATES DISTRICT COURT

9                        DISTRICT OF ARIZONA

10 League of Women Voters of Arizona; Mi        No. CV-18-02620-PHX-JAT
   Familia Vota Education Fund; and Promise
11 Arizona, on behalf of themselves, their
   members, and all others similarly situated,
12
                  Plaintiffs,
13
                  vs.
14
   Michele Reagan, in her official capacity as
15 Secretary of State for the State of Arizona,
16                Defendant.
17
18
19
20              REPLY IN SUPPORT OF PLAINTIFFS'
               MOTION FOR PRELIMINARY INJUNCTION
21
22
23
24
25
26
27
28

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Introduction**

Despite admitting to violations of Section 5 of the National Voter Registration Act ("NVRA") by failing to automatically update voter's registration addresses when they report a change of address to the Arizona Department of Transportation ("ADOT") or its Motor Vehicle Division ("MVD") (collectively "ADOT/MVD"), and despite having been on notice of her violations since November 14, 2017, the Secretary of State ("SOS") refuses to do anything before the federal election on November 6, 2018 ("Election Day") (https://azsos.gov/elections/elections-calendar-upcoming-events (last visited Aug. 31, 2018)) to remedy the ongoing harm she is causing Plaintiffs and Arizona voters. The SOS fails to establish that any preliminary injunction factors weigh in her favor. Accordingly, to remedy the ongoing violations, the Court should issue a preliminary injunction requiring the SOS to: (a) instruct county recorders to count out of precinct ("OOP") provisional ballots cast by affected voters together with appropriate poll-worker training, and (b) mail a notice to individuals who changed their address with ADOT/MVD since the last federal election.

**Argument**

**I.      PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION.**

**A.      The SOS Admits Violation Of The NVRA And Liability On The Merits.**

The SOS does not dispute that she is in violation of the NVRA. [*E.g.*, Response to Plaintiffs' Application to Show Cause (Motion for Preliminary Injunction, Doc. 5) (8/31/18) ("Opposition") at 4 ("for purposes of this litigation the Secretary of State is willing to accept the Plaintiffs' position"); *id.* (conceding the SOS "is willing to accept" Plaintiffs' position related to on-line changes of address forms "to ensure compliance with the law")] Accordingly, Plaintiffs are very likely to prevail on the merits.

**B.      Plaintiffs' Narrow Remedy Will Ensure That The Ballots Of Affected Voters Are Counted Without Significantly Burdening The SOS.**

The balance of the hardships favors Plaintiffs. The SOS attempts to paint the proposed relief as overbroad, but when the narrowly tailored relief Plaintiffs actually request is considered, the SOS cannot identify any burdens that would outweigh the injuries to

Plaintiffs and Arizona voters.

**1. Plaintiffs' Requested Remedy Is Narrowly Tailored to Addresses the Harm Caused by the SOS's Legal Violations.**

Contrary to the SOS's repeated mischaracterizations, Plaintiffs seek an order requiring the counting of a very narrow set of OOP ballots. First, the SOS repeatedly admits that the burden of counting this narrow subset of OOP ballots is very minor. [*E.g.*, Opposition at 15 (stating that, in the 2016 Presidential election, only 3,970 OOP ballots were cast across all of Arizona and the SOS "reasonably anticipate[s] that this number will continue to decline for the upcoming election")] Moreover, the SOS acknowledges that the number of OOP ballots covered by Plaintiffs' requested remedy is a "narrow class" and the "number of such voters would be substantially less than the total number of OOP votes. Probably far less." [*Id.* at 8-9] Plaintiffs' requested mailer is likely to decrease further the number of OOP ballots that must be counted because it will allow voters to correct their addresses before Election Day, reducing the likelihood of voting OOP. Thus, the SOS would face a minimal burden of counting "far less" than 3,970 OOP ballots across the entire state of Arizona, making it hardly burdensome.[1]

Second, as a result of the ongoing NVRA violations, Plaintiffs are only seeking to count the OOP ballots of any voter who does not have the same residential address on file with both ADOT/MVD and election officials. If a voter's registration address is the same as their address on file with ADOT/MVD because the voter subsequently updated their registration address, their OOP ballot would not be counted under the sought remedy. To the extent that it is possible for ADOT/MVD to determine that a voter did in fact check the "NO" box on the paper ADOT/MVD form in response to the voter registration question, their OOP ballot also would not need to be counted. Thus, contrary to the SOS's argument

