# EXHIBIT A

1  BRYAN CAVE LEIGHTON PAISNER LLP (No. 00145700)
   Lawrence G. Scarborough (No. 006965) (lgscarborough@bclplaw.com)
2  Jessica R. Maziarz (No. 027353) (jessica.maziarz@bclplaw.com)
   Teresa P. Meece (No. 032071) (teresa.meece@bclplaw.com)
3  Julie M. Birk (No. 033908) (julie.birk@bclplaw.com)
   Two North Central Avenue, Suite 2100
4  Phoenix, Arizona 85004-4406
   Telephone: (602) 364-7000
5
   Attorneys for Plaintiffs
6
   [Additional counsel listed on signature page]
7

8                  UNITED STATES DISTRICT COURT

9                      DISTRICT OF ARIZONA

10  League of Women Voters of Arizona; Mi      No. CV-18-02620-PHX-JAT
    Familia Vota Education Fund; and Promise
11  Arizona, on behalf of themselves, their
    members, and all others similarly situated,
12                                                      [PROPOSED]
              Plaintiffs,                       PLAINTIFFS' FINDINGS OF FACT
13                                                AND CONCLUSIONS OF LAW
              vs.
14
    Michele Reagan, in her official capacity as
15  Secretary of State for the State of Arizona,

16            Defendant.

17

18      In accordance with the Court's Order Setting Preliminary Injunction Hearing

19  (8/22/18), Plaintiffs League of Women Voters of Arizona, Mi Familia Vota Education Fund,

20  and Promise Arizona propose the following Findings of Fact and Conclusions of Law:

21      1.    This case concerns the failure by Defendant Michele Reagan, in her official

22  capacity as the Secretary of State for the State of Arizona ("SOS"), to comply with the

23  National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.* Pending before the

24  Court are Plaintiffs' Complaint (8/18/18) ("Complaint") and Motion for Preliminary

25  Injunction (8/18/18) ("Motion").

26      2.    As Plaintiffs more fully set forth in their Motion, the SOS is violating Section

27  5(d) of the NVRA, 52 U.S.C. § 20504.  Section 5(d) governs how the state must deal with

28  changes of address, so as to ensure that voter registration records of registered voters are kept

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1   up to date, promoting the accuracy of the voter rolls and preventing disenfranchisement of

2   eligible voters. *Id.* Contrary to the express statutory requirement, 52 U.S.C. § 20504(d), the

3   SOS does not automatically update a voter's registration address when the voter reports a

4   change of address to the Arizona Department of Transportation ("ADOT") or its Motor

5   Vehicle Division ("MVD") (collectively, "ADOT/MVD").   When a change of address

6   reported to ADOT/MVD is reflected only in a voter's driver record, and not in their voter

7   registration record, the consequences can include the rejection of provisional ballots cast by

8   this voter at the polling location for the non-updated voter registration address and the non-

9   receipt of an Early Ballot.  To remedy these consequences in advance of the November 6,

10  2018 general election, Plaintiffs have applied to this Court for preliminary relief.

11          3.      In response, Defendant asserts that Plaintiffs' claim amounts to a "technical

12  violation" of the NVRA and that Plaintiffs do not meet their burden of showing that the harm

13  this violation causes outweighs the burdens their suggested relief would impose on

14  Defendant as well as Arizona's county recorders.  Specifically, Defendant asserts that the

15  relief Plaintiffs seek is "unduly burdensome" on the basis of cost, will result in confusion

16  among what Defendant contends is a "small" number of affected voters, and is unlikely to

17  remedy the "technical violation."

18          4.      In the Motion and the Reply in Support of Plaintiffs' Motion for Preliminary

19  Injunction (9/6/18) ("Reply"), Plaintiffs maintain that, despite Defendant's admitted ongoing

20  violations of federal law, she refuses to do anything before the federal election on November

21  6, 2018 to remedy the harm her failures are causing Plaintiffs and Arizona voters.  Further,

22  Plaintiffs argue that the SOS fails to establish that any preliminary injunction factors weigh

23  in her favor.  Accordingly, to remedy the ongoing violations, Plaintiffs seek a preliminary

24  injunction requiring the SOS to:   (a) instruct county recorders to count out of precinct

25  ("OOP") provisional ballots cast by affected voters, and to provide appropriate poll worker

26  training; and (b) mail a notice to individuals who changed their address with ADOT/MVD

27  since the last federal election.

28          5.      The Court held a hearing on September 12, 2018.

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

6.    Pursuant to the hearing, the Court hereby finds and concludes as follows:

## FINDINGS OF FACT

### Background

7.    In passing the NVRA, Congress found:   (1) a citizen's right to vote is a fundamental right; (2) the state, local, and federal governments have a duty to promote the exercise of that right; and (3) "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a).

8.    According to Congress, the purposes of the NVRA are:

(1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b).

9.    Section 5 of the NVRA, 52 U.S.C. § 20504 ("Section 5"), provides that certain voter registration services must be provided during all motor vehicle driver's licenses initial application, any renewal application, or change of applicant's address (each a "Covered Transaction"). 52 U.S.C. § 20504(a)(1).

10.    As used in the NVRA, "the term 'motor vehicle driver's license' includes any personal identification document issued by a State motor vehicle authority."   52 U.S.C. § 20502(3).   For simplicity here, these personal identification documents will be referred to collectively as a "Driver's License."

