Exhibit A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into this 2nd day of January 2020 ("Effective Date"), by and between Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona ("AZSOS"), and the Arizona Department of Transportation ("ADOT"), and the League of Women Voters of Arizona, Mi Familia Vota Education Fund, and Promise Arizona (collectively "the Plaintiffs"). AZSOS, ADOT, and the Plaintiffs may be collectively referred to as the "Parties," and each separately as a "Party." In consideration of the agreements and covenants set forth herein, for good and valuable consideration, the sufficiency of which is acknowledged hereby, the Parties agree as follows:

## ARTICLE 1 - RECITALS

1.1    The League of Women Voters of Arizona is a non-partisan political organization that encourages informed and active participation in the democratic process. The League of Women Voters of Arizona works to increase civic participation and education, and advocates for policies in the public interest.

1.2    Mi Familia Vota Education Fund is a national non-profit organization working to unite the Latino community and its allies to promote social and economic justice through increased civic participation.

1.3    Promise Arizona is a non-partisan, faith-based organization that seeks to positively impact Latino and immigrant communities by building leaders, encouraging sustained civic participation, and engaging with the political process for positive change.

1.4    Katie Hobbs is the Secretary of State for the State of Arizona, and chief election officer of Arizona. As Arizona's chief election officer, she is responsible for coordinating the State's responsibilities under the National Voter Registration Act ("NVRA"). *See* 52 U.S.C. § 20509; A.R.S. § 16-142.

1.5    ADOT is an agency of the State of Arizona established pursuant to A.R.S. § 28-331(A). ADOT's statutory responsibilities include registering motor vehicles, licensing drivers, and designing and constructing transportation facilities. A.R.S. § 28-332(B). Pursuant to A.R.S. § 28-332(C)(1), the Arizona Motor Vehicle Division (the "AZMVD") is a division of ADOT. Among other things, AZMVD is responsible for the issuance of Motor Vehicle Driver's Licenses in Arizona. *See* Ariz. Admin. Code R17-4-401, *et seq.* As the agency responsible for issuing driver's licenses and non-driver identification cards, ADOT must provide the voter registration services required by Section 5 of the NVRA. 52 U.S.C. § 20504.

1.6    On November 14, 2017, the Plaintiffs sent AZSOS and ADOT a Notice Letter asserting noncompliance with the National Voter Registration Act ("NVRA"), 52 U.S.C. § 201501 *et seq.*, commonly referred to as the "Motor Voter" law, and more specifically Section 5 of the NVRA, 52 U.S.C. § 20504 ("Section 5").

1.7    On August 18, 2018, the Plaintiffs filed a lawsuit in the United States District Court, District of Arizona against AZSOS, captioned *League of Women Voters of Arizona; Mi*

*Familia Vota Education Fund; and Promise Arizona, on behalf of themselves, their members, and all others similarly situated vs. Michele Reagan, in her official capacity as Secretary of State for the State of Arizona,* Case Number: 2:18-cv-02620-JAT, which seeks declaratory and injunctive relief (the "Action").

1.8   ADOT is not a party to the Action and disputes Plaintiffs' allegation that it is noncompliant with the NVRA.

1.9   The Plaintiffs' claims against AZSOS in the Action and the claims against ADOT asserted in the Notice Letter are related and therefore the Parties seek to resolve them together in this Agreement to avoid the uncertainty, burden, and expense associated with the Action or future litigation.

## ARTICLE 2 - DEFINITIONS

For purposes of this Agreement only, the bolded terms defined within this Article are applicable through the entire Agreement.

2.1   **ADOT Websites.** "ADOT Websites" means ADOT's internet applications through which a Customer creates an account and may register to vote or conduct Motor Vehicle Driver's License transactions.

2.2   **AZMVD Office.** "AZMVD Office" means any AZMVD location in which an individual may conduct an In-Person Transaction. This includes offices operated either by AZMVD or by contractors.