---

[1] Moreover, the burden of having to count a few additional provisional ballots that are OOP ballots will only occur in counties with precinct-based polling locations. Thus, in the counties in which voting is conducted via vote center, there would be no need to count OOP ballots and zero burden imposed. [*See* Opposition, Ex. 2, ¶¶ 2-3 (explaining that in Yavapai County a voter whose residential address does not match their voter registration address is given a provisional ballot for their new precinct)]

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

(Opposition at 6, 7), Plaintiffs are not asking the state to count OOP ballots cast by voters who checked "NO" on the ADOT/MVD form, nor ballots cast OOP by voters who did, in fact, update their voting addresses.  Plaintiffs are asking the state to count only those votes cast in federal races in which the voter would have been eligible to vote had they voted in the precinct corresponding to their residential address.  Finally, Plaintiffs are not challenging the Arizona law prohibiting the counting of OOP ballots altogether.  Instead, they seek only that the Court order a one-time exception to that law for the narrow class of voters injured by the SOS's admitted ongoing NVRA violations.

### 2.    The Proposed Remedial Mailer Will Reduce, Not Increase, Burdens on County Election Officials.

The SOS's bald assertion that Plaintiffs' requested remedial mailer will be "extraordinarily expensive" is not accompanied by any information as to how much such a mailer would cost.[2]  [Opposition at 14]  In fact, such a mailer may actually lower election administration costs by providing voters with instructions on how to update their registration and locate their polling location, thus reducing mailing costs spent on Early Ballots mailed to the wrong address.

Moreover, the SOS does not explain how she reached the purported number of mailings that would be sent.  While many Arizonans move and thus could potentially be impacted, it is highly unlikely that the number is as high as the 1.9 million asserted by the SOS.[3]  The SOS herself has publicly stated that the number totals just over 500,000.  [Motion Counsel Decl., Ex. F]  Although the SOS's violations have been long-standing, Plaintiffs' requested relief is narrowly tailored to only those who engaged in a Covered

---

[2] It should be noted that DES and AHCCCS, which also have been engaged in ongoing violations of the NVRA, agreed to send out a similar mailer to clients who engaged in covered transactions (a universe of approximately 275,000 voters) and did not object to the unexpected expense.  [*See* Declaration of Counsel in Support of Plaintiffs' Application for an Order to Show Cause Why a Preliminary Injunction Should Not Be Entered (8/18/18) ("Motion Counsel Decl."), Ex. B]

[3] ADOT/MVD has agreed to provide a list of the individuals who completed Covered Transactions during the relevant time period in order to assist the SOS with complying with any order issued by the Court.  [*See id.*, Ex. B, ¶ 6]  But ADOT/MVD has not yet provided Plaintiffs with the number of affected individuals.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Transaction with ADOT/MVD since the last general federal election on November 8, 2016. Plaintiffs selected this narrow timeframe in order to reduce any potential burden on the SOS.[4]

The SOS's argument that Plaintiffs' requested remedial mailer is duplicative of mailings made by County Recorders also runs contrary to the facts.  None of these County Recorder mailings will have reached every voter affected by the SOS's violations.[5] Moreover, none of these County Recorder mailings provides information about how to update one's voter registration online through Service Arizona.  Nor do any of the County Recorder mailings explain that a voter must go to the polling place for their new address in order to cast a ballot that will count, how to find out where their new polling place is located, or how to request a new Early Ballot if theirs was sent to the wrong address.

### 3.      Plaintiffs' Requested Relief Will Not Cause Any Harm.

The SOS fails to explain how Plaintiffs' requested remedial mailer giving voters correct information would cause voter "confusion" or discourage voter participation. [Opposition at 10]  Instead, providing voters with information to update their registration ensure they receive their Early Ballot, or locate their correct polling location will serve to reduce voter confusion and encourage participation.  The SOS's position that voters harmed by her violations of federal election law should not be informed about the resulting disenfranchisement because of a possible risk of confusion is illogical and unsupported.  *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 14 (D.C. Cir. 2016) (finding

---

[4]   While the NVRA requires that voter registration services must be provided during covered ADOT/MVD transactions to all individuals, for the purposes of the requested relief, Plaintiffs agree that the Court should narrow the scope of the mailing to likely eligible voters.  Contrary to the SOS's suggestion (see Opposition at 8), Plaintiffs do not request that the mailer be sent to individuals who will not be 18 years of age by Election Day or who are not United States citizens.