11.    Section 5(d) requires that "[a]ny change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of address is not for voter registration purposes." 52 U.S.C. § 20504(d).   In other words, a

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

change of address for a Driver's License shall serve as a change of address for voter registration *unless* the applicant "opts out."

12.   A State's motor vehicle authority is responsible for transmitting voter registration information resulting from each Covered Transaction to the appropriate State election official "not later than 10 days after the date of acceptance," and if the application is accepted within 5 days before the last day of voter registration, "not later than 5 days after the date of acceptance." 52 U.S.C. § 20504(e)(1)-(2).

13.   The NVRA requires that each State "send notice to each applicant of the disposition" of each application." 52 U.S.C. § 20507(a)(2).

14.   The NVRA requires that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA. 52 U.S.C. § 20509.

15.   Defendant, as Secretary of State for the State of Arizona, is Arizona's chief election officer (A.R.S. § 16-142) and therefore the state official charged with coordinating the responsibilities of the State under the NVRA, including taking all possible steps to ensure compliance with the statute. 52 U.S.C. §§ 20504, 20509; A.R.S § 16-112(B).

16.   ADOT/MVD is Arizona's motor vehicle authority within the meaning of the NVRA. 52 U.S.C. §§ 20502(3), 20504; A.R.S. §§ 16-112(B), 16-142.

### Defendant's Violations of the NVRA During Change of Address Transactions

**A.   In-Person Transactions.**

17.   A client who wishes to apply in person for an Arizona Driver's License must complete the ADOT Driver License/Identification Card Application.   [Complaint, ¶ 39; Declaration of Counsel in Support of Plaintiffs' Application for an Order to Show Cause Why a Preliminary Injunction Should Not Be Entered (8/18/18) ("Motion Counsel Decl."), Ex. C]   A client possessing an Arizona Driver's License who wants to report a change of address in person may do so by completing either the ADOT Driver License/Identification Card Application or the ADOT Duplicate/Credential Update Application (together, the

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1    "Forms"). [Complaint, ¶ 40; Motion Counsel Decl., Ex. E]  In either case, the client must

2    provide a residential address. [Motion Counsel Decl., Exs. C-E]

3        18.    The Forms contain a question asking clients if they would like to register to

4    vote or update an existing voter registration ("Voter Preference Question"), with boxes

5    marked "Yes" and "No." [*Id.*]

6        19.    ADOT/MVD regularly provides to Defendant all of the address-update

7    information it has collected from clients in the form of a delimited text file. [Complaint,

8    ¶ 35; Motion Counsel Decl., Ex. B at 2, 5]

9        **B.    Remote Transactions.**

10       20.    Individuals can also submit an address change to ADOT/MVD through

11   ADOT/MVD's Service Arizona website, https://servicearizona.com/ ("Service AZ"). [*See*

12   Complaint, ¶¶ 41-42]

13       21.    When an individual submits a change of address to ADOT/MVD through

14   Service AZ, ADOT/MVD transmits the information to Defendant. [Complaint, ¶¶ 35-36;

15   Motion Counsel Decl., Ex. B at 2]

16       22.    After the individual submits a change of address to ADOT/MVD through

17   Service AZ, a link appears which, if followed, leads to a separate voter registration page.  In

18   order to update the voter registration address, the individual must click on this link, and fill

19   out a new voter registration form.  The individual must perform this additional step—filling

20   out a new voter registration form and once again providing the address information just

21   provided to ADOT/MVD.  The effect of this requirement is that an individual must "opt in"

22   to have their voter registration address updated.  [Complaint, ¶ 42; Motion Counsel Decl.,

23   Ex. G]

24                              **SOS Failures**

25       23.    Defendant does not currently use the address-update information provided by

26   ADOT/MVD to automatically update the voter registration address of individuals who are

27   registered voters, unless the individual has selected "Yes" in response to the Voter

28   Preference Question—meaning clients who "opt in." [Complaint, ¶¶ 36-37; Motion Counsel

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

Decl., Ex. F]

24.    Defendant similarly fails to automatically update the voter registration addresses of individuals who submit an address change through Service AZ.  [Complaint, ¶¶ 41-42; Motion Counsel Decl., Ex. F]

**Impact of Defendant's Failure to Update Voter Registration Addresses**

25.    Under Arizona law, if a voter has changed residence, they are required to vote in the polling location associated with their new address.  A.R.S. §§ 16-122, 16-135, 16-584(C).

26.    A voter who moves and whose voter registration address information is not updated before the last day of voter registration must cast a provisional ballot.  *See* A.R.S. §§ 16-135(B), 16-584(B).

27.    If a voter's new residential address is within the same Arizona county as the old address, the voter's provisional ballot will be counted only if the voter casts their ballot at the polling location corresponding to their new residential address.  A provisional ballot cast at the polling location corresponding to a voter's old residential address (called an "out-of-precinct" ballot) will not be counted, for  local, state, or federal races.  *See* A.R.S. §§ 16-135(D), 16-584(D).

28.    If a voter moves from one county to another within Arizona and does not have an updated voter registration address that corresponds to their new residential address, their provisional ballot will not be counted at all—that provisional ballot will be discarded whether cast in the voter's old or new precinct.  *See* A.R.S. §§ 16-584(E).

29.    Because Defendant does not update address information, voters are not notified by mail of the location of the polling place that corresponds to their new address.  *See* 52 U.S.C. § 20507(a)(2).