2.3   **Covered Transaction.** "Covered Transaction" means any application for a Motor Vehicle Driver's License, replacement or renewal of a Motor Vehicle Driver's License, or change of address regarding a Motor Vehicle Driver's License.

2.4   **Customer.** "Customer" means any individual who interacts with ADOT with respect to a Covered Transaction.

2.5   **Driver's License/Identification Card Application.** "Driver's License/Identification Card Application" means the form issued by AZMVD for Customers to apply for a new Motor Vehicle Driver's License or to report a change of address.

2.6   **In-Person Transaction.** "In-Person Transaction" means any Covered Transaction that is conducted in an AZMVD Office.

2.7   **Motor Vehicle Driver's License.** "Motor Vehicle Driver's License" means any personal identification document issued by ADOT, as defined in the NVRA, § 52 USC 20502(3).

2.8   **Remote Transaction.** "Remote Transaction" means a Covered Transaction that is not an In-Person Transaction, including Covered Transactions conducted by mail, telephone, internet or other means.

2

## ARTICLE 3 - SETTLEMENT TERMS

### IN-PERSON CHANGE OF ADDRESS AT AZMVD OFFICES

3.1     All transactions for the purpose of changing an address on a Motor Vehicle Driver's License shall serve to update the Customer's voter registration record or register the Customer to vote unless the Customer indicates that the information should not be used for voter registration purposes.

3.2     ADOT shall upgrade its computer database ("ADOT Database" or "MAX") to allow for electronic transmission to the AZSOS of complete voter registration information, including change of address information, from Covered Transactions conducted in-person pursuant to the terms of this Agreement. The Parties understand and acknowledge that ADOT is currently undertaking such upgrades and expects them to be completed by January 31, 2020.

3.3     When an individual reports a change of address to a Customer Services Respresentative ("CSR") as part of a Covered Transaction, the MAX system will require CSRs to ask Customers if they wish to register to vote or update their existing registration. Unless the customer declines, the CSRs will ask the Customer any required voter registration questions.

3.4     ADOT will provide the Plaintiffs with screenshots of the proposed screen of the interface that CSRs will see and use when interacting with Customers reporting a change of address to MVD during all In-Person Covered Transactions thirty (30) days before it is finalized. ADOT agrees to consider in good faith any reasonable comments or edits to the proposed screen that Plaintiffs' Counsel provides within fifteen (15) days thereafter. If ADOT chooses to not accept any edits proposed by Plaintiffs' Counsel, ADOT will provide Plaintiffs' Counsel an explanation as to why not. This explanation can be provided either through email or a conference call.

3.5     The Parties further understand and agree that the date of January 31, 2020, contemplated for the operational function of the ADOT Database, is contingent on the vendors with whom ADOT has contracted fulfilling their obligation to have the ADOT Database operational. Should the vendors be unable to satisfy this contingency, or should the implementation of the new ADOT Database otherwise be delayed for any reason, ADOT shall notify the Parties to this Agreement, in writing, within ten (10) business days of learning of any delay and shall indicate in writing the date by which the new ADOT Database is anticipated to be operational.

3.6     Additionally, ADOT and the AZSOS shall provide the Parties with an update by Tuesday, January 21, 2020 as to whether the ADOT Database will be operational and in compliance with this Agreement by January 31, 2020. This update can be provided either through email or a conference call.

3.7     Additionally, the Parties agree that if there is a reasonable delay and it is not possible to complete the changes to the ADOT Database by January 31, 2020, ADOT and AZSOS

may delay any further work until after the March 17, 2020 Presidential Preference Election. In this circumstance, ADOT and the AZSOS agree to continue with any necessary work promptly after the Presidential Preference Election passes and to complete all work necessary to comply with this Agreement as soon as possible. In this circumstance, ADOT and the AZSOS shall provide the Parties with a new proposed date by which compliance will be achieved.