[5]   For example, the National Change of Address program relied on by County Recorders only captures addresses for individuals who report a change of address to the United States Postal Service ("USPS") and thus the recorders' mailing would reach only those voters who took the additional affirmative step of reporting their move to USPS. Similarly, both of the other mailers relied upon by the SOS would have only reached individuals through information they provided to USPS, not information provided to ADOT/MVD.  [Opposition, Ex. 1 at 1]

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

that "[a]n agency should not be allowed to claim that the confusion resulting from its own improper action weighs against an injunction against that action").[6]

Although the SOS cites (Opposition at 10) to *Purcell v. Gonzalez*, 549 U.S. 1 (2006), it is inapposite. *Purcell* involved a challenge to the state's voter identification process which affected every voter, weeks before the election. *Id.* at 3. In contrast, the requested relief here simply requires the SOS to remedy her admitted violations of federal election law by educating voters and employing the same process to count OOP ballots that election officials already use for ballots that cannot be read by an optical scan machine. [Motion at 2, 18 n.4] Moreover, Plaintiffs are willing to work with the SOS to ensure that the mailer is clear and easy for voters to understand.

### 4.      The Right to Vote Outweighs Any Potential Burden.

Even if it were burdensome for the SOS to count a "narrow class" of OOP ballots and send a remedial mailer to affected voters, that burden would not outweigh the harm and possible disenfranchisement of those voters impacted by the SOS's admitted violations of federal law. *See*, *e.g.*, *Fish v. Kobach*, 840 F.3d 710, 754 (10th Cir. 2016) (finding that burden analysis weighs in favor of voters even where relief imposes some burden on the state and is requested in a short timeframe).[7]

### C.      Plaintiffs Will Suffer Irreparable Harm.

The SOS fails to address the numerous authorities cited by Plaintiffs establishing that Plaintiffs' injuries and the injuries of their members constitute irreparable harm. [Plaintiffs'

---

[6] The SOS implies that the NVRA is flawed because it does not take into account that some voters maintain different residential and mailing addresses. Not so. The structure of Section 5(d)'s opt-out specifically allows individuals who want to have different addresses for voting and motor vehicle purposes to opt-out of the automatic update. 52 U.S.C. § 20504(d). Further, the SOS has not identified any harm these individuals would experience due to the proposed remedies. The mailer will explain that those who want to maintain different voting and mailing addresses may continue to do so. And state law already requires that ballots cast by these voters in the precinct where they are registered must be counted even if they have a different driver's license address, so long as they attest that they reside within the precinct. *See* A.R.S. §§ 16-122, 16-135, 16-584.

[7] The SOS's cited authorities (Opposition at 15) are inapposite because they concern stays pending appeal and are not preliminary injunction cases assessing the balancing of hardships.

Application for an Order to Show Cause Why Preliminary Injunction Should Not Be Entered (8/18/18) ("Motion") at 12-17]    Instead, the SOS makes unsupported factual and legal assertions that the "harm to Plaintiffs is hardly real." [Opposition at 13]  To the contrary, and as explained in Plaintiffs' Motion, the SOS's ongoing NVRA violations cause Plaintiffs to divert resources to ensure voters have up-to-date voter registration addresses and impedes their members' right to vote.  [*See* Motion at 12-17]  As Plaintiffs' cited authorities hold, the diversion of resources from Plaintiffs' primary mission to educate and register new voters "provide[s] injury for purposes both of standing and irreparable harm." *Newby*, 838 F.3d at 9; *Action NC v. Strach*, 216 F. Supp. 3d 597, 642-43 (M.D.N.C. 2016) (diversion of resources away from "voter mobilization and voter education efforts" before election constitutes irreparable harm at the preliminary injunction stage).[8]