30.    In addition, because Defendant does not update address information, affected voters who are enrolled in the Permanent Early Voting List ("PEVL") will not receive their Early Ballot via mail at their correct address.  These ballots are sent by non-forwardable mail and so, if sent to an incorrect address, will be returned to the election official.  *See*

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1   *Democratic Nat'l Comm. v. Reagan*, No. CV-16-01065-PHX-DLR, 2018 WL 2191664, at

2   *22 (D. Ariz. May 10, 2018).

3       31.   Voters whose addresses have not been updated because of Defendant's failure

4   to comply with the NVRA will not receive their Early Ballot or will face additional burdens

5   locating the correct polling location, and some of these voters will be completely

6   disenfranchised.

7       32.   Defendant has publicly stated that more than 500,000 Arizonans have been

8   affected by her NVRA violations relating to in-person and online change of address

9   transactions. [Motion Counsel Decl., Ex. F at 2]

10                              **Notice Letter**

11       33.   Plaintiffs sent a letter to Defendant dated November 14, 2017, notifying her

12   that she, along with the Arizona Department of Economic Security ("DES"), the Arizona

13   Health Care Cost Containment System ("AHCCCS," and together with DES, the

14   "Agencies"), and ADOT/MVD, was in violation of several provisions of the NVRA (the

15   "Notice Letter"). [*Id.*, Ex. A; *see also* 52 U.S.C. § 20510(b)(1)] The Notice Letter informed

16   Defendant that voters who updated the address associated with their driver license using

17   ADOT/MVD's change-of-address processes were not being provided with the voter

18   registration services required under the NVRA. [*Id.*]

19       34.   The 90-day period provided by the NVRA for the Defendant to remedy the

20   violations prior to facing suit expired on February 12, 2018—more than six months ago.

21   [*Id.*; 52 U.S.C. § 20510(b)(2)]

22       35.   Defendant has yet to cure the violations alleged in the Notice Letter. [Motion

23   Counsel Decl., Ex. F]

24             **Plaintiffs' Memorandum of Understanding with ADOT/MVD**

25       36.   On August 14, 2018, Plaintiffs executed an Interim Memorandum of

26   Understanding ("MOU") with ADOT/MVD and the Agencies. [*Id.*, Ex. B]

27       37.   ADOT/MVD has agreed to make necessary changes to the Forms and related

28   procedures in order to comply with the NVRA, including providing an "opt-out" checkbox to

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1    allow an ADOT/MVD client to choose that their driver's license address change not be

2    applied to their voter registration.  ADOT/MVD's prospective changes will provide relief

3    only for voters who engage in Covered Transactions in the future and only if Defendant

4    changes her procedure for processing change-of-address information.

5        38.    ADOT/MVD has also agreed to provide any data necessary to allow Defendant

6    to comply with any order of this Court to enable the affected voters—those who reported a

7    change of address during a Covered Transaction either online or in person since November

8    9, 2016—to participate in the November 6, 2018 federal election.  [Motion Counsel Decl.,

9    Ex. B at 5]

10                          **November 6, 2018 Election**

11       39.    The 2018 General Election is a federal election and will take place on

12   November   6,   2018.    [https://azsos.gov/elections/elections-calendar-upcoming-events;

13   https://apps.arizona.vote/electioninfo/elections/2018-general-election/federal/1350/4/0]

14       40.    The voter registration deadline in Arizona for the 2018 General Election is

15   October 9, 2018. [https://azsos.gov/elections/elections-calendar-upcoming-events]

16       41.    Early Ballots will be mailed to voters on October 10, 2018. [*Id.*]

17                                **Plaintiffs**

18   **A.     League Of Women Voters Of Arizona.**

19       42.    The League of Women Voters of Arizona (the "League") is a non-profit

20   organization that encourages informed and active participation in the democratic process.

21   The League has five chapters in Arizona and approximately 850 members.  [Motion, Ex. 1,

22   ¶ 3]

23       43.    The League offers a variety of voter education programs to its members and

24   the public on a range of issues, including producing a voter guide to inform voters about

25   Arizona ballot measures and hosting candidate forums for races. [*Id.*, ¶ 5]

26       44.    The League also encourages voter registration among all eligible individuals

27   by conducting voter registration drives, including drives targeted at low-income individuals

28   who more frequently move and change addresses. [*Id.*, ¶¶ 7, 9]

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

45.     In addition to registering new voters, these voter registration drives also include efforts to assist voters with updating their voter registration address. [*Id.*, ¶ 10]

46.     The League is diverting resources away from the other election-related activities critical to its mission as a result of the Defendant's failure to comply with the NVRA. [*Id.*, ¶¶ 10-11, 13-15]

47.     The League has at least one member who has updated her Driver's License address with ADOT/MVD and has been harmed by Defendant's failure to update her address for voting purposes.  The League also has members who are at risk of being harmed by Defendant's NVRA violations when they move in the future. [*Id.*, ¶ 12]

48.     Paul Wade is a member of the League.  He updated his Driver's License address online through Service AZ.  Defendant subsequently failed to automatically update his voter registration address and Mr. Wade had to again access Service AZ and re-enter the information he had previously provided to ADOT/MVD in order to update his voter registration address. [Reply, Ex. A, ¶¶ 4-8]

49.     Khalil Rushdan is a member of the League.  He updated his Driver's License address in person with ADOT/MVD.  Defendant subsequently failed to automatically update his voter registration address. [*Id.*, Ex. B, ¶¶ 4-8]