3.8     Plaintiffs retain the right to seek a remedy from the Court to enforce this Agreement if the implementation of the new ADOT Database is unduly delayed.

3.9     After the database upgrade described in Section 3.2 of this Agreement is completed, ADOT agrees to generate electronic voter registration files for each Customer who did not opt out and the Customer's answers to required voter registration questions provided during a Motor Vehicle Driver's License transaction and forward it electronically to AZSOS at least as frequently as required by the NVRA, 52 U.S.C. § 20504(e).

3.10    By the date on which the database upgrades described in Section 3.2 of this Agreement are completed, ADOT shall update its paper Driver's License/Identification Card Application to add language to explain to the Customer that unless they opt-out of the voter registration question, any voter registration information they provide, including an address update, shall be provided to election officials. ADOT will ensure that the new version of this form will also comply with Arizona's obligations under Section 203 of the Voting Rights Act, including making the form available in Spanish and providing information to Customers on how to receive assistance in Navajo, Apache or any other language for which Arizona or any of its political subdivisions may, in the future, be covered under Section 203 of the Voting Rights Act.

3.11    ADOT will provide the Plaintiffs with a draft of the new Driver's License/Identification Card Application form thirty (30) days before it is finalized. ADOT agrees to consider in good faith any reasonable comments or edits to the new language that Plaintiffs' Counsel provides within fifteen (15) days thereafter. If ADOT chooses to not accept any edits proposed by Plaintiffs' Counsel, ADOT will provide Plaintiffs' Counsel with an explanation as to why not. This explanation can be provided either through email or a conference call.

3.12    If, in the future, ADOT offers Customers the option to provide a change of address during an In-Person Transaction through electronic means, such as at a kiosk or via tablet, ADOT will ensure that the electronic process provided to Customers will be substantially similar to the ADOT Websites process described in this Agreement. ADOT will ensure that any such electronic form will also comply with Arizona's obligations under Section 203 of the Voting Rights Act, including making the electronic form available in Spanish and providing information to Customers on how to receive assistance in Navajo, Apache or any other language for which Arizona or any of its political subdivisions may, in the future, be covered under Section 203 of the Voting Rights Act.

3.13    ADOT confirms that it no longer uses a separate hard copy form for in-person change of address transactions. If, in the future, ADOT uses a hard copy form other than the Driver's

License/Identification Card Application for in-person change of address transactions for Covered Transactions, ADOT will ensure that the form explains to the Customer that the information provided on the form, including any address update, will be used to update the Customer's voter registration or register the Customer to vote unless the Customer opts out and will include an option that a Customer may select to opt out of the voter registration update.

## ONLINE CHANGE OF ADDRESS THROUGH ADOT WEBSITES

3.14   All changes of address reported to ADOT through the ADOT Websites as a part of a Covered Transaction relating to a Motor Vehicle Driver's License shall also serve as a change of address for voter registration purposes or initial voter registration, unless the Customer explicitly opts out by indicating via the website that they do not want the change of address(es) to be used for voter registration purposes.

3.15   The ADOT Websites change of address procedure will include a question asking Customers whether they want to register to vote or update their voter registration, and the question will require an answer in order to complete the Covered Transaction. The affirmative option will be pre-selected and the Customer will have to actively select the opt-out option.

3.16   Customers who do not select the opt-out option in response to the question described in Section 3.15 will be directed to voter registration questions where they will be required to answer a question about their voter registration eligibility, including citizenship. A response to the eligibility question must be provided in order for the Customer to proceed further with the transaction (that is, the eligibility question shall be a "hard stop" in the transaction flow), and the possible responses shall include an option for Customers to decline to answer. The voter registration page shall also allow Customers to answer optional questions related to voter registration to include, at minimum, party preference and a request to be placed on the permanent early voting list, but answers to those questions will not be required.

3.17   Customers' may complete their MVD change-of-address transactions only after they have either affirmatively opted-out of voter registration or answered the voter registration eligibility questions.