Moreover, Plaintiffs' members need not wait to be denied their right to vote to show irreparable harm.  The purpose of a preliminary injunction is to prevent the harm before it occurs.   That Plaintiffs' members and other Arizona voters face the threat of disenfranchisement, and will be forced to take additional steps to undo these injuries, constitutes the very harm that the address updates required by Section 5(d) of the NVRA were intended to prevent, and no monetary award can compensate members who are unable to vote.  *E.g.*, *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), *cert. denied sub nom. Maricopa Cty. v. Melendres*, 136 S. Ct. 799 (2016).[9]

**D.    A Preliminary Injunction Is In The Public Interest And The Public Consequences Are Certain.**

The SOS seeks to excuse her admitted violation of the NVRA by characterizing the

---

[8] The SOS's only cited authority supports Plaintiffs' position. [Opposition at 14 (citing *American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009) (finding irreparable harm and rejecting argument that harm was speculative), *aff'd in part, vacated in part*, 596 F.3d 602 (9th Cir. 2010)]

[9] Under Arizona law, a voter who moves and whose voter registration information is not updated before the voter registration cutoff date must cast a provisional ballot, which will only be counted if cast at the polling location corresponding to the voter's new residential address.  *See* A.R.S. §§ 16-122, 16-135, 16-584; Motion at 13-15.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

public consequences as speculative.  [Opposition at 15]  The right to vote is a constitutional right and necessarily in the public interest.  The SOS fails to address any of the authorities Plaintiffs cite that hold that preliminary injunctions assisting voters in exercising the right to vote and enforcing federal voting laws serve the public interest.  [*E.g.*, Motion at 18-19]

**E.    The Court Should Grant Plaintiffs' Requested Mandatory Relief.**

The SOS has not identified any case in which a preliminary injunction was denied purely because the requested relief was mandatory.[10]  Indeed, Courts *do* grant preliminary injunctions when the requested relief is mandatory in nature, including in the NVRA context. *See, e.g.*, *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1130 (D. Kan. 2016) (finding that it was of no consequence whether preliminary injunction was mandatory because plaintiffs had made a showing of likelihood of success and balance of the harm elements in connection with NVRA § 5 case), *aff'd*, 840 F.3d 710 (10th Cir. 2016); *National Coal. for Students with Disabilities v. Taft*, No. 2:00-CV-1300, 2002 WL 31409443, at *7 (S.D. Ohio, Aug. 2, 2002) (ordering the Ohio Secretary of State to send NVRA-compliant voter registration notifications to students affected by the state's prior noncompliance).

**II.    PLAINTIFFS HAVE ORGANIZATIONAL AND ASSOCIATIONAL STANDING.**

Contrary to the SOS's assertion (Opposition at 11-13), Plaintiffs have organizational standing because their respective organizations have diverted resources away from other aspects of their organizational purpose to address the SOS's failure to update voter registrations as required under Section 5. [Motion at 12-17; *id.*, Ex. 1, ¶¶ 11, 13-15; *id.*, Ex. 2, ¶¶ 12, 14; *id.*, Ex. 3, ¶¶ 5, 10-12, 14; *see National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1039-40 (9th Cir. 2015) (stating the standard for Article III standing); *Georgia State Conference of NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1336 (N.D. Ga. 2012)

---

[10] The SOS's authorities are distinguishable because, here, Plaintiffs seek to protect the constitutional right to vote, the SOS admits liability, and Plaintiffs do not seek to delay the date of the November election. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746-47 (9th Cir. 2015) (denying mandatory injunction sought by actress to remove video from YouTube because the claim under copyright law was doubtful, there was an absence of irreparable harm, and an injunction would have interfered with the First Amendment); *Southwest Voter Reg. Educ. Project v. Shelley*, 344 F.3d 914, 919-20 (9th Cir. 2003) (denying injunction that sought to delay the election date).

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

(plaintiff's allegations that it expended resources—which it would have used on other projects—to register voters who should have been registered by the state "plainly satisfy the injury prong of the Article III test for standing"); *accord Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982*)* (where defendant causes organization to drain resources from other priorities "the organization has suffered injury in fact").