50.     Cindy Hans is a board member of the League and the state liaison for the League of Women Voters of Metro Phoenix.  She updated her Driver's License address online through Service AZ.  Defendant failed to automatically update her voter registration address and Ms. Hans had to access the Service AZ and re-enter the information she had previously provided to ADOT/MVD in order to update her voter registration address. [Joint Prehearing Statement at 7 (Ex. 13)]

**B.     Mi Familia Vota Education Fund.**

51.     Mi Familia Vota Education Fund ("Mi Familia Vota") is a national non-profit organization working to unite the Latino community and its allies to promote social and economic justice through increased civic participation.  Mi Familia Vota has approximately 6,000 members in Arizona. [Motion, Ex. 2, ¶ 3]

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

52.    Mi Familia Vota engages in large-scale voter registration campaigns focused on individuals aged 18 to 30 in Arizona—especially in counties with large Latino populations. Mi Familia Vota also expects to engage in online, email, social media, and mail campaigns, and expects to spend between $500,000 and $1 million on voter registration programs in Arizona in 2018. [*Id.*, ¶¶ 7, 11]

53.    In addition to registering new voters, these voter registration drives also include efforts to assist voters with updating their voter registration address.   The organization will also spend time and resources on a text messaging campaign to assist voters with updating their voter registration records, including address changes. [*Id.*, ¶¶ 10-11]

54.    Mi Familia Vota is diverting resources away from the other election related activities critical to its mission as a result of Defendant's violation of the NVRA. [*Id.*, ¶¶ 12-14]

55.    Mi Familia Vota has at least one member who has updated her Driver's License address with ADOT/MVD and has been harmed by Defendant's failure to update her residence address for voting purposes. Mi Familia also has members who are at risk of being harmed by Defendant's NVRA violations when they move in the future. [*Id.*, ¶ 13]

**C.    Promise Arizona.**

56.    Promise Arizona ("Promise Arizona") is an organization seeking to positively impact Latino and immigrant communities by building leaders, encouraging sustained civic participation, and engaging with the political process for positive change. It primarily targets underserved, low-income, and Latino populations. Promise Arizona has approximately 1,000 members, 1,500 volunteers, and six employees. [*Id.*, Ex. 3, ¶¶ 3-4, 8]

57.    Promise Arizona focuses heavily on voter registration, and has a history of registering large numbers of voters each year. Promise Arizona also conducts other voter education programs, and incorporates voter registration into those programs. [*Id.*, ¶¶ 7-9]

58.    Two of Promise Arizona's six employees work on voter registration activities full time. In preparation for the 2018 election, Promise Arizona plans to increase its voter

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1   registration and engagement activities and to hire additional employees. [*Id.*, ¶ 4]

2   59.   In addition to registering new voters, these voter registration drives also

3   include efforts to assist voters with updating their voter registration address. [*Id.*, ¶ 11]

4   60.   Promise Arizona has at least one member who has updated her Driver's

5   License address with ADOT/MVD and has been harmed by Defendant's failure to update

6   her residence address for voting purposes. Promise Arizona also has members who are at

7   risk of being harmed by Defendant's NVRA violations when they move in the future. [*Id.*,

8   ¶ 13]

9                     **CONCLUSIONS OF LAW AND ANALYSIS**

10                          **Jurisdiction and Venue**

11  61.   The Court has jurisdiction over the subject matter of this action pursuant to 28

12  U.S.C. §§ 1331, 1343; 52 U.S.C. § 20510(b)(2).

13  62.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2)

14  because a substantial part of the events giving rise to the claim occurred in this district.

15  63.   The Court has personal jurisdiction over Defendant because "she is sued in her

16  official capacity as an elected official of Arizona in which she resides." *Arizona Democratic*

17  *Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427, at *5 (D. Ariz. Nov. 3,

18  2016).

19  64.   This Court has jurisdiction to grant both declaratory and injunctive relief under

20  28 U.S.C. §§ 2201, 2202; 52 U.S.C. § 20510(b)(2); Fed. R. Civ. P. 65.

21                          **Plaintiffs Have Standing**

22  65.   A plaintiff has Article III standing if: "(1) he or she has suffered a concrete

23  and particularized injury to a cognizable interest, (2) which is fairly traceable to the

24  challenged action of the defendant, and (3) which likely can be redressed by a favorable

25  decision." *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1039 (9th Cir. 2015)

26  (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)).

27  66.   All three Plaintiffs have established standing because they have suffered

28  injuries that are cognizable, traceable to the defendants, and able to be redressed if injunctive

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

11

1  relief is entered by this Court.

2       67.    The Court may consider declarations in its evaluation of a motion for

3  preliminary injunction. *Best W. Int'l, Inc. v. Patel*, 523 F. Supp. 2d 979, 985, 991-92 (D.

4  Ariz. 2007) (granting request for preliminary injunction that was supported in part by

5  declarations).

6      **A.   Organizational Standing.**

7       68.    Plaintiffs have established that their respective organizations have been forced

8  to divert substantial resources away from other aspects of their organizational purpose to

9  address Defendant's failure to automatically update voter registrations as required under

10  Section 5.

11       69.    This "diversion-of-resources" injury is sufficient to establish organizational

12  standing. *See, e.g., La Raza*, 800 F.3d at 1032, 1040 ("Such concrete and demonstrable

13  injury to the organization's activities—with the consequent drain on the organization's

14  resources—constitutes far more than simply a setback to the organization's abstract social

15  interests . . . .") (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see*

16  *also Havens*, 455 U.S. at 379 (noting that where defendant's conduct causes an organization

17  to drain resources from its other priorities "there can be no question that the organization has

18  suffered injury in fact"); *see also Georgia State Conference of NAACP v. Kemp*, 841 F.