3.18   By the date on which the database upgrades described in Section 3.2 of this Agreement are completed, ADOT shall have completed the ADOT Websites programming changes described in Section 3.14 through 3.17. ADOT will provide the Plaintiffs with a final draft of screenshots of the new proposed change-of-address transaction flow thirty (30) days before it is finalized. ADOT agrees to consider in good faith any reasonable comments or edits to the new language that Plaintiffs' Counsel provides within fifteen (15) days thereafter. If ADOT chooses to not accept any edits proposed by Plaintiffs' Counsel, ADOT will provide Plaintiffs' Counsel with an explanation as to why not. This explanation can be provided either through email or a conference call.

3.19   After the database upgrades described in Section 3.2 and ADOT Websites programing changes described in Sections 3.14 through 3.17 of this Agreement are completed, ADOT agrees to generate and forward electronically to AZSOS all the necessary voter registration data of those Customers using the ADOT Websites who completed the voter registration portion of online Motor Vehicle Driver's License transaction as frequently as necessary to comply with the NVRA, 52 U.S.C. § 20504(e). This voter registration data shall include all information necessary to update the address of any already registered voter and all information necessary to register an individual for the first time, which shall include name, address, date of birth, response to the eligbility questions, signature and any additional voter registration information collected during ADOT Websites transaction, such as party preference selection and requests to be placed on the permanent early voting list.

3.20   Additionally, ADOT and the AZSOS shall provide the Parties with an update by Tuesday, January 21, 2020 as to whether the programing changes to the ADOT Websites described in Sections 3.14 through 3.17 of this Agreement will be operational and in compliance with this Agreement by January 31, 2020. This update can be provided either through email or a conference call.

3.21   The Parties agree that if there is a reasonable delay and it is not possible to complete these programming changes by January 31, 2020, ADOT and AZSOS may delay any further work until after the March 17, 2020 Presidential Preference Election. In this circumstance, ADOT and the AZSOS agree to continue with any necessary work promptly after the Presidential Preference Election passes and complete all work necessary to comply with this Agreement as soon as possible. In this circumstance, ADOT and the AZSOS shall provide the Parties with a new proposed date by which compliance will be achieved.

3.22   Plaintiffs retain the right to seek a remedy from the Court to enforce this Agreement if implementation of programing changes to the ADOT Websites described in Sections 3.14 through 3.17 of this Agreement is unduly delayed.

3.23   ADOT confirms that it has already made certain updates to the ADOT Websites providing Customers with improved access to updating their voter registration address when they update their address with ADOT. ADOT agrees that such changes will remain in place on the ADOT Websites until the permanent changes outlined in Section 3.14 through 3.17 of this Agreement are made.

**CHANGE OF ADDRESS AT AZSOS**

3.24   AZSOS agrees to forward all address update information it receives from ADOT to the appropriate county recorders as necessary to accomplish a change of address in the voter registration records for all already registered Arizona voters, whether the individual has moved within the same county or to a new county within Arizona. Additionally, AZSOS agrees to forward all complete voter registration information it receives from ADOT to the appropriate county recorders, including all information collected from individuals reporting a change of address to ADOT through the ADOT Websites. These transfers shall at least occur within the time periods required by the NVRA, 52 U.S.C. § 20504(e).

3.25    The AVID database, the voter registration database currently being developed for the State of Arizona and intended to replace the current voter registration database ("AVID Database"), shall be operational no later than January 31, 2020. The Parties understand and agree that the date of January 31, 2020, contemplated for the operational function of the AVID Database, is contingent on the vendor with whom AZSOS has contracted fulfilling its obligations to have the AVID Database operational in 2019 or early 2020 at the latest. Should the vendor be unable to satisfy this contingency, or should the implementation of the AVID Database otherwise be delayed beyond the January 31, 2020 target date, AZSOS shall notify the Parties to this Agreement, in writing, within ten (10) business days of learning of any delay and shall indicate in writing the date by which the AVID Database is anticipated to be operational. Plaintiffs retain the right to seek a remedy from the Court to enforce this agreement if the implementation of the AVID Database is unduly delayed.