In addition and in the alternative, Plaintiffs have associational standing. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (affirming grant of requested injunctive relief and finding associational standing when (a) their members would otherwise have standing to sue in their own right; (b) the interests they seek to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit). Each Plaintiff believes it has at least one member who has been harmed or will be harmed by the SOS's failure to automatically update the member's voter registration and the resulting additional burdens and potential disenfranchisement the SOS's failures caused, meaning each Plaintiff has at least one member who would have standing to sue in their own right because. [Motion, Ex. 1, ¶ 12; *id.*, Ex. 2, ¶ 13; *id.*, Ex. 3, ¶ 13; *see* Reply, Ex. A (Declaration of Paul Wade) *and* Reply, Ex. B (Declaration of Khalil Rushdan) (League members explaining that they were injured by the SOS's NVRA violations)] This burden—and any burden—on the right to vote constitutes sufficient injury for standing purposes. *E.g.*, *Reynolds v. Sims*, 377 U.S. 533, 562, 565 (1964) (the right to vote is "a fundamental political right," and "each and every citizen has an inalienable right to full and effective participation in the political processes of his State's legislative bodies") (citations omitted). In addition, each Plaintiff engages in election-related activities—including voter registration—as a part of its organizational purpose. [Motion, Ex. 1, ¶¶ 3-11; *id.*, Ex. 2, ¶¶ 3-12; *id.*, Ex. 3, ¶¶ 3-12] Finally, Plaintiffs' individual members need not participate in this suit for the Court to resolve the claim and injuries.[11]

---

[11] "[W]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

**III.   THE SOS IS THE ONLY NECESSARY PARTY TO THIS SUIT.**

The SOS's necessary party argument attempts to divert the Court's attention from the fact that the NVRA squarely places compliance with the statute on the SOS, as Arizona's chief election official.  52 U.S.C. §§ 20504, 20509; A.R.S. §§ 16-112(B), 16-142.  Even so, the SOS makes this argument only in relation to Plaintiffs' requested OOP ballot counting. [Opposition at 16]  The SOS's use of the Arizona Revised Statutes to suggest that anyone else promulgates election rules and procedures is flawed and misleading.  Indeed, those very statutes defeat her argument.

The SOS is "[t]he chief state election officer who is responsible for coordination of state responsibilities."  A.R.S. § 16-142(A)(1).  "After consultation with each county board of supervisors or other officer in charge of elections, the *secretary of state* shall prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, *counting*, tabulating and storing ballots."  A.R.S. § 16-452(A) (emphasis added). "Such rules shall be prescribed in an official instructions and procedures manual," non-compliance with which is illegal.  A.R.S. § 16-452(B)-(C).  "All proceedings at the counting center . . . *shall be conducted in accordance with the approved instructions and procedures manual* provided for in section 16-452."  A.R.S. § 16-621(A) (emphasis added).

Arizona law makes clear that the SOS is responsible for the election procedures manual with which county election officials must comply in conducting any election. Plaintiffs seek an instruction to county recorders regarding the counting of OOP ballots. Because Arizona law requires that such an instruction come from the SOS, Plaintiffs have named the necessary party for relief relating to provisional ballot counting—the SOS.[12]

---

defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury, we see no purpose to be served by requiring an organization to identify by name the member or members injured."  *La Raza*, 800 F.3d at 1041.

[12] In the event the Court determines the counties are necessary parties, Plaintiffs request their joinder by court order pursuant to Fed. R. Civ. P. 19(a)(2).

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

**Relief Requested**

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant Plaintiffs' Motion for Preliminary Injunction.

DATED this 5th day of September, 2018.

BRYAN CAVE LEIGHTON PAISNER LLP


By s/ Lawrence G. Scarborough

Lawrence G. Scarborough
Jessica R. Maziarz
Teresa P. Meece
Julie M. Birk
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

Kathy Brody
Darrell Hill
AMERICAN CIVIL LIBERTIES UNION OF
ARIZONA
P.O. Box 17148
Phoenix, Arizona 85011-0148

Sarah Brannon* **
Ceridwen Cherry*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005-2313

Theresa J. Lee*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, New York 10004

Stuart Naifeh
DEMOS
80 Broad St, 4th Floor
New York, New York 10004

Chiraag Bains* **
DEMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001

Jon Greenbaum*
Ezra D. Rosenberg*
Arusha Gordon*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005



* *Pro hac vice* applications forthcoming.
** *Not admitted in the District of Columbia;*
*practice limited pursuant to D.C. App. R. 49(c)(3).*

Attorneys for Plaintiffs

Filed electronically with the Court and
served on parties of record by the Court's
CM/ECF system this 5th day of September,
2018.

 s/ Mary Ann Villa

12141335

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

11