19  Supp. 2d 1320, 1336 (N.D. Ga. 2012) (plaintiff's allegations that it expended resources—

20  which it would have used on other projects—to register voters who should have been

21  registered by the state "plainly satisfy the injury prong of the Article III test for standing").

22       70.    Plaintiffs have shown that their diversion of resources is attributable to

23  Defendant. *See Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1341-42 (11th Cir. 2014)

24  (finding organizational standing when organizational plaintiffs "submitted affidavits showing

25  . . . they had diverted resources to address" challenged election law); *National Coal. for*

26  *Students with Disabilities Educ. & Legal Def. Fund v. Scales*, 150 F. Supp. 2d 845, 850 (D.

27  Md. 2001) ("the allegations that the [defendant]'s noncompliance frustrates these goals and

28  requires the organization to expend resources in facilitating the registration of disabled

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1    persons that they otherwise would spend in other ways is sufficient to show an actual or

2    threatened injury in fact that is fairly traceable to the alleged illegal action and is likely to be

3    redressed by a favorable court decision ordering injunctive relief")).  *See also Common*

4    *Cause Ind. v. Lawson*, Case No. 1:17-cv-03936-TWP-MPB, 2018 WL 2762552, at *10 (S.D.

5    Ind., June 8, 2018) (Secretary of State "ultimately responsible for the state's compliance with

6    the NVRA," therefore alleged injuries "fairly traceable" to the Defendant).

7         71.    Plaintiffs' injuries can be redressed by a favorable decision.  An injunction

8    ordering relief specifically tailored to correcting past violations will ensure that all registered

9    Arizona voters can participate in the upcoming general election. *See Scales*, 150 F. Supp. 2d

10   at 850.

11        **B.    Associational Standing.**

12        72.    Plaintiffs have established associational standing by demonstrating that:

13   (1) their members would otherwise have standing to sue in their own right; (2) the interests

14   they seek to protect are germane to the organization's purpose; and (3) neither the claim

15   asserted nor the relief requested requires the participation of individual members in the

16   lawsuit.  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)

17   (affirming grant of requested injunctive relief).

18        73.    Organizations need not identify a member by name to have standing. "[W]here

19   it is relatively clear, rather than merely speculative, that one or more members have been or

20   will be adversely affected by a defendant's action, and where the defendant need not know

21   the identity of a particular member to understand and respond to an organization's claim of

22   injury, we see no purpose to be served by requiring an organization to identify by name the

23   member or members injured." *La Raza*, 800 F.3d at 1041.

24        74.    In a case in which an organization seeks an injunction, "it can reasonably be

25   supposed that the remedy, if granted, will inure to the benefit of those members of the

26   association actually injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975).

27        75.    "Any burden on the right to vote" constitutes an injury. *See Common Cause of*

28   *Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1271 (D. Colo. 2010); *Charles H. Wesley Educ.*

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

13

1  *Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) (stating that a plaintiff "need not

2  have the franchise wholly denied to suffer injury"). Even where the "only obstacle to [ ]

3  voting" is filing out an additional form, "any additional barrier to voting imposed" that

4  "would have been unnecessary had [the defendant] followed the law, satisfies any

5  requirement of a concrete injury." *Association of Cmty. Org. for Reform Now v. Scott*, No.

6  08-CV-4084-NKL, 2008 WL 2787931, at *7 (W.D. Mo. July 15, 2008).

7      76.     Here, Plaintiffs' members have conducted or plan to conduct change-of-

8  address transactions through ADOT/MVD. Because of Defendant's failure to use the

9  information from these transactions to automatically update voter registration addresses,

10  Plaintiffs' members must take separate and additional steps to ensure that: (1) their names

11  appear on the voter roll at the correct precinct on Election Day so that they can cast a regular

12  ballot at a polling place; or (2) receive an Early Ballot at their correct address so that they

13  can vote by mail.

14      77.     Because these injuries are germane to the Plaintiffs' purposes, and Plaintiffs'

15  individual members need not be party to this suit in order to have these injuries effectively

16  addressed, Plaintiffs have associational standing.

17                    **Plaintiffs are Entitled to Injunctive Relief**

18      78.     This Court states that the test for a preliminary injunction is as follows:

19      In order to obtain a preliminary injunction, a movant must show that (1) [they
        are] likely to succeed on the merits, (2) [they are] likely to suffer irreparable
20      harm in the absence of preliminary relief, (3) the balance of equities tips in
        their favor, and (4) an injunction is in the public interest. The Ninth Circuit,
21      employing a sliding scale analysis, has also stated serious questions going to
        the merits and a hardship balance that tips sharply toward the [movant] can
22      support issuance of an injunction, assuming the other two elements of the
        *Winter* [balancing] test are also met.

23

24  *E*Trade Fin. Corp. v. Eaton*, 305 F. Supp. 3d 1029, 1031 (D. Ariz. 2018) (citations and

25  quotations omitted).

26      **A.     Plaintiffs Are Likely To Succeed On The Merits.**

27      79.     Plaintiffs' allegations demonstrate a high likelihood of success on the merits.