3.26    The provisions in this Agreement that apply to the AVID Database shall also apply to any future voter registration system adopted by AZSOS during the term of this agreement.

3.27    The Parties understand and acknowledge that Maricopa and Pima Counties do not presently intend to make direct use of the AVID Database for maintaining their voter registration records. AZSOS commits to work with Maricopa and Pima Counties to ensure, as best as possible, that by January 31, 2020, those counties' voter registration systems will be able to accept the change of address information provided to them from AZSOS.

## LANGUAGE ASSISTANCE

3.28    Within sixty (60) days of the date of this Agreement, ADOT shall display information in prominent locations in waiting areas in each AZMVD Office, including those operated by third party contractors, regarding the availability of language assistance. These displays will be in English, Spanish, and, where required, in languages mandated by the Voting Rights Act. ADOT may display this information digitally, in print, via audio recording, or in any other medium that effectively communicates the existence of voter assistance to Customers who may require it. This information, however, must be displayed in a format that is not dependent on MVD CSR providing the information to clients.

## NVRA COORDINATORS

3.29    AZSOS shall designate a staff position whose duties include being the "AZSOS NVRA Coordinator." The AZSOS NVRA Coordinator will have the duty to coordinate and oversee implementation of the requirements of Section 5 of the NVRA and to fulfill the monitoring and oversight obligations set forth in this Agreement. The AZSOS NVRA Coordinator may assign tasks to staff at AZSOS to assist in fulfilling this duty. AZSOS shall notify the Plaintiffs of the identity of the AZSOS NVRA Coordinator within thirty (30) days of the Effective Date of this Agreement. The AZSOS NVRA Coordinator does not need to be a new position; an existing employee may be designated the AZSOS NVRA Coordinator.

3.30    ADOT shall designate a staff position whose duties include being the "ADOT NVRA Point of Contact." The ADOT NVRA Point of Contact will serve as the designated point of contact for the AZSOS NVRA Coordinator within ADOT. The ADOT NVRA Coordinator shall be responsible for working with the AZSOS NVRA Coordinator concerning ADOT's compliance with this Agreement and the NVRA. ADOT shall notify the Plaintiffs of the identity of the ADOT NVRA Point of Contact within thirty (30) days of the Effective Date of this Agreement. The ADOT NVRA Point of Contact does not need to be a new position; an existing employee may be designated ADOT NVRA Point of Contact.

## TRAINING

3.31    As a component of its extended training concerning the implementation of the MAX system, ADOT shall include training about the fact that there will be a collection of updated voter registration information unless the Customer opts out of an update to their voter registration as part of any Covered Transaction conducted either through the ADOT Websites or during an In-Person Transaction. Additionally, ADOT shall ensure that, within the MAX system, additional information concerning the opt-out option shall be available for CSRs to reference as needed. Within sixty (60) days of the Effective Date of this Agreement, ADOT shall prepare draft language to include the system and shall share a draft with Plaintiffs' Counsel. ADOT will consider in good faith any changes to the language proposed by the Plaintiffs.

## DATA COLLECTION AND REPORTING

## ADOT

3.32    Beginning on March 1, 2020, the ADOT NVRA Point of Contact shall collect monthly from the MAX database the following data:

(i)     The total number of complete voter registration files collected from a Covered Transaction that were forwarded to AZSOS;

(ii)    The total number of changes of address collected by MVD; and

(iii)   The total number of Covered Transactions during which a Customer opted out of the voter registration update.

3.33   The data collected pursuant to Section 3.32 shall be reported by the ADOT NVRA Point of Contact to the AZSOS NVRA Coordinator on a monthly basis and to Plaintiffs' Counsel every three (3) months. The data provided to Plaintiffs' Counsel will be broken down by month.