28  Section 5 of the NVRA clearly requires that a voter's registration address be automatically

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1  updated whenever a voter reports a change of address to a motor vehicle agency unless the

2  individual affirmatively chooses to "opt out."  52 U.S.C. § 20504(d).  A plain reading of

3  Section 5 is all that is required to conclude that Plaintiffs stand to prevail on the merits.

4      80.    There is "no language in the NVRA to suggest that *substantial compliance*

5  *with the Act is sufficient.*"  *Action NC v. Strach*, 216 F. Supp. 3d 597, 638 (M.D.N.C. 2016)

6  (citations and quotations omitted) (emphasis added).

7      81.    Moreover, Defendant does not dispute that she is in violation of the NVRA.

8  [*E.g.*, Response to Plaintiffs' Application to Show Cause (Motion for Preliminary Injunction,

9  Doc. 5) (8/31/18) ("Opposition") at 4 ("for purposes of this litigation the Secretary of State is

10  willing to accept the Plaintiffs' position"); *id.* (conceding Defendant "is willing to accept"

11  Plaintiffs' position)]  Instead, Defendant only attempts to justify her failures to comply with

12  the NVRA. Accordingly, Plaintiffs are very likely to prevail on the merits.

13      **B.**    **Plaintiffs Suffer Irreparable Harm.**

14      82.    Absent injunctive relief, Plaintiffs' members, together with thousands of

15  Arizona voters, will suffer the irreparable harm of the risk of disenfranchisement in the

16  upcoming federal elections.

17      83.    An injury is irreparable when "it cannot be undone through monetary

18  remedies." *Scott*, 2008 WL 2787931, at *7.

19      84.    Courts have regularly determined that violating a person's right to vote is an

20  irreparable harm with no adequate remedy at law because an individual cannot vote after an

21  election has concluded. *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014) ("There is no right

22  more basic in our democracy than the right to participate in electing our political leaders");

23  *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("The right to vote freely for the candidate of

24  one's choice is of the essence of a democratic society, and any restrictions on that right strike

25  at the heart of representative government"); *League of Women Voters of U.S. v. Newby*, 838

26  F.3d 1, 9 (D.C. Cir. 2016) (violation of NVRA is an irreparable harm); *League of Women*

27  *Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[c]ourts routinely

28  deem restrictions on fundamental voting rights irreparable injury"); *Obama for Am. v.*

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1   *Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (affirming district court's order granting

2   preliminary injunction and explaining that when "constitutional rights are threatened or

3   impaired, irreparable injury is presumed); *Williams v. Salerno,* 792 F.2d 323, 326 (2d Cir.

4   1986) (finding that the denial of the right to vote is "irreparable harm").

5       85.   Courts routinely recognize that organizations suffer irreparable harm when a

6   defendant's conduct causes them to lose opportunities to conduct election-related activities,

7   such as registering new voters registration and providing voter education. *See, e.g., Action*

8   *NC*, 216 F. Supp. 3d at 642–43 (finding irreparable harm where "Organizational Plaintiffs

9   continue to divert resources to voter registration, sacrificing other voter mobilization and

10  voter education efforts"); *North Carolina State Conf. of the NAACP v. North Carolina State*

11  *Bd. of Elections*, 1:16-CV-1274, 2016 WL 6581284, at *9 (M.D.N.C. Nov. 4, 2016) (finding

12  irreparable harm when NAACP had to "divert its finite and limited resources away from its

13  planned voter-protection and education efforts"); *League of Women Voters of Fla. v.*

14  *Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012) (holding that the plaintiffs' lost

15  "opportunity to register [ ] voter[s]" is irreparable harm).

16      86.   Plaintiffs have had to divert resources away from other organizational

17  priorities—such as registering new voters, educating voters about candidates and ballot

18  initiatives, and engaging in Get-Out-The-Vote efforts—to try to close the registration gap

19  created by Defendant's failure to update the voter registrations of their members and the

20  people that they serve.

21      87.   Plaintiffs' affected members and other Arizona voters will suffer irreparable

22  harm because if their address has not been updated and they cast a provisional ballot

23  determined to be OOP, it will not be counted for any race. *See* A.R.S. §§ 16-122, 16-135,

24  16-584.

25      88.   Ballots cast by Plaintiffs' members and other Arizona voters who have moved

26  to a new county but have not had their address updated will not be counted at all. *See* A.R.S.

27  §§ 16-122, 16-135, 16-584.

28      89.   Plaintiffs' members and other Arizona voters who have not had their address

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1  updated will not be notified of the location of their new polling place as required by the

2  NVRA. *See* 52 U.S.C. § 20507(a)(2).

3      90.    Plaintiffs' members and other Arizona voters who have signed up for PEVL

4  and who have not had their address updated will not receive their Early Ballot via mail. *See*

5  *Democratic Nat'l Comm. v. Reagan*, No. CV-16-01065-PHX-DLR, 2018 WL 2191664, at

6  *22 (D. Ariz. May 10, 2018).

7      91.    "[N]o monetary award can remedy the fact that [a voter] will not be permitted

8  to vote in the precinct of her new residence." *Charles H. Wesley Educ. Found. Inc. v. Cox,*

9  324 F. Supp. 2d 1358, 1368 (N.D. Ga. 2004); *see also Fish v. Kobach*, 840 F.3d 710, 752

10 (10th Cir. 2016) ("[T]he right to vote is a constitutionally protected fundamental right.