3.34   As part of its regular compliance checking procedures, ADOT shall ensure that each office, including those of Third Party Contractors, is appropriately displaying language assistance information as described in Section 3.28 of this Agreement. This review shall occur on a regular basis, but no less frequently than once a year.

## AZSOS

3.35   Once every three (3) months, beginning when the new AVID Database is operational and continuing during the term of this agreement, the AZSOS NVRA Coordinator will review the data gathered from daily logs sent by ADOT that reflects the total number by county of new and updated voter registrations received from ADOT to identify whether there are any potential significant discrepancies in the data from quarter to quarter, such as significant drops in the number of voter registrations or address updates received from ADOT or a significant discrepancy between the number of address changes reported by ADOT and the number of updates processed in the AVID Database. If significant discrepancies are identified, the AZSOS NVRA Coordinator shall coordinate with the ADOT NVRA Point of Contact to identify and resolve any underlying causes of the discrepancy resulting from AZSOS or ADOT systems or procedures.

3.36   Beginning on March 1, 2020, and every three (3) months thereafter during the term of this Agreement, AZSOS shall submit to Plaintiffs' Counsel or post on the SOS website a report which shall include the following components:

(a)   All data collected under Section 3.32 of this Agreement broken down by month;

(b)   Copies of all new or revised NVRA policies or procedures, rules or regulations, advertisements, notices, and training materials used in the preceding reporting period and not previously disclosed to Plaintiffs' Counsel or those to be used in the future.

## DURATION

3.37   This Agreement shall become effective on the Effective Date and shall expire on December 31, 2023. Should the operational date of either the MAX or AVID databases or Website program changes be delayed beyond April 30, 2020, as described in Sections 3.1 through 3.27 of this Agreement, the duration of this Agreement shall be extended accordingly to account for any such delay.

## ARTICLE 4 - IMPLEMENTATION OF RELIEF AND DISMISSAL OF ACTION

4.1   The Parties represent that as far as they are aware the steps outlined in this Agreement do not violate any applicable state or federal laws.

4.2     The Parties agree that Plaintiffs and AZSOS shall file with the Court within five (5) business days of the Effective Date of this Agreement a stipulation notifying the Court of the Agreement and requesting that all pending deadlines and hearing dates be vacated and that this Action be dismissed without prejudice but that the Court retain jurisdiction over the matter for purposes of enforcement of the Agreement.

4.3     Effective upon the dismissal of this Action pursuant to this Section, and during the period in which AZSOS and ADOT remain in compliance with this Agreement, Plaintiffs release AZSOS and ADOT from any and all claims and causes of action asserted in the Complaint, or that could have been asserted in the Complaint, arising at any time up to the date of such dismissal.  Nothing herein shall limit Plaintiffs' rights or remedies to enforce this Agreement.

4.4     In the event that a court determines that there has been any material breach of this Agreement by AZSOS or ADOT, any and all such claims and causes of action shall be restored and the release under Article 4.3 of this Agreement shall no longer apply.

4.5     Upon the later of (a) the conclusion of the Term of this Agreement as set out in Article 3.37 or (b) entry of a final, non-appealable order in any enforcement proceeding under the terms of this Agreement, this Action shall be dismissed with prejudice.

## ARTICLE 5 - DISPUTE RESOLUTION PROCEDURES

5.1     The Parties agree that it is in their mutual interests to resolve disputes arising under this Agreement informally.

5.2     In the event that any Party contends that another Party has failed to substantially perform a material obligation in this Agreement, the Party shall provide written notice of said failure to all Parties and shall identify which Party they allege to be in breach. This notice shall state the nature of the breach, and if applicable and known, the date(s), location(s), and person(s) with knowledge of the breach ("Notice"). The Notice may propose a plan to cure any breach. The Notice shall request a meeting or telephone conference with all Parties for the purpose of resolving the breach. The Parties to the Notice shall use their best efforts to meet (or confer by telephone) on the issues identified in the Notice within thirty (30) calendar days of receipt of said Notice.