11 When an alleged constitutional right is involved, most courts hold that no further showing of

12 irreparable injury is necessary") (citations and quotations omitted).

13     92.    Because Plaintiffs' injuries cannot be remedied by monetary damages after the

14 election, the Court holds that Plaintiffs have suffered irreparable harm.

**C.    The Harm Plaintiffs Will Experience In The Absence Of Preliminary Relief Outweighs Any Burden To Defendant.**

17     93.    Plaintiffs request that Defendant be required to:  (a) instruct county recorders

18 to count OOP provisional ballots cast by affected voters, together with appropriate poll

19 worker training; and (b) mail a notice to individuals who changed their address with

20 ADOT/MVD since the last federal election.

21     94.    Implementation of this requested relief is hardly a burden to Defendant.

**i.      Provisional Ballot Counting.**

23     95.    Plaintiffs first request that county recorders count provisional ballots by

24 eligible voters who reported a change to their address during a Covered Transaction with

25 ADOT/MVD since November 9, 2016, even if that ballot is cast out of precinct.  Plaintiffs

26 request that the Court order Defendant to instruct County Recorders to count those votes for

27 all federal races a voter would have been eligible to participate in if the voter had voted in

28 the precinct corresponding to their new residential address, together with appropriate poll

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1  worker training.

2      96.    Plaintiffs' requested remedy does not require Defendant to adopt a new

3  election procedure. *See DNC*, 2018 WL 2191664, at *25.

4      97.    Defendant contends that the counting of OOP ballots will be significant and

5  time consuming, involving several steps. [Opposition at 14]

6      98.    There is no evidence in the record that the burden Defendant and County

7  Recorders may face in training election officials about how to process provisional ballots

8  pursuant to the relief required herein is significant.

9      99.    Election officials will be employing the same process to count OOP ballots of

10  affected voters that they already use for ballots that cannot be read by an optical scan

11  machine. *DNC*, 2018 WL 2191664, at *25. Thus, election officials already have experience

12  with the requested relief.

13      100.    Courts have regularly implemented similar provisional ballot relief on a much

14  tighter timeline, even within weeks of an election. *See Action NC*, 216 F. Supp. 3d at 647

15  (ordering relief on October 27 for the November 8 election requiring the counting of

16  provisional ballots that would be rejected under state law and recognizing that the relief was

17  not overly burdensome because an injunction would have "little, if any, impact on their

18  current process of verifying provisional ballots" because "county boards of elections already

19  verify every provisional ballot cast"); *Ohio A. Phillip Randolph Inst. v. Husted*, Case No.

20  2:16-cv-303, 2016 WL 6093371, at *4 (S.D. Ohio Oct. 19, 2016) (ordering relief on October

21  19 for the November 8 election and recognizing that the relief was not overly burdensome

22  because election boards were "already required to provide any individual who appears to

23  vote and whose name does not appear on the voter registration rolls with a provisional

24  ballot" and "already required to determine whether each person casting a provisional ballot is

25  qualified to vote").

26      101.    The Court finds that Defendant has sufficient authority to implement the

27  requested relief.

28

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

### ii.   Remedial Mailer.

102.   Second, Plaintiffs request that Defendant send a notice to all individuals who have engaged in a Covered Transaction with ADOT/MVD since November 9, 2016.  This notice should (a) advise the individual that their voter registration address may be out of date; explain that if they are on the PEVL they will not receive Early Ballots at the address they reported to ADOT/MVD unless they have taken additional steps to update their voter registration address themselves; (b) explain that if they intend to vote in person they will be required to cast a provisional ballot if their voter registration address is not current; (c) provide instructions for how to verify or correct their voter registration address; (d) provide instructions for finding the correct polling place for their new address; and (e) provide a blank voter registration form.

103.   Defendant's assertion that sending such a mailer so close to an election would be "confusing" to affected voters is unavailing, particularly because voters are already likely to be confused about where they must vote or by having to cast a provisional ballot and because Defendant has been on notice of her violations for more than nine months and has had ample opportunity to correct it.  *See Newby*, 838 F.3d at 14 (reversing district court's denial of preliminary injunction and holding "[a]n agency should not be allowed to claim that the confusion resulting from its own improper action weighs against an injunction against that action").

104.   The Defendant has presented no actual evidence of any confusion that this mailer would cause.

105.   Moreover, Plaintiffs have filed their Motion for Preliminary Injunction nearly three months before the November 2018 General Election.  Courts have ordered defendants to implement relief to remedy violations of federal election law much closer to an impending election.  *See, e.g., Action NC*, 216 F. Supp. 3d at 647 (ordering relief on October 27 for the November 8 election); *Husted*, 2016 WL 6093371, at *4 (ordering relief on October 19 for the November 8 election); *United States v. Berks Cty., Pa.*, 250 F. Supp. 2d 525, 542-43 (E.D. Pa. 2003) (ordering injunction two months in advance of election); *Harris v. Graddick*,

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1   593 F. Supp. 128, 138 (M.D. Ala. 1984) (18 days prior to election); *Arroyo v. Tucker*, 372 F.

2   Supp. 764, 765 (E.D. Pa. 1974) (24 days prior to election); *Puerto Rican Org. For Political*

3   *Action v. Kusper,* 350 F. Supp. 606, 608 (N.D. Ill. 1972) (eight days prior to election); *see*

4   *also Chinese for Affirmative Action v. Leguennec,* 580 F.2d 1006, 1008 (9th Cir. 1978)

5   ("shortage of time will not necessarily shield election officials from the diligent assertion of

6   rights [under federal election law]"); *see also Fish v. Kobach*, 189 F. Supp. 3d 1107, 1124,

7   1152 (D. Kan. 2016) (granting preliminary injunction in NVRA case less than three months

8   before election).