5.3     The Party identified in the Notice shall have thirty (30) calendar days from the date the written Notice is received to respond in writing. The response shall state the time required for cure, any mitigating factors causing or tending to cause the delay or breach, and such other information as the party may deem necessary or proper to provide ("Response").

5.4     The Party to whom the Response is addressed shall reply in writing within thirty (30) calendar days of receiving the Response. The Parties shall negotiate in good faith and use all reasonable efforts to resolve disputed issues.

5.5     If the Parties are unable to resolve the disputed issue(s) within ninety (90) calendar days of receipt of the Notice, then any Party may elect to exercise any other remedies available

under the Agreement, or at law, including filing a motion with the Court seeking a judicial determination that the Party or Parties in question are not substantially complying with this Agreement.

5.6   The Parties agree not to seek an order of contempt or the remedy of contempt of Court in filing any motion seeking a judicial determination regarding the terms of this Agreement.

5.7   If the Court finds that any Party has breached this Agreement, it may enter an order consistent with equitable principles that is designed to achieve compliance.

5.8   This Agreement may be enforced only by the Parties to this Agreement. Nothing in this Agreement is intended to confer any rights or remedies on any person other than the Parties hereto.

## ARTICLE 6 - ATTORNEYS' FEES AND EXPENSES

6.1   The Parties agree that they shall bear their own costs and attorneys' fees that relate in any way to the Agreement, including the litigation that gave rise to it.

## ARTICLE 7 - ADDITIONAL PROVISIONS

7.1   **Binding Nature; Effective Date.** This Agreement is binding on the Parties upon full execution by each of the Parties. For purposes of this Agreement, the Effective Date will be the date set forth in the first paragraph above.

7.2   **Entire Agreement.** This Agreement embodies the entire agreement of the Parties with regard to the subject matter hereof. There are no representations, promises, warranties, understandings, or agreements expressed or implied, oral or otherwise, in relation thereto, except those expressly referred to or set forth herein. The Parties acknowledge that the execution and delivery of this Agreement is their respective free and voluntary act and deed, and that said execution and delivery have not been induced by, nor done in reliance upon, any representations, promises, warranties, understandings, or agreements made by the other Party, its agents or representatives.

7.3   **Changes in Writing.** This Agreement may not be amended orally or by performance. Any amendment must be made in written form and signed by duly authorized representatives of the Parties.

7.4   **Modification of Agreement.** The Parties agree not to seek modification of the Agreement from the Court as a remedy for any alleged breach unless all Parties agree to the modification.

7.5   **Interpretation.** The Parties have participated in the drafting of this Agreement and, accordingly, any claimed ambiguity shall not be presumptively construed for or against any Party.

7.6   **Time of the Essence.** Time is expressly made of the essence in this Agreement.

7.7 **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be considered an original counterpart. Any signed Agreement or signature page to this Agreement that is transmitted by facsimile or in the portable document format (.pdf) shall be treated in all respects as an original Agreement or signature page.

7.8 **Warranty of Right and Authority.** Each of the Parties to this Agreement expressly acknowledges that the execution, delivery, and performance of this Agreement have been duly authorized by all necessary action on its behalf. The Parties further warrant that the person signing on their behalf is duly authorized by appropriate corporate or other action to sign this Agreement and bind their respective entities to it.

7.9 **Jurisdiction.** The Parties acknowledge and agree that the United States District Court, District of Arizona shall have the jurisdiction over the interpretation, enforcement, and any other matter relating to this Agreement and that any claims arising out of or related in any manner to this Agreement shall be properly brought before that Court.

7.10 **Binding Effect; Assignment.** This Agreement shall bind and inure to the benefit of all successors and assigns of the Parties.