9      106.    Courts have also regularly ordered similar relief to that requested by Plaintiffs

10   to protect the rights of voters after states did not provide the required voter registration

11   services under the NVRA.  *See Scott*, 2008 WL 2787931, at *8 (ordering public assistance

12   agency to contact any client it learned was not offered voter registration services and offer to

13   register that client to vote); *National Coal. for Students with Disabilities v. Taft*, No. 2:00-

14   CV-1300, 2002 WL 31409443, at *7 (S.D. Ohio Aug. 2, 2002) (ordering the Secretary of

15   State to provide a notification to individuals affected by the NVRA violation).

16      107.    The Agencies have already sent such a mailer to their affected clients.  [Motion

17   Counsel Decl., Ex. B at 2-3]

18      108.    Given the feasibility of such a mailing and the precedent in other similar cases,

19   the Remedial Mailer will constitute only a minor burden on Defendant.  Moreover, any such

20   burden is far outweighed by the countervailing harms to Plaintiffs, their members, and to the

21   more than 500,000 Arizona voters who are at risk of disenfranchisement.

22      **D.    An Injunction Is In The Public Interest.**

23      109.    Plaintiffs' strong likelihood of success on the merits "is a strong indicator that

24   a preliminary injunction would serve the public interest".  *See Newby*, 838 F.3d at 12.  There

25   "is generally no public interest in the perpetuation of unlawful agency action" but there is a

26   "substantial public interest" in having governmental agencies follow federal law.  *Id.*

27      110.    This is particularly true when it comes to the "important area of voter

28   registration" where the public has a particular interest "in seeing that [a state] complies with

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

federal law." *Cox*, 324 F. Supp. 2d at 1369; *see also Browning*, 863 F. Supp. at 1167 (holding that vindicating voting rights and enforcing "a federal statute serve the public interest almost by definition"). Voting is a fundamental Constitutional right that is protected by the First Amendment (*John Doe No. 1 v. Reed*, 561 U.S. 186, 224 (2010)), and "injunctions protecting First Amendment freedoms are always in the public interest." *Common Cause*, 2018 WL 2762552 at \*13 (quotation omitted); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (finding that the public has a "strong interest in exercising the fundamental political right to vote") (citation and quotation omitted).

111. Granting a preliminary injunction will permit more qualified Arizonans to vote by: (a) ensuring that no individual who was denied the right to have their voter registration address automatically updated is disenfranchised in the November General Election; (b) providing hundreds of thousands of Arizonans who reported a change of address to ADOT/MVD since November 2016 with the opportunity to update their voter registration in advance of the General Election; and (c) ensuring that voters either receive their Early Ballot to the correct address or locate the correct polling location to vote in person. The public interest is served by "permitting as many qualified voters to vote as possible" (*Obama for Am.*, 697 F.3d at 437) and "making it easier for citizens to register and vote." *Browning*, 862 F. Supp. 2d at 1167.

112. Third, granting this relief will promote, rather than hinder, the purposes of the NVRA, namely "establish[ing] procedures that will increase the number of eligible citizens who register to vote in elections for Federal office" and "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(1), (4); *see also Indiana State Conference of the NAACP*, 2018 WL 2752564, at \*13 (explaining that the public interest lies in "avoiding barriers to voter registration and increasing the number of eligible citizens registered to vote").

113. In sum, the public interest strongly favors preliminary relief here. The Motion for Preliminary Injunction is granted.

DATED this 6th day of September, 2018.

BRYAN CAVE LEIGHTON PAISNER LLP


By s/ Lawrence G. Scarborough
   Lawrence G. Scarborough
   Jessica R. Maziarz
   Teresa P. Meece
   Julie M. Birk
   Two North Central Avenue, Suite 2100
   Phoenix, Arizona 85004-4406

   Kathy Brody
   Darrell Hill
   AMERICAN CIVIL LIBERTIES UNION OF
   ARIZONA
   P.O. Box 17148
   Phoenix, Arizona 85011-0148

   Sarah Brannon* **
   Ceridwen Cherry*
   AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
   915 15th Street NW
   Washington, DC 20005-2313

   Theresa J. Lee*
   AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
   125 Broad Street
   New York, New York 10004

   Stuart Naifeh
   DEMOS
   80 Broad St, 4th Floor
   New York, New York 10004

   Chiraag Bains* **
   DEMOS
   740 6th Street NW, 2nd Floor
   Washington, DC 20001

   Jon Greenbaum*
   Ezra D. Rosenberg*
   Arusha Gordon*
   LAWYERS' COMMITTEE FOR CIVIL RIGHTS
   UNDER LAW
   1500 K Street NW, Suite 900
   Washington, DC 20005

   * *Pro hac vice* applications forthcoming.
   ** *Not admitted in the District of Columbia;
   practice limited pursuant to D.C. App. R. 49(c)(3).*

Attorneys for Plaintiffs

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

1   Filed electronically with the Court and
    served on parties of record by the Court's
2   CM/ECF system this 6th day of September,
    2018.
3

4    s/ Mary Ann Villa

5

6

7

8   12117741

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryan Cave Leighton Paisner LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000