7.11 **Construction.** Should any paragraph, clause, or provision of this Agreement be construed to be against public policy or determined by a court of competent jurisdiction to be void, invalid, or unenforceable, such construction and decision shall affect only those paragraphs, clauses, or provisions so construed or interpreted, and shall in no way affect the remaining paragraphs, clauses, or provisions of this Agreement, which shall remain in force.

7.12 **Dispute Resolution.** Nothing herein shall limit the Parties' rights or remedies under the Dispute Resolution Procedures described in Article 5 of this Agreement. For the purpose of clarity, nothing in this Agreement shall be deemed to release, waive or adjudicate any claim arising after the execution of the Agreement.

7.13 **No Admission of Liability.** This Agreement is not an admission of any liability by any of the Parties but is a compromise, and this Agreement shall not be treated as an admission of liability.

7.14 **Notices.** All notices or other communications to any party to this Agreement shall be in writing and shall be personally delivered or sent by email or a reputable overnight mail service (e.g., Federal Express), or by first class mail (certified or registered), and shall be given to the respective Parties hereto at the following addresses. Any Party hereto may change the name and address of the person designated to receive notice on behalf of such Party by notice given as provided in this paragraph.

    <u>For Plaintiffs:</u>

Sarah Brannon, ACLU, 915 15th St. NW, Washington DC 20005, sbrannon@aclu.org, 202-675-2337

Stuart Naifeh, Demos, 80 Broad St., 4th Floor, New York, NY 10004, snaifeh@demos.org, 212-485-6055

For AZSOS:

Bo Dul, Office of the Secretary of State, 1700 West Washington St., 7th Floor, Phoenix, AZ 85007, bdul@azsos.gov, 602-542-6167

Kara Karlson, Office of the Attorney General, State Government Division, 2005 N. Central Ave., Phoenix, AZ 85007, Kara.Karlson@azag.gov, 602-542-8118

For ADOT:

Brian Schulman, Ballard Spahr LLP, One East Washington St., Phoenix, Arizona, 85004, schulmanb@ballardspahr.com, 602-798-5400

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth on page one hereof.

League Of Women Voters of Arizona

By: Robyn Prud'homme-Bauer
*Its: Past Co-President, LWV Arizona*

Mi Familia Vota Education Fund

*By:*
*Its:*

Promise Arizona

*By:*
*Its:*

Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona

*By:* Katie Hobbs
Secretary of State, State of Arizona

Arizona Department of Transportation

*By:*
*Its:*

14

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth on page one hereof.

League Of Women Voters of Arizona

Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona

By: _____
Its: _____

By: Katie Hobbs
Secretary of State, State of Arizona

Mi Familia Vota Education Fund

*Eduardo Sainz*

By:     Eduardo Sainz
Its: Arizona State Director

Arizona Department of Transportation

By: _____
Its: _____

Promise Arizona

By: _____
Its: _____

14

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth on page one hereof.

League Of Women Voters of Arizona

Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona

By:
Its:

By: Katie Hobbs
Secretary of State, State of Arizona

Mi Familia Vota Education Fund

Arizona Department of Transportation

By:
Its:

By:
Its:

Promise Arizona

By: *Petra Falcon*
Its: *Executive Director*

14

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth on page one hereof.

League Of Women Voters of Arizona

Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona

By: _____

By: Katie Hobbs

Its: _____

Secretary of State, State of Arizona

Mi Familia Vota Education Fund

Arizona Department of Transportation

By: _____

By: _____

Its: _____

Its: _____

Promise Arizona

By: _____

Its: _____

14

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth on page one hereof.

League Of Women Voters of Arizona

Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona

_____
By:
Its:

_____
By: Katie Hobbs
Secretary of State, State of Arizona

Mi Familia Vota Education Fund

Arizona Department of Transportation

_____
By:
Its:

_____
By: Eric R. Jorgensen
Its: Motor Vehicle Division Director

Promise Arizona

_____
By:
Its:

14